No. 23-1695

---

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

GLORIA COCUZZO,

Plaintiff-Appellant,

v.

TRADER JOE'S EAST, INC.; JENNIFER GILLUM,

Defendants-Appellees

---

On Appeal from the Order and Judgment of the United States District Court
for the District of Massachusetts

---

## BRIEF OF APPELLANT GLORIA COCUZZO

---

Plaintiff-Appellant Gloria Cocuzzo
By her attorney,

/s/ *Timothy J. Perry*

Timothy J. Perry (BBO #631397)
Court of Appeals Bar No. 62295
Perry Krumsiek LLP
One Boston Place, Suite 2600
Boson, MA  02108
(617) 720-4300

## RULE 26.1 DISCLOSURE STATEMENT

Appellant Gloria Cocuzzo is an individual not subject to the disclosure requirements of Fed. R. App. P. 26.1.

# TABLE OF CONTENTS

Table of Authorities…....................................................................... (i)

Reasons Why Oral Argument Should Be Heard…………………………… (iii)

Jurisdiction…………………………………………………………… 1

Statement of Issues Presented for Review…………………………………… 1

Statement of the Case…………………………………………………2

Summary of Argument………………………………………………… 5

Standard of Review………………………………………………….. 6

Argument……………………………………………………………… 7

    I.    Defendants Failed To Proffer A Legitimate, Non-Discriminatory
        Reason For The Termination……………………………………… 7

    II.   Ms. Cocuzzo Sufficiently Showed Pretext
        and Discriminatory Animus…………………………………… 16

    III.  Since Ms. Cocuzzo Only Needed To Show Pretext In Regards
        To Her Mass. G. L. c. 151B Claim, She Sustained Her Burden
        At Summary Judgment As To Both Defendants………………… 27

    IV.  Ms. Gillum Is Individually Liable Under G.L. c. 151B………….. 28

Conclusion…………………………………………………………… 28

Certificate of Compliance…………………………………………… 29

Certificate of Service…………………………………………………30

Addendum

# TABLE OF AUTHORITIES

**Cases**

*Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215 (1st Cir. 2008)...... 7

*Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437,
    646 N.E.2d 111 (1995)...........................................................25

*Brader v. Biogen, Inc.*, 983 F.3d 39, 59 (1st Cir. 2020)........................... 27

*Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015)........ 15, 21

*Collazo v. Nicholson*, 535 F.3d 41(1st Cir. 2008).........................……..7

*Dusel v. Factory Mut. Ins. Co.*, Court Docket 21-1609
    (Gelpi, C.J.) (1st Cir. 2022)................................................... 16

*Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 171 (1st Cir. 1998)........... 25

*Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2nd Cir. 2013)...................... 14

*Mass. Museum of Contemporary Art Found., Inc. v. Büchel*,
    593 F.3d 38 (1st Cir. 2010)..................................................... 6

*Matthews v. Ocean Spray Cranberries, Inc.*, 419 Mass. 356,
    686 N.E.2d 1303 (Mass. 1997)............................................... 16-17

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976).............. 17

*McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)........................1, 4, 7

*Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824-25 (1st Cir. 1991).............. 16

*Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004).................................8, 15

*Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996)...... 19

(i)

*Ray v. Ropes & Gray LLP*, 799 F.3d 99 (1st Cir. 2015)……………………..7

*Reeves v. Sanderson Plumbing Prods. Co.*, 530 U.S. 131 (2000)……………8, 16

*Robinson v. Town of Marshfield*, 950 F.3d 21, 26 (1st Cir. 2020)……………24

*Ronda Pérez v. Banco Bilbao Vizcaya Argentaria*,
      404 F.3d 42 (1st Cir.2005)…………………………………………..12, 24

*Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000)…………………… 7

*Trustees of Health v. Com'n Against Discr.*, 449 Mass. 675,
      871 N.E.2d 444 (Mass. 2007)………………………………………… 19

*Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887 (5th Cir. 2012)……………… 15

*Vélez v. Thermo King de Puerto Rico, Inc.*,
      585 F.3d 441(1st Cir.2009)…………………………………7, 17, 19, 21, 23

*Yee v. Mass. State Polic*e, 481 Mass. 290, 121 N.E.3d 155 (Mass. 2019)……19

*Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.*,
      999 F.3d 37, 52 (1st Cir. 2021)…………………………………… 25, 27

**Statutes**

28 U.S. Code § 1291…………………………………………………… 1

29 U.S.C. § 621 to 29 U.S.C. § 634 ("ADEA")…………………1, 2, 5, 6, 7, 27, 28

Mass. G. L. c. 138, § 34…………………………………………… 11

Mass. G.L. c. 151B…………………………………………... …..1, 2, 4, 27, 28

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

This Court should hear oral argument in this Appeal as it will assist in the Court's determination of this fact-intensive Age Discrimination lawsuit which included a 22 page Decision by the trial court.

## JURISDICTION

The district court had jurisdiction over this matter because Gloria Cocuzzo ("Ms. Cocuzzo") alleges violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 to 29 U.S.C. § 634 ("ADEA"). This Court has jurisdiction because Cocuzzo appeals from a final judgment of the district court disposing of all of her claims. 28 U.S. Code § 1291. The district court entered Final Judgment on July 28, 2023 and Cocuzzo timely appealed on August 21, 2023. APP0009.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did Defendants meet their burden of production under the second step of the *McDonnell Douglas* burden shifting framework by providing a legitimate, nondiscriminatory reason for Ms. Cocuzzo's termination?

2. Did Ms. Cocuzzo meet her burden to show pretext and discriminatory animus under the third step of the *McDonnell Douglas* burden shifting framework?

3. Did Ms. Cocuzzo submit evidence sufficient to support her state law claim against the Defendants under Mass. G.L. c. 151B?

4. Did Ms. Cocuzzo submit evidence sufficient to support her claim for individual liability under Mass. G. L. c. 151B against Ms. Gillum?

## STATEMENT OF THE CASE

I.    Relevant Procedural History

On November 10, 2021, Ms. Cocuzzo filed suit against Trader Joe's, Inc.[1] and her supervisor, Jennifer Gillum ("Ms. Gillum"), alleging violations of Mass. G. L. c. 151B and the ADEA.  APP0010.  On January 31, 2022, Trader Joe's removed the case to the United States District Court for the District of Massachusetts.  APP0002.  On February 24, 2023, Trader Joe's and Ms. Gillum moved for summary judgment on all claims brought by Ms. Cocuzzo.  APP0007.  On April 3, 2023, Ms. Cocuzzo opposed the motion for summary judgment.  APP0008.  On July 28, 2023, the district court allowed the motion for summary judgment and entered final judgment.  APP0009.  On August 21, 2023, Ms. Cocuzzo filed a Notice of Appeal and this appeal followed.  *Id*.

II.   Facts Relevant To The Issues Submitted For Review

This is an age discrimination case concerning Ms. Cocuzzo, a now 80 year-old former seventeen-year employee of Trader Joe's.  APP0010-0017.  Ms. Cocuzzo's performance at Trader Joe's was extraordinary, as admitted by all parties and employees of Trader Joe's.  APP0280-0317.  In Trader Joe's words, Ms. Cocuzzo had become, among other things, an "icon" at the Brookline store

---

[1] On June 2, 2022, the parties filed a joint motion to substitute Trader Joe's East, Inc. as the proper party in interest.  APP0004.  Trader Joe's East, Inc. shall be referred to herein as "Trader Joe's".

where she worked (known as "Store #501"). *Id.* [2]  A Boston Globe article about her work at Trader Joe's declared: "The George Bailey of Brookline is a 77 year-old grandmother named Gloria."  APP0332.

On February 25, 2021, Ms. Gillum terminated Ms. Cocuzzo after she purchased one four pack of beer at the end of her shift.[3]  During the "investigation" of this incident, Ms. Cocuzzo advised Ms. Gillum that the purpose of the purchase was to bring it home and share it with her grandson at dinner after his later shift that night.  APP0134.

At summary judgment, Defendants contended that Ms. Gillum terminated Ms. Cocuzzo for a violation of Trader Joe's Alcohol Policy.  APP0072; APP0478.  This position flew in the face of Ms. Gillum's and Trader Joe's admission that Ms. Cocuzzo's purchase of the beer in issue was *neither* a violation of Trader Joe's Alcohol Policy *nor* a violation of applicable Massachusetts liquor laws.  APP0379-0380.  Thus, the proffered reason for the termination was not legitimate and, rather, was a pretext.  As set forth further below, Ms. Cocuzzo met her burden to overcome summary judgment in all

---

[2]Even Ms. Gillum agreed that Ms. Cocuzzo's performance rating of "Excellence Overall" was indicative of her performance *at all times*.  APP0362.  Indeed, Ms. Gillum agreed with the prevailing sentiment that Ms. Cocuzzo had become an "icon" at Store 501.  APP0362-0363.

[3] The termination notice states that two four packs were purchased, but it was conceded that only a single four pack had actually been purchased.  APP0421.

respects.

Ms. Cocuzzo set forth her claim in great detail, supported by citations to admissible evidence in the record. APP0212-0235. In summary, Ms. Cocuzzo's experience at Trader Joe's began to change in 2018 when Ms. Gillum became her supervisor. Ms. Cocuzzo's performance remained high, but the evidence of age discrimination engaged in by Ms. Gillum began to mount. For one thing, Ms. Gillum stopped providing written evaluations of Ms. Cocuzzo. APP0224. Instead, Ms. Gillum entered the evaluations for the years 2019-2021 on the same date – six months *after* Ms. Cocuzzo's termination and one week *after* receiving Ms. Cocuzzo's MCAD Complaint. *Id.; see also* APP0531 (district court finding that "Cocuzzo's written performance evaluations for 2018, 2019, and 2020 were entered into the system on August 20, 2021). In hindsight, Ms. Gillum was intent on ridding Store #501, where Ms. Cocuzzo worked, of older employees.

The evidence of discrimination that Cocuzzo referenced in the record included (1) Ms. Gillum employed shifting reasoning for the termination; (2) Ms. Gillum treated Ms. Cocuzzo disparately from all other similarly situated employees (including terminating Ms. Cocuzzo for the offense alleged here while all other similarly situated employees received warnings); (3) Ms. Gillum attempted to coerce Ms. Cocuzzo into retirement with threats of termination specifically targeted at her age; and (4) no employees over the age of 40 were

separated from employment in the ten years prior to Ms. Gillum's promotion to supervisor and then 7 employees over the age of 40 were suddenly separated from employment thereafter.  APP0218-219.

III.    The Rulings Presented For Review

The district court found that Trader Joe's met its burden of production under the second step of the *McDonnell Douglas* burden shifting framework by providing a legitimate, nondiscriminatory reason for Ms. Cocuzzo's termination.  APP0542.

The district court found that Ms. Cocuzzo failed to meet her burden to show pretext or discriminatory animus under the third step of the *McDonnell Douglas* burden shifting framework.  APP0542-0549.

The district court dismissed Ms. Cocuzzo's state law claim against Trader Joe's under Mass. G.L. c. 151B (the Massachusetts Anti-Discrimination Statute) for the same reasons as the ADEA claim and against Ms. Gillum for a failure to present evidence from which a reasonable jury could infer an intent to discriminate.  APP0550.

## SUMMARY OF THE ARGUMENT

I.      The district court erred by finding that the Defendants had proffered a legitimate, non-discriminatory reason for Ms. Cocuzzo's termination including making this finding in the face of Defendants' admissions in the record that Ms. Cocuzzo had *not* violated the Alcohol Policy or

relevant liquor laws and the fact that Defendants ultimately gave shifting, contradictory reasons for the termination.

II.    The district court erred by finding that Ms. Cocuzzo failed to show pretext and discriminatory animus, including failing to credit the evidence proffered by Ms. Cocuzzo that showed disparate treatment, failing to credit the evidence proffered by Ms. Cocuzzo that displayed shifting rationales given by the Defendants for the termination, failing to credit the evidence of Ms. Gillum's lack of entering timely performance reviews, failing to credit Ms. Gillum's statements that reflected ageism, and failing to credit the data in the record that supported Ms. Cocuzzo's claim for age discrimination.

III.   The district court erred by dismissing the Chapter 151B claims against both Defendants for the same reasons as it erred in dismissing the ADEA claims.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Mass. Museum of Contemporary Art Found., Inc. v. Büchel*, 593 F.3d 38, 52 (1st Cir. 2010). Summary judgment is appropriate only where the record reflects no genuine issue of material fact and where, with all reasonable inferences drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter

of law.  *See Collazo v. Nicholson*, 535 F.3d 41, 44 (1st Cir. 2008); *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000) (the Court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.")

## ARGUMENT

This ADEA case is controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-05 (1973); <u>see also</u> *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 113 (1st Cir. 2015).  Since Defendants did not contest that Ms. Cocuzzo established a prima facie case of discrimination, the burden shifted to Defendants to establish a legitimate, nondiscriminatory justification for the adverse employment action.  *Id*.; <u>see also</u> *Ray*, 799 F.3d at 113.  They failed to do so.  However, even if that showing was made, Ms. Cocuzzo could, and did, overcome summary judgment by showing that the justification for her termination was pretextual.  *Id*.

### I.  Defendants Failed To Proffer A Legitimate, Non-Discriminatory Reason For The Termination

Defendants had the burden to "articulate a legitimate, non-discriminatory reason for its decision[]" to terminate Ms. Cocuzzo.  *Vélez v. Thermo King de Puerto Rico, Inc*., 585 F.3d 441, 447 (1st Cir.2009); <u>quoting</u> *Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 219 (1st Cir. 2008).  This burden of production is fairly low, but Defendants' mere contention of a legitimate reason for

the termination was not enough.  *Id.*  Defendants were required to offer

"admissible evidence sufficient for the trier of fact to conclude" that the proffered

reason for Ms. Cocuzzo's termination was the true reason.  *Reeves v. Sanderson*

*Plumbing Prods. Co.*, 530 U.S. 131, 142 (2000).  The evidence cited must support

the legitimacy of the proffered reason for the termination.  *Patrick v. Ridge*, 394

F.3d 311, 316-317 (5th Cir. 2004).

In its Order, the district court found that Trader Joe's met its burden based

on the following proffer made in Defendants' Memorandum in Support of

Summary Judgment and in its Reply Brief:

> Cocuzzo "violated the [Trader Joe's] alcohol policy by knowingly
> purchasing beer for an underage person…" Doc. No. 44 at 5; see also
> Doc. No. 54 at 4.

APP0542.  The Court held that this assertion was supported by admissible

evidence in the record, namely Ms. Cocuzzo's email to Gillum on the day of the

incident stating that "this termination was prompted by purchasing beer for my

grandson, Kevin, who was coming to dinner that evening at my home."  *Id.*[4]

Accepting this proffer was error for three principal reasons; (1) the record

evidence cited by the Court – that Ms. Cocuzzo was purchasing beer to bring home

---

[4] As set forth below, this citation to the record did not support Defendants'
proffered reason for termination *but directly refuted it*.  As set forth below, a
grandmother's purchase of beer to be consumed later at dinner in her home was
neither a violation of Trader Joe's Alcohol Policy nor relevant law.

to serve at dinner with her grandson after his later shift – was admitted under oath by the Defendants to be neither a violation of Trader Joe's Alcohol Policy nor of relevant law (and, thus, *could not* have been a *legitimate* reason to terminate her); (2) an alleged violation of the Alcohol Policy was *not* the reason for the termination provided by Ms. Gillum at the time of the termination, and (3) knowing that the proffered reason was insufficient, Defendants' embellished their reasoning, including in their initial summary judgment brief (reflecting a consciousness of illegitimacy).

First and foremost, the Defendants, *including Ms. Gillum herself*, admitted that Ms. Cocuzzo's purchase of beer on the day in question did not violate Trader Joe's Alcohol Policy or relevant law. The written Alcohol Policy in question merely prohibited a direct sale of alcohol by a store clerk to a minor or to an intoxicated person (neither of which Ms. Cocuzzo is accused of doing). Specifically, the Alcohol Policy states:

> [I]t is our legal and social responsibility to comply with all Federal, State and the Town of Brookline's Laws. **The goal of our establishment is to be successful preventing the sale or service of alcohol to any person who is under the age of 21 or shows signs of intoxication**.
> ***
> No alcoholic beverage shall be sold to anyone who is under twenty-one years of age or intoxicated.

APP0319. Ms. Gillum admitted that Ms. Cocuzzo had not violated the Alcohol Policy by purchasing beer to bring home and later share with her grandson:

> Q:   Right.  So now back to the [alcohol] policy – the policy simply says that no alcohol[ic] beverage shall be sold to anyone under 21 years of age or who is intoxicated, correct?
>
> A:   …yes.
>
> Q:   Okay.  Now, she didn't violate that, because she didn't sell alcohol to anyone that day, correct?
>
> A:   Correct.

APP0379.[5]  Notably, the district court in its 22-page Decision (APP0529-APP0551) never even addressed this seminal issue – whether Ms. Cocuzzo *actually* violated the Alcohol Policy – despite the fact this issue was repeatedly raised in Ms. Cocuzzo's Opposition.  *See* APP0193, 0202-0203, 0208-0209.

In addition, in their own summary judgment pleadings (Memorandum and Reply), and in the face of these admissions, the Defendants did not, as they could not, cite *any* contrary testimony or other evidence that suggested that Ms. Cocuzzo in fact violated the Alcohol Policy.  *See* APP0068-0078; APP0475-00482.  Rather, they simply *argued*, without citation to the record, that "Plaintiff violated the alcohol policy by knowingly purchasing beer for an underage person, placing Trader Joe's liquor license in jeopardy."  APP0072.

---

[5] In his deposition, the other Trader Joe's employee involved in the termination decision, Brian Foote, also admitted:

> A:   …"[The Alcohol Policy] just states "No alcoholic beverages shall be sold to anyone who is under 21 or intoxicated."
>
> Q:   Right.  And there's no allegation in this case that Ms. Cocuzzo sold alcohol to anyone who was under 21 years of age, correct?
>
> A:   Correct.  She purchased alcohol; she didn't sell alcohol.

APP0399.

Affording the Defendants the benefit of doubt, they were arguing that, although the Alcohol Policy does not expressly prohibit the purchase of alcohol for a minor, it does require employees to know and comply with "all federal, state and local liquor laws" and furnishing alcohol to a minor generally violates the law. APP0319. Fair enough, but if the violation of general liquor laws was *the reason* for Ms. Cocuzzo's termination, then it follows that it was the Defendants' burden to show that the purchase of alcohol in this instance in fact violated those laws.

In its only attempt to do so, Defendants simply submitted a *headnote*, apparently accepted by the district court *as a fact*, titled "Plaintiff Illegally Purchases Alcohol For An Underage Person." APP0069. This headnote was not accompanied by a citation to any evidence (or law) that supported that proposition. *Id*. This would be impossible. The purchase of alcohol by a grandmother for the later consumption at dinner in her home with her underage grandson *is expressly permitted by Massachusetts law*. Mass. G. L. c. 138, § 34 ("For the purpose of this section the word 'furnish' shall mean to knowingly or intentionally supply, give, or provide to or allow a person under 21 years of age **except for the children and grandchildren of the person being charged** to possess alcoholic beverages on premises or property owned or controlled by the person charged.")

Indeed, *the Defendants admitted under oath that the purchase by Ms. Cocouzzo in issue was not illegal as it fell under this exception*.  Ms. Gillum testified:

> Q:  Is that correct, that it is not illegal.
> A:  To have alcohol with your grandson at home is not illegal.

APP0379.

> Q:  So do you understand that statute [G.L. c. 138 § 34] provides an exception to the law for alcohol that is furnished to the son or grandson of the person charged if the alcohol is consumed on the premises of the parent or grandparent?
> A:  Yes…

APP0381.[6]  Defendants only response to this seminal problem was to contend that "whether Plaintiff actually violated the law or not is immaterial."  APP0074.  This is bizarre considering that the *only* so-called "legitimate" reason proffered for Ms. Cocuzzo's termination was that she violated the law.

Moreover, the admissible evidence at summary judgment showed that Ms. Gillum did not believe, and could not have reasonably believed, in the accuracy of the reason given for the termination.  *Ronda Pérez v. Banco Bilbao Vizcaya Argentaria*, 404 F.3d 42, 45 (1st Cir.2005).  In fact, Defendants' proffered

---

[6] It is important to note that it is undisputed that Ms. Cocuzzo never furnished the beer at issue to her grandson at all.  She bought it at the end of her shift to bring home.  Her grandson was working a *later* shift at the time and could not have received the beer during his shift or on the Trader Joe's premises.  APP0225-226, at Par. 16.

Statement of Material Facts No. 6-7 states: "Because the Brookline Trader Joe's store sells alcohol, all Crew Members…received training on selling alcohol" and must adhere to "all liquor laws." APP0221. Therefore, Ms. Gillum was not only required to be trained on, and have an understanding of all relevant liquor laws, but also, as a manager, *it was her job to train other employees like Ms. Cocuzzo in regards to those laws and to mete out punishments for violations of those laws*. Thus, a denial by Ms. Gillum that she didn't understand the relevant law applicable to Ms. Cocuzzo's termination rings hollow and lacks credibility. Certainly, the district court should not have blindly credited her legally convenient but factually incredible position. Rather, the reasonable inference to be drawn from the facts in evidence was that Ms. Gillum understood that Ms. Cocuzzo *did not* violate the law. *See Collazo*, supra, 535 F.3d at 44 (all reasonable inferences in the record must be drawn in favor of the non-moving party).

Indeed, this inference – that Ms. Gillum *did not* believe that Ms. Cocuzzo had violated Trader Joe's Alcohol Policy or relevant liquor laws – is supported by the written record created by Ms. Gillum at the time of the incident (and prior to legal counsel's involvement). In the termination notice Ms. Gillum drafted five days after the incident (on February 25, 2021), Ms. Gillum does not cite a violation of the Alcohol Policy or liquor laws as a basis for the termination, but rather that the actions of Ms. Cocuzzo violated Trader Joe's "core value of integrity."

APP0135.  By that time, Ms. Cocuzzo had informed Ms. Gillum that she purchased the beer to bring it home to share with her grandson at dinner later that evening (after his shift).  APP0134.  After considering those facts and relevant law for five days, Ms. Gillum decided *not* to cite the Alcohol Policy for the termination and noted a violation of the Integrity Policy.  APP0135.  This purported reason for the termination was not changed until Ms. Cocuzzo brought her MCAD action in August 2021.  After retaining counsel in that action, Ms. Gillum there filed a Position Statement (on October 6, 2021) which suddenly changed the reason for termination from a violation of the Integrity Policy to a violation of the Alcohol Policy.  APP0144 (asserting Ms. Cocuzzo was terminated because "it had been determined that Complainant had violated Trader Joe's Alcohol Policy").

This change was legally convenient because Ms. Cocuzzo's purchase of alcohol plainly did not violate the Integrity Policy as defined in the Employee Handbook (which states: "The definition of Integrity is simple.  It means that you treat others as you would like to be treated.").  APP0453.  And, once Defendants' legal team got involved, the purported violation of the "Integrity Policy" was never again cited as a reason for the termination.  *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2nd Cir. 2013) (where reasons provided for termination to EEOC contained discrepancies from later proffer, "a reasonable juror could infer that the explanations given … were pretextual.").

Third, by the time Defendants moved for summary judgment, they apparently felt they needed to embellish the proffered "legitimate" reason for Ms. Cocuzzo's termination; alleging that Ms. Cocuzzo "violated the [Trader Joe's] alcohol policy by knowingly purchasing beer for an underage person" and "placing Trader Joe's liquor license in jeopardy." APP0072. Yet, after Ms. Cocuzzo pointed out in her own brief that the liquor license was never "placed in jeopardy" because what she had done did not violate the law (APP0200, at n. 10), Defendants deleted this reason for termination when they filed their Reply Memorandum. APP00478. The district court simply ignored this discrepancy (and adopted the Defendants' Reply Memo stance on the issue) rather than drawing a negative inference from Defendants' shifting position on the issue. APP0542; *see Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 904 (5th Cir. 2012) (embellished rationales undermine the employer's contention that it had a nondiscriminatory reason for termination because the "ultimate issue is the employer's reasoning at the moment the questioned employment decision is made"); *Patrick v. Ridge*, supra, 394 F.3d at 319-320 (courts "take a snapshot at the moment of the allegedly discriminatory act" and should not credit "after-acquired knowledge" or later developed legal theories); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015) (employer's rationale deemed suspect rather than legitimate where it had "not remained the same" throughout the case).

## II.    Ms. Cocuzzo Sufficiently Showed Pretext and Discriminatory Animus

Even if the district court's finding that Defendants met their burden to proffer a legitimate, nondiscriminatory justification for Ms. Cocuzzo's termination was permissible on the record submitted[7], Ms. Cocuzzo nonetheless demonstrated that the asserted reasons for her termination were pretextual and demonstrated discriminatory animus. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824-25 (1st Cir. 1991). In this regard, Ms. Cocuzzo was only required to "offer some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus." *Mesnick*, 950 F.2d at 825 (emphasis added). The record reflects that she did so.

(1) Evidence of Disparate Treatment of Younger Employees

"The most probative means of establishing that the plaintiff's termination was a pretext … is to demonstrate that similarly situated [] employees were treated differently." *Dusel v. Factory Mut. Ins. Co.*, Court Docket 21-1609 (Gelpi, C.J.) (1st Cir. 2022); citing *Matthews v. Ocean Spray Cranberries, Inc.*,

---

[7] Where Ms. Cocuzzo set forth a prima facie case *and* showed that the Defendants' explanation for her termination was illegitimate, she met her burden at summary judgment. *See Reeves*, supra, 530 U.S. at 140 (prima facie case combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability).

686 N.E.2d 1303, 1310 (Mass. 1997). "An employer's disparate treatment of employees in response to behavior that legitimately offends the employer can provide evidence of discriminatory animus." *Thermo King*, supra, 585 F.3d at 441; citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 (1976) (proffered reason for termination "must be 'applied[ ] alike to all members of all races ...'").

Ms. Cocuzzo submitted undisputed evidence of disparate treatment (APP0222) that was improperly rejected by the district court. APP0545. In regards to discipline, Trader Joe's implements a policy of progressive discipline including for violations of its alcohol policy. APP0274-0276. In practice, this has meant that there has never been a termination of *any* employee by Trader Joe's in Ms. Cocuzzo's region for a violation of the alcohol policy that involved the alleged sale of alcohol to a minor (or the alleged purchase of alcohol for a minor) – *except the termination of Cocuzzo*. APP0181-0190.

By agreement, Trader Joe's produced in discovery all discipline (including warnings and terminations) for any alcohol violations in the relevant region from 2018-present (i.e. the northeast territory which included Store #501 where Ms. Cocuzzo worked). APP0174 (Supp. Response to Interrogatory No. 12). Those records show that 7 employees (including Cocuzzo) were disciplined for allegedly violating the Alcohol Policy by furnishing alcohol to a minor. *Id*. Those records

show that Cocuzzo was the only such employee who was terminated instead of receiving a warning. *Id.* These other incidents were:

- On February 23, 2018, J.D. "sold a bottle of vodka illegally in our store to a fellow crew S.L. member who was underage." APP0181. J.D. received a warning. *Id.*
- On November 2, 2019, I.D. made a direct sale of alcohol to a minor. APP0183. I.D. received a warning.
- On June 1, 2021, P.R. made a direct sale of alcohol to a minor without requesting identification. APP0184. P.R. received a warning.
- On October 4, 2022, B.D.L. made a direct sale of alcohol to a minor without requesting identification. APP0188. B.D.L. received a warning.
- On October 18, 2022, M.S. made a direct sale of alcohol to a minor without requesting identification. APP0189. M.S. received a warning.
- On January 2, 2023, J.L. made a direct sale of alcohol to a minor without requesting identification. APP0190.

Each of these employees who received only a warning for their offense as opposed to a termination were under the age of 40. APP0174 (Supp. Response to Interrogatory No. 12).

This was undisputed evidence of disparate treatment. In their Reply Brief, Defendants misled the Court by arguing that these persons were not "comparators" to Ms. Cocuzzo because they "did not 'sell or furnish alcohol to a minor' – they failed to check the identification of a customer." APP0478. This assertion was blatantly false. First and foremost, J.D. was a virtually identical comparator (i.e. alleged to have knowingly sold or furnished alcohol to a minor). In Trader Joe's own words: J.D. "sold a bottle of vodka illegally in our store to a fellow crew S.L. member who was underage." APP0181. This is precisely what Ms. Cocuzzo is

accused of doing (purchasing beer at Trader Joe's for a fellow crew member, her grandson, who was underage). Providing this comparator alone was enough to overcome summary judgment. *Yee v. Mass. State Police*, 481 Mass. 290, 301, 121 N.E.3d 155 (Mass. 2019) (single comparator "suffices to yield a genuine dispute of material fact as to this element of the prima facie case of discrimination"); *Trustees of Health v. Com'n Against Discr.*, 449 Mass. 675, 682, 871 N.E.2d 444 (Mass. 2007) (complainant must show she was treated differently from another person, known as a comparator, who was not a member of her protected class, but who otherwise was "similarly situated").

In addition, although it is true that each of the five remaining comparators failed to check identification as asserted by Defendants, each of these failures led to the illegal sale of alcohol to that underaged patron. APP-0183, 0184, 0188, 0189, 0190. Thus, these employees were also appropriate comparators. *Thermo King*, underline(supra), 585 F.3d at 451 (comparator must be "similarly situated" not identical); *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996) (comparators "need not be perfect replicas").

The district court erred by accepting the argument made by Defendants that *none* of these employees were permissible comparators. APP0545. The district court held that J.D. was not a comparator because J.D. "sold a bottle of alcohol to a fellow crew member who is underage, but then immediately brought it to the

attention of a Trader Joe's mate…" *Id*. However, Ms. Cocuzzo did precisely the same thing – i.e. when asked about her purchase of a four pack of beer, she advised Trader Joe's that she had purchased the beer to enjoy later that evening with her grandson at dinner. APP0134.

The district court also rejected the other five comparators outright despite recognizing that, in each instance, the identified employee had furnished alcohol to an underaged "customer buying alcohol," APP0545, just as Ms. Cocuzzo was accused of doing. Nonetheless, the district court held that these employees' failure to check the identification of the customer (which led to the furnishing of the alcohol to the customer) was "substantially different" because Ms. Cocuzzo "knowingly" made her purchase. *Id*. This was error because these comparators likewise engaged in a "knowing" violation of the Alcohol Policy (the failure to request identification) which led to a sale to a minor. Importantly, there was no evidence in the record that Trader Joe's Alcohol Policy was more stringently enforced against a knowing purchase of alcohol for a minor versus a knowing sale of alcohol to a minor (i.e. by failing to ask for identification). In fact, the policy itself emphasizes the prohibition of selling alcohol to a minor by failing to check identification, stating:

> **The goal of our establishment is to be successful preventing the sale or service of alcohol to any person who is under the age of 21 or shows signs of intoxication**. We ask for identification to any person who is under the age of 21 or who shows signs of

**intoxication.  We ask for identification to any person who appears to be under the age of thirty-five (35) years of age.**

**\*\*\***

**No alcoholic beverage shall be sold to anyone who is under twenty-one years of age or intoxicated.**

APP0319.  By contrast, the Alcohol Policy never even mentions a prohibition on a "knowing purchase of alcohol for a minor."  *Id*.

(2) Defendants' Shifting Rationales for Ms. Cocuzzo's Termination Is
    Evidence of Pretext and Discriminatory Animus

"The fact that the employer gave different reasons at different times for its [adverse employment] action surely supports a finding that the reason it ultimately settled on was fabricated."  *Thermo King*, supra, 585 F.3d at 449.  During the course of Defendants' internal investigation, then in response to the MCAD complaint, and finally during this litigation, the Defendants substantially changed the reasons provided for Ms. Cocuzzo's termination.  *Id.,* at 449-450 ("shifting explanations and ambiguous company policy support the conclusion that its explanations for [the employee's] discharge were pretextual"); *Burton*, supra, 798 F.3d at 236 (employer's rationale deemed suspect rather than legitimate where it had "not remained the same" throughout the case).

First, on February 24, 2023, Ms. Gillum advised Ms. Cocuzzo that she was being terminated for "sell[ing] alcohol to a minor."  APP0342.  The sale of alcohol to a minor is, indeed, a violation of Trader Joe's Alcohol Policy.  APP0319 ("No

alcoholic beverage shall be sold to anyone who is under twenty-one (21) years of age or intoxicated."). The problem is that Ms. Cocuzzo did not sell alcohol to a minor. The district court accepted Ms. Gillum's testimony that this represented a mere "typo." APP0543. However, taken in context, it is clear that Ms. Gillum was engaged in searching for a reason for termination.

Indeed, the very next day, on February 25, 2021, Ms. Gillum proffered a different reason for Ms. Cocuzzo's termination, not based on the Alcohol Policy – terminating Ms. Cocuzzo for an alleged violation of Trader Joe's "core value of integrity." APP0135. A reasonable juror could infer that Ms. Gillum understood that there had *not* been a violation of the Alcohol Policy (as later claimed) and, thus, conveniently changed her position in the notice of termination. In any event, as stated above, the facts also did not support a termination as a violation of the "core value of integrity" either as that policy merely states: "The definition of Integrity is simple. It means that you treat others as you would like to be treated." APP0453.

Then, after Ms. Cocuzzo brought her MCAD action in August 2021, Defendants changed their position again – asserting (on October 6, 2021) in that action that the reason for termination was not a violation of the Integrity Policy but rather a violation of the Alcohol Policy. APP0144.

Then, the Defendants changed their position again – claiming in interrogatory answers that the termination was based upon *both* a violation of Trader Joe's Alcohol Policy *and* a violation of Massachusetts liquor laws. APP0465 (Interrogatory Ans. No. 11).

Then, at deposition, Defendants admitted that the *sole* basis they were proffering in this litigation for Ms. Cocuzzo's termination was an alleged violation of Trader Joe's Alcohol Policy, not a violation of liquor laws. APP0382 (Gillum Depo., p. 135); APP0392 (Foote Depo., p. 20).

Then, when Defendants filed their Memorandum in Support of Summary Judgment, they contended again that Ms. Cocuzzo "violated the [Trader Joe's] alcohol policy by knowingly purchasing beer for an underage person" and by "placing Trader Joe's liquor license in jeopardy" – i.e. violating liquor laws. APP0072.

Finally, after Ms. Cocuzzo pointed out in her own brief that the liquor license was never "placed in jeopardy" because what she had done *did not* violate the law (APP0200, at n. 10) as Defendants admitted during discovery, Defendants deleted this reason for termination when they filed their Reply Memorandum. APP00478. This shifting reasoning for the termination supports a finding of pretext. *Thermo King*, supra, 585 F.3d at 449.

(3) Ms. Gillum's Failure To Provide Twice Yearly Written Performance Reviews, And Then Her Surreptitious Entry of Three-Years' Worth of Reviews One Week After Receiving The MCAD Complaint, Is Evidence of Discriminatory Intent

Pretext can be shown when the defendant uses deceit to cover her tracks. *Robinson v. Town of Marshfield*, 950 F.3d 21, 26 (1st Cir. 2020); <u>citing</u> *Ronda-Perez,* <u>supra</u>*,* 404 F.3d at 45. Despite being required to review Ms. Cocuzzo's performance in writing *twice per year* (APP0256-0257), Ms. Gillum stopped providing written evaluations of Ms. Cocuzzo after 2018. APP0224. Instead, Ms. Gillum entered the evaluations for the years 2019-2021 on the same date – six months *after* Ms. Cocuzzo's termination and one week *after* receiving Ms. Cocuzzo's MCAD Complaint. *Id.; see also* APP0531 (district court finding that "Cocuzzo's written performance evaluations for 2018, 2019, and 2020 were entered into the system on August 20, 2021). This permitted Ms. Gillum to be cagey with Ms. Cocuzzo's performance reviews and to belatedly massage them to fit any legal narrative after her termination. For instance, it could have allowed Ms. Gillum to terminate Ms. Cocuzzo for "performance issues" and later enter negative performance reviews to support this reasoning. Or, as in this case, it allowed Ms. Gillum to enter generally positive performance reviews after the fact to fit the narrative that Ms. Gillum "liked Ms. Cocuzzo" but had no choice but to terminate her for the alleged Alcohol Policy violation.

(4) Ms. Gillum's Encouraging of Ms. Cocuzzo to Retire Is Evidence of Discriminatory Intent

Although isolated or ambiguous remarks standing alone are generally insufficient to suggest discriminatory animus, such a remark when coupled with the other evidence of pretext set forth herein (such as disparate treatment and shifting reasons for termination) is enough to generate a genuine dispute of material fact as to pretext. *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 446-447, 646 N.E.2d 111 (1995). During the investigation of the incident at issue, Gillum attempted to coerce Ms. Cocuzzo into retiring based upon her age, stating:

> Captain Jenn told Gloria that she had the opportunity to retire and end her employment at Trader Joe's. Captain Jenn told Gloria that [if she retired] she would be able to "keep the narrative on your own terms" in this case. She told Gloria that if we proceeded without her resignation… ultimately the situation would not end up in her favor…"

APP0344. Such a remark aimed at an elder employee, particularly coupled with the other direct evidence of discrimination cited above, constitutes evidence of discrimination. *Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.*, 999 F.3d 37, 52 (1st Cir. 2021) (manager's remark that he "wanted to 'rejuvenate' the team/management/region and lower costs" was direct evidence of discrimination); citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 171 (1st Cir. 1998) ("[c]omment by [a] supervisor that the plaintiff's 'accounts could use some younger blood' constituted sufficient direct evidence of discriminatory intent").

(5) Data Provided By Defendants Supports The Discrimination Claim

On February 10, 2023, by agreement of counsel, Defendants produced a spreadsheet reflecting "dates of employment [and termination] for employees who worked with Plaintiff at Store #501." APP0449. The spreadsheet produced (APP0492-0497) and attached *to that email* was to reflect the age, date of hire and the date of separation for each such employee. *Id*. Gillum was hired as supervisor (known as a store "Captain") at Store #501 in 2018. The spreadsheet produced by Defendants is shocking and direct – it reflects that in the ten years prior to Gillum's hire as Captain at Store #501, not a single employee over the age of 40 was separated from employment. However, in a short time *after* Gillum was hired as Captain at Store #501, seven employees over the age of 40 were suddenly separated from employment. *Id*.

The district court made no comment on this data in its Order entering summary judgment. APP0529-APP0551. In their Reply Brief, Trader Joe's contended that this was a list that was attached to an answer to interrogatories and, based on that interrogatory, simply showed "people employed as of the date of Plaintiff's termination (February 24, 2021)." APP0479-0480. Therefore, Trader Joe's argued that the list did not show who left Trader Joe's before February 24, 2021. There are two problems with this argument. First, this list was *not* attached the interrogatories as later asserted by Trader Joe's in its Reply Brief, it was sent as

a stand-alone document in response to a discovery demand made on February 8, 2023. APP0449. In that correspondence, Trader Joe's had simply agreed to provide information for the entire time that Ms. Cocuzzo worked at Store #501. Defendants should not be credited with their belated position on this document after averting a motion to compel by leading Ms. Cocuzzo's counsel to believe the data showed the evidence set forth in the first paragraph of this section. See *Zampierollo-Rheinfeldt*, supra, 999 F.3d at 46-47 (failure to properly disclose triggers Rule 37(c)(1) and may preclude a party from using contrary information in a motion for summary judgment).

### III. Since Ms. Cocuzzo Only Needed To Show Pretext In Regards To Her Mass. G. L. c. 151B Claim, She Sustained Her Burden At Summary Judgment As To Both Defendants

As the district court noted, Massachusetts is a "pretext only jurisdiction," meaning that in order to survive summary judgment on a Mass. G. L. c. 151B claim, the plaintiff need only present evidence from which a reasonable jury could infer that the employer's reasons for termination were not the real reasons for termination. APP0539; citing *Brader v. Biogen, Inc.*, 983 F.3d 39, 59 (1st Cir. 2020). For the reasons set forth above in regards to the ADEA claim, Ms. Cocuzzo satisfied her burden to show pretext and, therefore, the district court erred by entering summary judgment on the G.L. c. 151B claim against both defendants.

## IV.  **Ms. Gillum Is Individually Liable Under G.L. c. 151B**

Mass. G. L. c. 151B, § 4 (4A) makes it unlawful for a person such as Ms.

Gillum to interfere with Ms. Cocuzzo's right to work free from discrimination.  *Id*.

The district court dismissed this claim, concluding that Ms. Cocuzzo had not

shown that Ms. Gillum had an intent to discriminate.  APP0550.  This was error.

For the same reasons set forth herein in regards to the ADEA claim, Ms. Cocuzzo

did show that Ms. Gillum had an intent to discriminate.  Therefore, the Order

entering summary judgment on this basis should be reversed.

## CONCLUSION

For the foregoing reasons, the Order on Defendants' Motion for Summary

Judgment and Final Judgment on all counts of Plaintiff's Complaint that entered in

favor of the Defendants should be reversed and the case remanded to the district

court for a jury trial on the merits.

**Plaintiff-Appellant Gloria Cocuzzo,**
By her attorney,

/s/ *Timothy J. Perry*
Timothy J. Perry (BBO #631397)
Court of Appeals Bar No. 62295
Perry Krumsiek LLP
One Boston Place, Suite 2600
Boson, MA  02108
(617) 720-4300

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word in 14-point Times New Roman font. This brief complies with Fed. R. App. P. Rule 32(a)(7) with regards to page limitations as it is less than 30 pages in length.

*Timothy Perry*

Timothy J. Perry
tperry@pkcounsel.com
Court of Appeals Bar No. 62295
Perry Krumsiek LLP
One Boston Place, Suite 2600
Boston, MA 02108
(617) 720-4300

# CERTIFICATE OF SERVICE

I, Timothy J. Perry, Esq., being over the age of 18 and an attorney at the law firm known as Perry Krumsiek LLP, hereby certify under oath that I electronically filed this foregoing Brief of Appellant and the Record Appendix. I further certify that all counsel for all parties were served these documents by the Electronic Court Filing system of the United States Court of Appeals for the First Circuit. Counsel so served are:

Ellen Lemire, Esq. (ELemire@littler.com)
Stephen T. Melnick, III, Esq. (SMelnick@littler.com)
Littler Mendelson, LLP
1 International Pl
Ste 2700
Boston, MA 02110-0000

Dated: November 13, 2023          /s/ *Timothy J. Perry*
                                  Timothy J. Perry

**ADDENDUM**

1. Order on Defendants' Motion for Summary Judgment (Doc. No. 43) and Defendants' Motion to Strike (Doc. No. 55)

2. Final Judgment

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLORIA COCUZZO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 22-10162-LTS |
| | ) |
| TRADER JOE'S EAST INC. and | ) |
| JENNIFER GILLUM, | ) |
| | ) |
| Defendants. | ) |
| | ) |

ORDER ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DOC. NO. 43) AND DEFENDANTS' MOTION TO STRIKE (DOC. NO. 55)

July 28, 2023

SOROKIN, J.

This is an age discrimination action brought by Gloria Cocuzzo against her former employer of seventeen years, Trader Joe's East Inc., and her former supervisor at Trader Joe's, Jennifer Gillum. Doc. No. 1-1.[1] Cocuzzo asserts age discrimination claims under both the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B. Id. at 12–13. Defendants now move this Court to grant summary judgment in their favor on all claims, Doc. No. 43, and to strike portions of Plaintiff's combined statement of material facts, Doc. No. 55. For the reasons described below, the Motion for Summary Judgment is ALLOWED and the Motion to Strike is ALLOWED IN PART AND OTHERWISE DENIED.

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

I.    BACKGROUND[2]

Defendant Trader Joe's is a national chain of specialty grocery stores. Doc. No. 49 ¶ 1. Each Trader Joe's store is staffed by a Captain (the term used for the manager in charge of the store), Mates, (assistant managers), Crew Members (non-supervisory staff), and possibly Merchants (also non-supervisory but a designation of the Crew Member role). Id. ¶ 2; Doc. No. 50-3 at 5.

Cocuzzo began her employment as a Crew Member at the Trader Joe's store in Brookline, Massachusetts in 2003 when she was 62 years old. Doc. No. 49 ¶¶ 4–5. In 2012, when Cocuzzo was 70 years old, the store Captain at the time, Chris Maguire, promoted Cocuzzo to a Merchant position. Doc. No. 49 ¶ 9. Several years later in 2018, Defendant Jennifer Gillum became the Captain of the Brookline store. Id. ¶ 10. Cocuzzo testified that she received annual performance reviews at Trader Joe's, Gillum gave her a 2020 performance review, and the 2020

---

[2] The facts recited below are undisputed facts based on the parties' Combined Statement of Material Facts ("SMF"), Doc. No. 49, and other evidence cited by the parties. Where facts are disputed, reasonable inferences are drawn in Cocuzzo's (the non-movant's) favor, though the court is "not obligated to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the [c]ourt by a party." Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014) (alteration in original) (citation and internal quotation marks omitted).

The Court notes that many of Cocuzzo's responses to Defendants' assertions in the SMF are non-responsive to the assertions. In many instances, Cocuzzo purports to dispute an assertion but then states bases for the dispute that do not contradict, or otherwise go beyond, all or part of the assertion. In addition, some of the citations to evidence purportedly supporting Cocuzzo's assertions do not support, in full or in part, the point asserted. Local Rule 56.1 requires "page references to affidavits, depositions and other documentation" in each party's statement of material facts, and "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." L.R. 56.1; see also Gattineri v. Wynn MA, LLC, 63 F.4th 71, 84 (1st Cir. 2023); Adamson, 750 F.3d at 78. Accordingly, the Court views any of Defendants' assertions in the SMF (or any part of any assertion) that Cocuzzo does not directly dispute and support with citation(s) to evidence to be admitted and undisputed for purposes of this Motion for Summary Judgment. Defendants' Motion to Strike, Doc. No. 55, is ALLOWED IN PART on this basis.

review was positive and Cocuzzo did not remember anything negative in it. Doc. No. 45-2 at 10. Gillum also approved a $1,200 performance bonus and a $1.00 per hour raise for Gillum in 2020. Id. at 12; Doc. No. 49 ¶ 11. The written performance evaluation records reflect that Cocuzzo's written performance evaluations for 2018, 2019, and 2020 were entered into the system on August 20, 2021. See Doc. No. 50-7. All three were positive. Id.

The Brookline Trader Joe's sells alcohol, and thus all Crew Members including Cocuzzo received training on selling alcohol and were subject to the store alcohol policy. Id. ¶ 6; Doc. No. 45-2 at 15. The Trader Joe's Brookline Alcohol Policy ("the Alcohol Policy") states that "no alcoholic beverage shall be sold to anyone who is under twenty-one (21) years of age or intoxicated." Doc. No. 50-5 at 2. The policy explains that Trader Joe's responsibilities include "comply[ing] with all Federal, State and the Town of Brookline's Laws." Id. It also specifies procedures for verifying that a customer is twenty-one years of age, as well as the forms of ID that are acceptable for age verification. Id. The Alcohol Policy then specifies disciplinary action for violations as follows:

> **What is the disciplinary action for violating our Alcohol Policy?**
> Any Crew Member, Merchant, Mate, and/or Captain whose job performance or conduct violates our Alcohol Policy or is not in line with the company's standards will be subject to disciplinary action, which may range from a written warning to termination of employment. Any violation of federal, the State of Massachusetts, local laws, and the Town of Brookline's By-Laws may result in a fine and/or suspension of your store's liquor license, as well as a fine to the Crew Member who made the sale.

Id.

On Saturday, February 20, 2021, Cocuzzo worked her usual shift at the Brookline Trader Joe's starting at 10 a.m. Doc. No. 49 ¶ 12. Cocuzzo's grandson Kevin Quinn, who was born in July 2001, was a Trader Joe's employee as well and also had a shift at the Brookline store that day—February 20th. Id. ¶¶ 13–14. The parties agree that at some time on that day, Cocuzzo and

3

Quinn went together to the alcohol section of the Brookline Trader Joe's, Quinn selected beer

from that section, and Quinn handed the beer to Cocuzzo. Id. ¶ 15; Doc. No. 45-2 at 19–20.

Cocuzzo then purchased the beer. Doc. No. 45-2 at 20. When asked at her deposition, "You

purchased the beer for Mr. Quinn?" Cocuzzo responded "Yes." Doc. No. 45-2 at 20.[3]

   Another Trader Joe's employee reported the incident to Captain Gillum, Doc. No. 49 ¶

18,[4] and Gillum approached Cocuzzo just after Cocuzzo purchased the beer and asked her about

the incident, id. ¶ 19. Cocuzzo testified that she was on her way to put the beer in the refrigerator

in the back of the store until she left when Gillum approached her. Doc. No. 45-2 at 21. She

further explained that in her conversation with Gillum that followed, "[Gillum] was addressing

the fact that I – I – the beer was for Kevin, I guess," id. at 21–22, and Cocuzzo was "just so

upset" because "[she] didn't think [she] was doing anything wrong," id. at 22. Cocuzzo did not

testify or submit any evidence suggesting that in this initial conversation, she told Gillum that

Cocuzzo purchased the beer for herself to later provide to guests coming to dinner at her home,

---

[3] Cocuzzo repeatedly purports to dispute the notion that she bought the beer for Quinn in the
statement of material facts, see Doc. No. 49 ¶¶ 17–19, but the Court disregards this dispute for
several reasons. This position is contrary to Cocuzzo's testimony that she purchased the beer for
Quinn, see Doc. No. 45-2 at 20, as well as the email Cocuzzo sent to Gillum shortly after the
incident stating that she "purchas[ed] beer for [her] grandson, Kevin," Doc. No. 45-2 at 47; cf.
Escribano-Reyes v. Pro. Hepa Certificate Corp., 817 F.3d 380, 386 (1st Cir. 2016) ("[W]here a
party has given clear answers to unambiguous questions in discovery, that party cannot create a
conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there
is a 'satisfactory explanation of why the testimony [has] changed." (alterations in original)
(internal quotation marks and citations omitted)). In addition, the only evidence Cocuzzo cites
in support of her purported dispute of this fact suggests that Quinn did not ask her to buy the beer
but does not dispute whether she bought the beer for Quinn at all, regardless of whether he asked
her to buy it. See Doc. No. 49 ¶¶ 17–19; see also L.R. 56.1. The Court accordingly holds that the
fact that Cocuzzo bought the beer for Quinn is undisputed.
[4] Though Cocuzzo disputes that Quinn asked her to buy the beer, who (if anyone) saw the
alleged incident, and who reported the incident to Gillum, she does not offer any evidence
disputing that another employee reported the incident to Gillum. See Doc. No. 49 ¶ 18.

including Kevin Quinn. Id. at 21–22. Following that conversation, Gillum contacted Christopher Maguire, her Regional Vice President, about the situation. Doc. No. 49 ¶ 20.

On February 24, 2021, a few days after the incident, Gillum and Mate Brian Foote met with Cocuzzo. Doc. No. 49 ¶ 24. Gillum explained to Cocuzzo that her employment was ending because of the beer purchase incident but gave her the option to either resign or retire. Doc. No. 45-4 at 4; Doc. No. 45-2 at 25–26. In the passage of her deposition testimony about the February 24th meeting, Cocuzzo was asked what reason she was given for her termination. Doc. No. 45-2 at 27. She responded, "[Gillum] said because of the – the incident with – with my purchase of – of the beer." Id. In the meeting, Cocuzzo took the retirement option. Doc. No. 45-2 at 27; Doc. No. 49 ¶ 27.

Both Gillum and Foote wrote notes on the date the meeting with Cocuzzo occurred (February 24th)—nearly contemporaneous documentation of their perspectives on what happened during the meeting and the reasons they say they gave Cocuzzo for ending her employment. Doc. Nos. 50-9, 50-10. Gillum's notes recount the following. Gillum told Cocuzzo that she had made her Regional Vice President Christopher Maguire "aware of the situation, which [she] would need to do with any scenario like this." Doc. No. 50-9 at 2. Gillum stated that "with a situation as this—there is not a decision that needs to be made either by [Gillum] or by [their] regional; the only decision that was made was by [Cocuzzo] to sell[5] alcohol to a minor. . . . [T]here are some circumstances that cross a line." Id. Gillum then explained that Trader Joe's would ask for a statement from her, but that the outcome of the process "would not likely end in [Cocuzzo's]

_____

[5] Gillum testified that the use of the word "sell" was a typo, and she meant to write "purchase" alcohol. Doc. No. 54-1 at 36–37. Additionally, Foote's notes from the conversation state that Gillum described the decision at issue as Cocuzzo's decision to "buy alcohol" for an underage person. Doc. No. 50-10.

favor." Id. Gillum offered to Cocuzzo "as a suggestion – if she decided to resign or retire – she would have an opportunity to keep the narrative in her terms." Id. Cocuzzo stated that Quinn did not ask her to buy the beer, and Gillum responded by "relay[ing] to her what a crew member who was wine helmsing on Saturday at 11 AM witnessed and time-lin[ing] the sequence of events for her." Id. Cocuzzo did not reply to that assertion, and then stated that she would retire. Id. Gillum said that she could decide whether she wanted to finish her shift that day or leave, and Cocuzzo decided to punch out and leave for the day. Id.

Foote's notes recount the following. Gillum had asked Foote to be a witness in the conversation with Cocuzzo. Doc. No. 50-10 at 2. Gillum "outlined the situation" and "told [Cocuzzo] that due to her purchasing alcohol for a minor (Crew Member Kevin Quinn) [Gillum] had been in communication with [their] Regional, Chris Maguire." Id. Gillum "told Gloria that a decision was not needed to be made by herself or Chris Maguire, because only [sic] decision that mattered in this circumstance was [Cocuzzo's] own decision to buy alcohol for someone underage." Id. Gillum then gave Cocuzzo the "opportunity to retire and end her employment at Trader Joe's," which would let her "keep the narrative on [her] own terms." Id. But Gillum explained that if they proceeded without Cocuzzo's resignation, "ultimately the situation would not end up in her favor because she crossed a line that doesn't need to be looked into further." Id. Cocuzzo then asked if Quinn would lose his job, to which Gillum responded that they would need to go through the "typical process" including "tak[ing] a statement from him regarding what occurred before [they] could continue with the process." Id. Cocuzzo then stated, "I want you to know that he didn't ask me to buy it." Id. Gillum responded that the "Crew member who was in the wine section the day that [Cocuzzo] purchased the beer saw the minor take the beer off the shelf, put it in a shopping cart, and bring it over to [Cocuzzo]." Id. Cocuzzo then "stated

that she would like to retire." Id.  Gillum said that she could decide whether she wanted to finish

her shift that day or leave, and Cocuzzo decided to leave and not finish the shift. Id.

After the meeting but on the same day, February 24, 2021, Cocuzzo sent an email to

Gillum stating the following:

> I am putting this in writing to explain about my being fired from Trader Joe's after
> 16 years. This termination was prompted by purchasing beer for my grandson,
> Kevin[,] who was coming to dinner that evening at my home. I totally did not think
> of his age! Kevin does drink beer at home with his family so I did not think twice
> about this transaction[.] I've loved my job at Trader Joe's and therefore would do
> nothing to jeopardize my position. I am saddened by this whole incident because
> I've valued my job. Trader Joe's is a fabulous company!

Doc. No. 45-2 at 47. After receiving the email, Gillum changed Cocuzzo's retirement to a

termination and asked her to sign a termination notice the following day, but Cocuzzo refused to

sign the termination notice. Id. at 48; Doc. No. 49 ¶ 29. The termination notice was signed by

Gillum and witness Joseph Gionet on February 25, 2021. Doc. No. 45-2 at 48. It states the

following as the reasons Cocuzzo's "performance [was] found to be unsatisfactory or

unacceptable":

> Gloria, on February 20th, 2021, an underage crew member selected and placed two
> 4-packs of beer into a cart in the alcohol section of our store. You proceeded to
> purchase this beer. When I asked you about the beer afterward, you said the alcohol
> was for the underage crew member.
>
> The decision to purchase alcohol for a minor directly goes against our core value
> of integrity. Based on this decision, you [sic] employment is terminated effectively
> [sic] immediately.

Id. Trader Joe's "Values Guide" states seven "key" values that guide the company and crew

members, including the value of "integrity." Doc. No. 50-17 at 2. The section of the guide on

integrity states, "At Trader Joe's we demand that all Crew Members behave with unyielding

Integrity. The definition of Integrity is simple . . . it means that you treat others as you would like

to be treated. . . . [T]hose that do not have Integrity cannot be part of Trader Joe's." Id.

Additional statements of Trader Joe's asserted reasons for terminating Cocuzzo include the following. Gillum testified that the reason for Cocuzzo's termination was her purchase of the alcohol for an underage person in violation of state law and the Alcohol Policy, Doc. No. 45-4 at 21, though she also testified that she was not sure she spoke about the purchase as specifically being a violation of Trader Joe's Alcohol Policy in her conversation with Cocuzzo on February 20th, Doc. No. 45-4 at 11–12. Foote similarly testified that Cocuzzo was terminated for violation of the Trader Joe's Alcohol Policy. Doc. No. 50-13 at 7. In an "initial statement of position" of Trader Joe's in response to Cocuzzo's Charge of Discrimination, Trader Joe's stated, "Based upon her admission and the report of the Crew Member, it was determined that Complainant had violated Trader Joe's Alcohol Policy. Further, by violating the law as an employee of Trader Joe's, her conduct jeopardized the alcohol sales license of the store." Doc. No. 45-3 at 9; <u>see also</u> Doc. No. 50-3 at 25. In an interrogatory, Cocuzzo asked Trader Joe's to "[i]dentify each and every reason for the termination of Cocuzzo." Doc. No. 50-18 at 11. After raising various objections, Trader Joe's responded:

> On or about February 20, 2021, Kevin Quinn, Complainant's grandson and a Trader Joe's employee who was under 21, selected two 4-packs of beer, which Complainant then purchased for Mr. Quinn. Complainant admitted to same. Because this violated both Trader Joe's policy and Massachusetts state law, the decision was made to offer Plaintiff the option to either resign, retire, or be involuntarily terminated. Plaintiff initially chose to retire, but changed her mind and instead asked to be involuntarily terminated. Plaintiff's age played no part in this decision.

<u>Id.</u>

When asked about why she thinks she was terminated because of her age, Cocuzzo responded, "Because what else could it be? What did I do? . . . What else could it be? . . . I performed my job with enthusiasm for 17 years. I loved it there. I knew most of the customers there. Governor Dukakis used to come in asking for me. I loved my job there. . . . What else

8

could I have done? What else – what else could I have done?" Doc. No. 45-2 at 28. When Quinn reported to work on a date shortly after the beer incident, Gillum began to ask him about the circumstances of that incident. Not long into that conversation Quinn asked to resign; he was not thereafter disciplined by Trader Joe's for any alleged or actual involvement in the beer incident on his part. See Doc. No. 54-1 at 18–19, 45.

In Maguire's region in recent years, Trader Joe's terminated one employee for purchasing alcohol while underage, Doc. No. 49 ¶ 35, terminated two employees for giving a crew discount for an alcohol purchase to a customer who was not a crew member, id. ¶¶ 36–37, terminated one employee for only ringing up a customer who had two cans of hard cider for one can, id. ¶ 38, issued written warnings to five employees for failing to check the identification of a customer buying alcohol, id. ¶¶ 39–42, 44, and issued a written warning to one employee for selling a bottle of vodka to an underage Trader Joe's crew member (where the warned employee brought the sale to the attention of a Trader Joe's Mate immediately after) and terminated the underage crew member who purchased the vodka, id. ¶ 43; Doc. No. 45-6 at 4–5. All of the aforementioned disciplined employees were under the age of 40 at the time of the discipline. Doc. No. 49 ¶¶ 35–44.

## II.    LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Rsch. Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986)). The Court is "obliged to []view the record in the light most favorable

to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."

LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore

"conclusory allegations, improbable inferences, and unsupported speculation." Prescott v.

Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co.,

896 F.2d 5, 8 (1st Cir. 1990)).

 "The analysis of a discrimination claim filed pursuant to the ADEA and Chapter 151B

are so similar that they can be analyzed together." Tombeno v. FedEx Corp. Servs., Inc., 284

F.Supp.3d 80, 86 (D. Mass. 2018) (citing Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir.

2014)). Under either statute, "it is the employee's burden to prove that but for [her] employer's

discrimination, [she] would not have been terminated." Id. If the employee does not establish

direct evidence of age discrimination, the McDonnell Douglas burden-shifting framework is

applied. Adamson, 750 F.3d at 78; Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc., 999

F.3d 37, 50 (1st Cir. 2021); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05

(1973). The first step of this framework requires the employee to establish a prima facie case of

discrimination by producing evidence that shows the following:

> (1) [she] was at least forty years of age; (2) [her] work met [her] employer's
> expectations; (3) [her] employer took an adverse action against [her]; and (4) [her]
> employer treated similarly situated younger employees differently with respect to
> the adverse action.

Lopez-Rosario v. Programa Seasonal Head Start/Early Head Start De La Diocesis De Mayaguez,

Inc., 847 F. App'x 9, 11 (1st Cir. 2021). Establishing a prima facie case "gives rise to a

rebuttable presumption of discrimination and shifts the burden of production—but not

persuasion—'to the employer to articulate a legitimate, non-discriminatory reason for its

decisions.'" <u>Adamson</u>, 750 F.3d at 78 (quoting <u>Vélez v. Thermo King de P.R., Inc.</u>, 585 F.3d 441, 447 (1st Cir. 2009)).

If the employer meets their burden to articulate a legitimate, non-discriminatory reason under that second step, the third step shifts the focus back to the employee. There is a difference between the federal and state law standard under step three. In order to survive summary judgment under a federal ADEA claim, a plaintiff must proffer sufficient evidence to raise a genuine issue of material fact as to each of the following two issues: (1) whether the employer's articulated reason was pretextual, and (2) whether the real reason for the adverse employment decision was discriminatory animus. <u>See Ray v. Ropes & Gray LLP</u>, 799 F.3d 99, 113 (1st Cir. 2015); <u>Adamson</u>, 750 F.3d at 78–79. These two requirements are distinct in the federal claim analysis, though the same evidence may be used to demonstrate both. <u>Espinal v. Nat'l Grid NE Holdings 2, LLC</u>, 693 F.3d 31, 35 (1st Cir. 2012). Massachusetts, however, "is a pretext only jurisdiction," meaning that in order to survive summary judgment on a Chapter 151B claim, a plaintiff "need only present evidence from which a reasonable jury could infer that the [employer's] facially proper reasons given for its action against him were not the real reasons for that action." <u>Bulwer v. Mount Auburn Hosp.</u>, 46 N.E.3d 24, 33 (Mass. 2016) (internal quotation marks and citations omitted); <u>see also Brader v. Biogen Inc.</u>, 983 F.3d 39, 59 (1st Cir. 2020).

III.   <u>DISCUSSION</u>[6]

A.   <u>Direct Evidence of Discrimination</u>

Direct evidence of discrimination is "evidence which, in and of itself, shows a discriminatory animus"; it "consists of statements by a decisionmaker that directly reflect the

---

[6] In this section, the Court first analyzes the claims against Trader Joe's, and then separately analyzes the claims against Individual Defendant Gillum.

alleged animus and bear squarely on the contested employment decision." <u>Zampierollo-Rheinfeldt</u>, 999 F.3d at 51 (internal quotation marks and citations omitted). Such evidence shows that the conduct was discriminatory "without reliance on inference or presumption." <u>S. Middlesex Opportunity Council, Inc. v. Town of Framingham</u>, 752 F. Supp. 2d 85, 96 (D. Mass. 2010) (internal quotation marks and citations omitted). Direct evidence is "relatively rare," but "that burden is not insurmountable." <u>Zampierollo-Rheinfeldt</u>, 999 F.3d at 52.

The Court rejects Cocuzzo's assertion that she has presented direct evidence of age discrimination. Much of the evidence she points to as direct is, in fact, circumstantial evidence comparing Trader Joe's treatment of other employees to their treatment of Cocuzzo, which would require an inference to support a conclusion of discrimination. <u>See</u> Doc. No. 48 at 4–6. These are not statements by decisionmakers at Trader Joe's that directly reflect animus and bear on the contested decision to terminate Cocuzzo. <u>See</u> <u>Zampierollo-Rheinfeldt</u>, 999 F.3d at 51.

The one statement Cocuzzo points to that could potentially constitute direct evidence of age discrimination is drawn from Foote's notes from the February 24, 2021 meeting between Gillum, Foote, and Cocuzzo. <u>See</u> Doc. No. 48 at 6–7; Doc. No. 50-10. Foote recounts:

> Captain Jenn [Gillum] told Gloria [Cocuzzo] that she had the opportunity to retire and end her employment at Trader Joe's. Captain Jenn told Gloria that she would be able to "keep the narrative on your own to [sic] terms" in this case. She told Gloria that if we proceeded without her resignation that we would take a statement from her, and ultimately the situation would not end up in her favor because she crossed a line that doesn't need to be looked into further.

Doc. No. 50-10; <u>see also</u> Doc. No. 50-9. Cocuzzo suggests that these statements constitute attempted coercion of Cocuzzo into retirement based on her age. Doc. No. 48 at 6–7. Even when this statement is viewed in the light most favorable to Cocuzzo, however, no reasonable jury could interpret these statements as direct evidence of discrimination. <u>See, e.g.</u>, <u>Treadway v. Cal. Prod. Corp.</u>, 659 F. App'x 201, 207 (6th Cir. 2016) ("The terms 'retire' and 'retirement' alone,

without any evidence that they are being used as a proxy for age to express discriminatory bias, are not direct evidence of age discrimination."); France v. Johnson, 795 F.3d 1170, 1173 (9th Cir. 2015), as amended on reh'g (Oct. 14, 2015) (holding repeated retirement discussions with employee were not direct evidence of age discrimination); Ziegler v. Beverly Enters.-Minn., Inc., 133 F.3d 671, 676 (8th Cir. 1998) ("We do not think that suggesting retirement to an employee who is eligible for retirement, and who is not performing satisfactorily, provides a reasonable basis for inferring age discrimination.").[7] This is particularly true given the context of the statement to Cocuzzo offering the retirement option: It was made in a meeting prompted by the alcohol purchase incident, and there is no evidence of references to Cocuzzo's age or retirement prior or subsequent to this meeting. Cocuzzo has not established direct evidence of discrimination. The Court thus considers both the federal and state claims under the McDonnell Douglas burden-shifting framework.

B.    McDonnell Douglas Burden-Shifting Framework

Under the first step of the McDonnell Douglas framework, Trader Joe's has agreed to "assume for purposes of this Motion that Plaintiff can meet her *prima facie* case." Doc. No. 44 at 5. The Court assumes the same. See, e.g., Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (finding it "expeditious and appropriate" to assume the plaintiff

---

[7] The cases Cocuzzo cites in support of her argument that the statements in the meeting constitute direct evidence are easily distinguishable from the present case because those cases involved statements by employers that far more directly suggest animus and a connection between that animus and the employment decision. See, e.g., Zampierollo-Rheinfeldt, 999 F.3d at 52 (holding that statement that employee was being terminated because employer wanted to "rejuvenate" the team/management/region and lower costs was direct evidence of discrimination); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 171 (1st Cir. 1998) (citing with approval a Seventh Circuit opinion holding that a "[c]omment by [a] supervisor that the plaintiff's 'accounts could use some younger blood' constituted sufficient direct evidence of discriminatory intent" (quoting EEOC v. G-K-G, Inc., 39 F.3d 740, 746 (7th Cir. 1994))).

had made out a prima facie case where primary focus of dispute was whether asserted grounds for termination were pretextual); Adamson, 750 F.3d at 79 (same).

Under the second step, Trader Joe's has met its burden of production to "articulate a legitimate, non-discriminatory reason for its decisions." Adamson, 750 F.3d at 78. Their asserted reason is that Cocuzzo "violated the [Trader Joe's] alcohol policy by knowingly purchasing beer for an underage person . . . ." Doc. No. 44 at 5; see also Doc. No. 54 at 4. Trader Joe's supports this asserted reason with admissible evidence in the record. See, e.g., Doc. No. 45-2 at 47 (statement by Cocuzzo in email to Gillum stating that "this termination was prompted by purchasing beer for my grandson, Kevin[,] who was coming to dinner that evening at my home"); Doc. No. 45-2 at 48; Doc. Nos 50-9, 50-10. Trader Joe's has thus satisfied its low burden under step two.[8]

The burden now shifts back to Cocuzzo under the third step. For purposes of summary judgment, Cocuzzo must demonstrate a genuine dispute of material fact as to whether the reason for Cocuzzo's termination articulated by Trader Joe's was pretextual, and for purposes of the federal claim only, whether the true reason was discriminatory animus. See Ray, 799 F.3d at 113; Adamson, 750 F.3d at 78–79. Bulwer, 46 N.E.3d at 33. For the reasons explained below, the Court concludes that Cocuzzo has not proffered sufficient evidence to raise genuine issues of material fact as to either pretext or discriminatory animus.

First, Cocuzzo's arguments about the inconsistencies and inaccuracies in the reasons for Cocuzzo's termination stated at various times by Trader Joe's and its employees are insufficient

---

[8] The Court will consider Cocuzzo's various arguments regarding alleged inconsistencies in reasons given by Trader Joe's for the termination under the pretext analysis at step three. See infra. The reason articulated by Trader Joe's and supported by citations to admissible evidence, as described above, is sufficient to meet Trader Joe's burden of production at step two.

to defeat summary judgment under the applicable legal standard. The reason given by
Defendants for the termination—Cocuzzo's purchase of alcohol for an underage person—has
never wavered. Cocuzzo alleges inconsistencies in the following explanations of why Trader
Joe's found that reason warranted termination: stating in the termination report that was a
violation of Trader Joe's "core value of integrity," Doc. No. 45-2 at 48; stating in an
interrogatory answer during discovery that it was a violation of both Trader Joe's policy and
Massachusetts state law, Doc. No. 50-18 at 11, and stating during depositions that it was a
violation of Trader Joe's policy and/or law, Doc. No. 50-12 at 34; Doc. No. 50-13 at 7.[9] All of
these explanations are grounded on and follow obviously from the same core fact: the knowing
purchase of alcohol for a minor. They fail to demonstrate what Cocuzzo must show: "such
weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's
proffered legitimate reasons for its action that a reasonable factfinder could rationally find them
unworthy of credence . . . ." Adamson, 750 F.3d at 79 (internal quotation marks omitted)
(quoting Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662–63 (1st Cir. 2010)).
Even drawing all reasonable inferences in Cocuzzo's favor, no reasonable factfinder could find

---

[9] Cocuzzo points to the fact that Gillum's notes from the February 24th meeting explain the issue
as based on her "decision . . to sell alcohol to a minor," Doc. No. 50-9 (emphasis added); see also
Doc. No. 48 at 17, as an additional alleged inconsistent and conflicting reason given for the
termination. However, no evidence suggests that the use of the word "sell" rather than
"purchase" was anything other than a typo. Gillum testified that the use of the word "sell" was a
typo and she meant to write "purchase" alcohol, Doc. No. 54-1 at 36–37, a later sentence in
Gillum's same notes reference a comment by Cocuzzo about Quinn not asking "her to buy" (as
opposed to "sell") the beer, Doc. No. 50-9 at 2, Foote's notes from the conversation state that
Gillum described the decision at issue as Cocuzzo's decision to "buy alcohol" for an underage
person, Doc. No. 50-10, and nowhere else in the record does Gillum, Cocuzzo, or anyone else
suggest that Cocuzzo sold the beer. Thus, no reasonable jury could consider this note referencing
selling alcohol to a minor as an "inconsistency," especially not one suggestive of pretext.

based on these explanations that the asserted reason for the termination—the purchase of alcohol for an underage person—is "unworthy of credence." Id.

Cocuzzo's related argument that her conduct was not actually illegal or in violation of Trader Joe's policy also fails because those are not questions before the Court. Rather, the Court's "task is limited to determining whether the employer 'believe[d] in the accuracy of the reason given for the adverse employment action.'" Espinal, 693 F.3d at 35 (alteration in original) (quoting Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 67 (1st Cir. 2008)); see also Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000) ("[T]he question is not whether [the plaintiff] was actually performing below expectations, but whether [her employer] believed that she was."). This limitation on the Court's role exists because "the anti-discrimination laws do not insure against inaccuracy or flawed business judgment on the employer's part; rather, they are designed to protect against, and to prevent, actions spurred by some discriminatory animus." Kouvchinov, 537 F.3d 62, 67 (1st Cir. 2008); see also Espinal, 693 F.3d at 35 ("[The Court] do[es] not sit as a super-personnel department that reexamines an entity's business decisions." (internal quotation marks and citations omitted)). Here, therefore, "it is not enough for [Cocuzzo] to show that the decisionmaker acted on an incorrect perception" of the law or the specific terms of Trader Joe's policy. Kouvchinov, 537 F.3d at 67. Instead, she "must show that the decisionmaker did not believe in the accuracy of the reason given" for her termination. Id. Cocuzzo has not presented any evidence suggesting that as of the time of the termination, the decisionmakers at Trader Joe's did not believe that she had purchased alcohol for an underage person and that action violated Trader Joe's Alcohol Policy. See supra Section I.

Second, there is no evidence that Cocuzzo was treated differently from similarly situated employees. Demonstrating an inference of pretext based on evidence of disparate treatment requires a plaintiff to identify a "similarly situated comparator": a person who is "substantially similar to . . . the complainant in all relevant aspects concerning the adverse employment decision." Dusel v. Factory Mut. Ins. Co., 52 F.4th 495, 507 (1st Cir. 2022) (citations and internal quotation marks omitted). In offering such comparative evidence, the plaintiff "bears the burden of showing that the individuals with whom [she] seeks to be compared have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999) (internal quotation marks and citations omitted); see also Jones v. Jasper Wyman & Son, No. 1:20-CV-00383-JAW, 2022 WL 2802889, at *55 (D. Me. July 18, 2022).

Cocuzzo references six other Trader Joe's employees who she alleges were under age 40 and received written warnings rather than termination for what Cocuzzo asserts was "the same offense [she] was accused of." Doc. No. 48 at 15. However, none of the employees she references were similarly situated. Five of the six referenced employees were accused of failing to check the identification of a customer buying alcohol, see Doc. No. 49 ¶¶ 39–42, 44; Doc. No. 45-6 at 6–7, 11–13, and the sixth sold a bottle of alcohol to a fellow crew member who is underage, but then immediately brought it to the attention of a Trader Joe's "mate" and the underage crew member who purchased the alcohol was terminated, see Doc. No. 49 ¶ 35, 43; Doc. No. 45-6 at 4–5. Thus, although these six individuals received written warnings rather than termination, their offenses were substantially different than the offense Cocuzzo was accused of: knowingly purchasing alcohol for a person who was underage. The only other employees with

documents in the record reflecting discipline or terminations for violations of the Alcohol Policy at stores in Maguire's region from 2018 to February 2023, see Doc. No. 45-6 at 1–2, are employees who were under age 40 and terminated, like Cocuzzo, for their alleged violations, see Doc. No. 49 ¶¶ 35–38; Doc. No. 45-6 at 5, 8–10. Since Cocuzzo has failed to identify any similarly situated comparators treated differently, there is not comparative evidence of disparate treatment from which a reasonable jury could infer the asserted reason for Cocuzzo's termination was pretextual.[10]

Third, Cocuzzo cites no affirmative evidence of pretext or discriminatory animus. She does not cite evidence of any comments about or actions related to Cocuzzo's age by Trader Joe's or its employees. Nor does she cite evidence of Trader Joe's or its employees making more general statements about older employees or a desire for younger employees. The only potentially age-related comment Cocuzzo references is the above-described statement by Gillum in the February 24, 2021 meeting offering Cocuzzo the option of retirement as an alternative to termination. See Doc. Nos. 50-9, 50-10. Yet in context, this reference to retirement could not, without more, be reasonably interpreted as evidence of pretext or discriminatory animus. This comment was made in a meeting prompted by, and held very soon after, Cocuzzo's purchase of alcohol for an underage person. There is no evidence before the Court that any Trader Joe's

---

[10] Cocuzzo's further argument that Quinn, her grandson who was also an employee at the same Trader Joe's, was a similarly situated employee treated differently is meritless. As Cocuzzo herself testified, Quinn quit his job at Trader Joe's of his own volition after Cocuzzo's termination. See Doc. No. 54-1 at 45. Gillum testified that Quinn asked to resign shortly after the incident when Gillum approached him to "ask him about his side of things." Id. at 18–19. Thus, Quinn is not a similarly situated comparator to Cocuzzo because not only was his role in the incident different than hers, but he quit before Trader Joe's had the time to go through the process of taking his statement and making a decision about what, if any, disciplinary action to take with him.

employees made any other reference to Cocuzzo's retirement prior to the February 24th meeting, or that there was any attempt to "coerce" Cocuzzo into retirement.

The only affirmative evidence before the Court points in the opposite direction, suggesting that the purchase of alcohol for an underage person was the true reason for Cocuzzo's termination. Cocuzzo admitted to purchasing alcohol for her underage grandson not only in her deposition, Doc. No. 45-2 at 20, but in an email to Gillum just before her termination, Doc. No. 45-2 at 47. All documentation of the termination process and testimony concerning that process from Trader Joe's and its employees indicates that the termination decision was entirely prompted by and carried out based on Cocuzzo's purchase of alcohol for a minor on February 20, 2021. See supra Section I.

Fourth, Cocuzzo testified that in 2020 Gillum gave her a positive employment review, raise in her hourly wage, and performance bonus. Doc. No. 45-2 at 10–12. Maguire, who was Regional Vice President at the time of Cocuzzo's termination (and consulted by Gillum during that process) but previously the Captain of the Brookline store, had promoted Cocuzzo to the Merchant position when she was 70 years old. See Doc. No. 49 ¶¶ 8–9; Doc. No. 45-2 at 8. "[I]t is improbable that the same persons who hire or promote someone already in an older age bracket," or give that person a raise and bonus, "will suddenly develop an aversion to older people." Dziamba v. Warner & Stackpole LLP, 778 N.E.2d 927, 934 (Mass. App. Ct. 2002).

Finally, as recently explained by the First Circuit, "one way in which a plaintiff can establish that an employer's proffered explanation was a pretext to conceal its true motives is . . . by showing that the employer's explanation is not just wrong, but that it is so implausible that the employer more likely than not does not believe it." Forsythe v. Wayfair Inc., 27 F.4th 67, 80 (1st Cir. 2022). Here, Cocuzzo posits that firing a successful employee for violation of the Alcohol

Policy by buying alcohol to serve at a dinner at her home to her grandson is just such an implausible reason. Under the particular circumstances of this case, the Court disagrees. Recently before the beer incident, Gillum, the relevant Trader Joe's supervisor, reviewed Cocuzzo positively and rewarded her with a bonus and raise. See Doc. No. 45-2 at 10–12. The moment Gillum learned of Cocuzzo's purchase of beer for her grandson, which was moments after the purchase, she confronted Cocuzzo about it. See Doc. No. 49 ¶ 19. Days later, Gillum told Cocuzzo Trader Joe's was ending her employment for the beer purchase. See Doc. No. 45-2 at 25–26; Doc. No. 50-10. In the absence of any contrary relevant evidence in the record, the sequence of events credits that Trader Joe's enforces a zero-tolerance policy concerning the knowing purchase of alcohol for minors.

In a variation on this argument, Cocuzzo contends that Massachusetts law permits a grandparent to serve alcohol in her home to her underage grandson. See Doc. No. 48 at 18. Assuming that accurately describes Massachusetts law, Cocuzzo has submitted no evidence that Gillum knew of that provision in Massachusetts law and understood it to permit Cocuzzo's actions at the time. To the contrary, the evidence shows Gillum believed the purchase of alcohol for a minor violated state law, and that the violation of state law was a violation of the Trader Joe's Alcohol Policy (specifically, the first paragraph of the Policy). See Doc. No. 45-4 at 15–17; Doc. No. 50-12 at 34; Doc. No. 50-5 at 2. Moreover, Gillum was not required to believe Cocuzzo's statement in her email that she purchased the alcohol to serve to Quinn with dinner at her home. There is no evidence before the Court that Cocuzzo gave that explanation when initially confronted on the date of the purchase or during the meeting about her likely termination on February 24th. Nor is there evidence that Cocuzzo purchased any food for dinner with the beer. After Gillum received the email implying the purchase was for dinner with Quinn at

Cocuzzo's home, Gillum terminated Cocuzzo, demonstrating that either Gillum did not accept

the dinner explanation or she did not understand it as describing conduct conforming to state law

and the Trader Joe's Alcohol Policy.

Simply put, the wisdom of Trader Joe's firing a long-time successful employee in her

seventies for once purchasing alcohol for her underage grandson is not the question before the

Court. The law is clear that "courts in employment discrimination cases may not act as super

personnel departments, substituting judicial judgments for the business judgments of employers."

Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 221 (1st Cir. 2008) (internal quotation

marks and citations omitted); see also, e.g., Lahens v. AT&T Mobility P.R., Inc., 28 F.4th 325,

336 (1st Cir. 2022). Rather, the Court determines only whether Cocuzzo has advanced sufficient

evidence to create a genuine dispute of material fact as to whether the reason for Cocuzzo's

termination articulated by Trader Joe's was pretextual, and for purposes of the federal claim

only, whether the true reason was discriminatory animus. See Ray, 799 F.3d at 113; Adamson,

750 F.3d at 78–79. Bulwer, 46 N.E.3d at 33. She has not done this as to either question.

C.    Claims Against Individual Defendant Gillum

The Court next considers Cocuzzo's claims against Individual Defendant Gillum for age

discrimination. There is no cause of action against individuals under the federal ADEA. See, e.g.,

Johnston v. City of Red Bluff, 723 F. App'x 558, 559 (9th Cir. 2018); Thornton v. Macy's Retail

Holdings, Inc., No. CV 20-40045-DHH, 2021 WL 1430692, at *5 (D. Mass. Mar. 5, 2021),

report and recommendation adopted, No. 4:20-CV-40045, 2021 WL 2043859 (D. Mass. Mar. 23,

2021). Therefore, to the extent Cocuzzo asserts an ADEA claim against Gillum, that claim is

dismissed. Beyond citing Mass. Gen. Laws ch. 151B broadly, Cocuzzo's Complaint does not

specify the basis within Chapter 151B for her claim(s) against Gillum. See Doc. No. 1-1. In their

Memorandum in support of this Motion, Defendants assert that there are two sections of Chapter 151B under which Cocuzzo could potentially assert claims against Gillum—Mass. Gen. Laws ch. 151B, § 4(4A) or § 4(5)—but that Gillum is not liable in this case under either section. Doc. No. 44 at 9–10. In opposing Defendants' Motion, Cocuzzo only makes an argument for individual liability against Gillum under Mass. Gen. Laws ch. 151B, § 4(4A). Doc. No. 48 at 20. Thus, because Cocuzzo is not attempting to press any argument under Section 4(5) the Court only assesses the claim under Section 4(4A).

Section 4(4A) makes it unlawful for "any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by [Chapter 151B] . . . ."  Mass. Gen. Laws ch. 151B, § 4(4A). To prevail on a claim of interference under Section 4(4A), Cocuzzo must show that Gillum "'interfered with [her] rights in deliberate disregard of those rights,' which requires a showing of 'an intent to discriminate.'" Coogan v. FMR, LLC, No. CV 15-13148-GAO, 2018 WL 4405614, at *10 (D. Mass. Sept. 17, 2018) (quoting Furtado v. Standard Parking Corp., 820 F. Supp.2d 261, 278–79 (D. Mass. 2011)). For the reasons described above, Cocuzzo has failed to show any evidence from which a reasonable jury could infer an intent to discriminate. Furthermore, "[a] claim under Section 4(4A) . . . is derivative of the underlying age discrimination claim and thus fails as a matter of law where the court has concluded there was no age discrimination." Ring v. SRS Distrib., Inc., No. 19-CV-10896-DJC, 2021 WL 3036877, at *6 (D. Mass. July 19, 2021) (internal quotation marks and citations omitted). For these reasons, summary judgment is ALLOWED in Gillum's favor on the Mass. Gen. Laws ch. 151B, § 4(4A) claim against her.

IV.     <u>CONCLUSION</u>

Defendants' Motion to Strike, Doc. No. 55, is ALLOWED IN PART as explained in footnote 2 <u>supra</u> and OTHERWISE DENIED. Defendants' Motion for Summary Judgment, Doc. No. 43, is ALLOWED. Final judgment will enter.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GLORIA COCUZZO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 22-10162-LTS |
| | ) |
| TRADER JOE'S EAST INC. and | ) |
| JENNIFER GILLUM, | ) |
| | ) |
| Defendants. | ) |

<u>FINAL JUDGMENT</u>

July 28, 2023

SOROKIN, J.

 Pursuant to the Court's Order on Defendants' Motion for Summary Judgment, Doc. No. 60, judgment shall enter on all counts in favor of Defendants and against Plaintiff. Each side shall bear their own fees and costs.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge