No. 23-1695

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____


GLORIA COCUZZO,

Plaintiff-Appellant,

v.

TRADER JOE'S EAST, INC.; JENNIFER GILLUM,

Defendants-Appellees


_____

On Appeal from the Order and Judgment of the United States District Court
for the District of Massachusetts

_____

## BRIEF OF APPELLANT GLORIA COCUZZO
_____

# APPENDIX
**Volume I of IX**

Plaintiff-Appellant Gloria Cocuzzo
By her attorney,

/s/ *Timothy J. Perry*
_____
Timothy J. Perry (BBO #631397)
Court of Appeals Bar No. 62295
Perry Krumsiek LLP
One Boston Place, Suite 2600
Boson, MA  02108
(617) 720-4300

# TABLE OF CONTENTS

1. Docket Report, Cocuzzo v. Trader Joe's et al., No. 1:22-cv-10162…... 1

2. Complaint…………………………………………………………10

3. Answer………………………………………………………… 18

4. Plaintiff's Motion to Compel………………………………………..30

5. Memorandum in Support of Plaintiff's Motion to Compel…………… 33

6. Opposition to Plaintiff's Motion to Compel………………………... 43

7. Declaration of Stephen Melnick, Esq. – Motion to Compel…………...59

8. Order on Plaintiff's Motion to Compel………………………………...63

9. Defendants' Motion for Summary Judgment…………………………..66

10. Memorandum in Support of Motion for Summary Judgment………… 68

11. Defendants' Statement of Material Facts - Summary Judgment……… 79

12. Declaration of Stephen Melnick, Esq. – Summary Judgment………… 86

13. Declaration of Christopher Maguire – Summary Judgment………….. 178

14. Opposition to Motion for Summary Judgment……………………... 191

15. Combined Statement of Material Facts - Summary Judgment……….. 212

16. Declaration of Timothy Perry - Summary Judgment…………………236

17. Defendants' Reply to Opposition to Motion for Summary Judgment… 475

18. Declaration of Stephen Melnick, Esq. – Reply Memorandum………... 484

(i)

19. Order on Motion for Summary Judgment…………………………...529

20. Final Judgment……………………………………………………552

21. Notice of Appeal…………………………………………………553

(ii)

APP0001

APPEAL

# United States District Court
## District of Massachusetts (Boston)
### CIVIL DOCKET FOR CASE #: 1:22−cv−10162−LTS

Cocuzzo v. Trader Joes East Inc. et al
Assigned to: District Judge Leo T. Sorokin
Demand: $250,000
Case in other court:  Suffolk Superior Court, 2184cv02590
Cause: 28:1441 Petition for Removal − Employment Discrim

Date Filed: 01/31/2022
Date Terminated: 07/28/2023
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Gloria Cocuzzo**                              represented by    **Timothy J. Perry**
                                                                  Perry Krumsiek LLP
                                                                  One Boston Place, Suite 2600
                                                                  Boston, MA 02109
                                                                  617−720−4300
                                                                  Fax: 617−720−4310
                                                                  Email: tperry@pkdllp.com
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Trader Joes East Inc.**                       represented by    **Ellen E. Lemire**
                                                                  Littler Mendelson P.C.
                                                                  One International Place
                                                                  Suite 2700
                                                                  Boston, MA 02110
                                                                  617−378−6034
                                                                  Email: elemire@littler.com
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Lauren E. DiGiovine**
                                                                  Littler Mendelson P.C.
                                                                  One International Place
                                                                  Suite 2700
                                                                  Boston, MA 02110
                                                                  617−620−8036
                                                                  Email: ldigiovine@littler.com
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Stephen T. Melnick , III**
                                                                  Littler Mendelson P.C.
                                                                  One International Place
                                                                  Suite 2700
                                                                  Boston, MA 02110
                                                                  617−378−6000

Fax: 617−737−0052
Email: smelnick@littler.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jennifer Gillum**                    represented by    **Ellen E. Lemire**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauren E. DiGiovine**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen T. Melnick , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mediator**

**Judge Jennifer C. Boal**
*TERMINATED: 11/01/2022*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 01/31/2022 | 1 | NOTICE OF REMOVAL by Jennifer Gillum, Trader Joe's Company ( Filing fee: $ 402, receipt number AMADC−9161021 Fee Status: Filing Fee paid) (Attachments: # 1 Exhibit A − State Court Pleadings, # 2 Exhibit B − Notice to State Court, # 3 Civil Cover Sheet, # 4 Category Form)(Melnick, Stephen) (Entered: 01/31/2022) |
| 01/31/2022 | 2 | CORPORATE DISCLOSURE STATEMENT by Trader Joe's Company identifying Corporate Parent T.A.C.T. Holding, Inc., Other Affiliate Trader Joe's East, Inc. for Trader Joe's Company.. (Melnick, Stephen) (Entered: 01/31/2022) |
| 01/31/2022 | 3 | ELECTRONIC NOTICE of Case Assignment. Judge Patti B. Saris assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge M. Page Kelley. (Finn, Mary) (Entered: 01/31/2022) |
| 01/31/2022 | 4 | Certified Copy of Notice of Removal Provided to Defense Counsel by Email. (Dore, Samantha) (Entered: 01/31/2022) |
| 02/07/2022 | 5 | ANSWER to Complaint by Jennifer Gillum, Trader Joe's Company.(Melnick, Stephen) (Entered: 02/07/2022) |
| 02/08/2022 | 6 | NOTICE of Scheduling Conference

This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible. |

| | | |
|---|---|---|
| | | Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>**Scheduling Conference set for 3/21/2022 10:30 BY VIDEO before Judge Patti B. Saris. (Molloy, Maryellen) (Entered: 02/08/2022)** |
| 02/15/2022 | 7 | STATE COURT Record. (Melnick, Stephen) (Entered: 02/15/2022) |
| 03/14/2022 | 8 | JOINT SUBMISSION pursuant to Local Rule 16.1 by Gloria Cocuzzo.(Perry, Timothy) (Entered: 03/14/2022) |
| 03/21/2022 | 9 | Electronic Clerk's Notes for proceedings held before Judge Patti B. Saris: Scheduling Conference held on 3/21/2022 BY VIDEO. Joint Statement − Adopted. Parties shall submit a letter by 3/28/2022 re: whether or not parties they agree to consent to proceed before Mag Judge Kelley for all proceedings including trial and if case should be referred to ADR earlier than November 2022. Matter referred to ADR for November 2022. See Joint Statement − docket #8 for further details.(Atty Perry, Melnick) (Court Reporter: No Court Reporter Used.) (Molloy, Maryellen) (Entered: 03/21/2022) |
| 03/21/2022 | 10 | Judge Patti B. Saris: ELECTRONIC ORDER entered. ORDER REFERRING CASE to Alternative Dispute Resolution for NOVEMBER 2022.(Molloy, Maryellen) (Entered: 03/21/2022) |
| 03/22/2022 | 11 | SET SCHEDULING ORDER DEADLINES: Amended Pleadings due by 5/31/2022; Fact Discovery to be completed by 10/31/2022; Dispositive Motions due by 11/30/2022. (Geraldino−Karasek, Clarilde) (Entered: 03/22/2022) |
| 03/24/2022 | 12 | Notice of assignment to ADR Provider. Judge Jennifer C. Boal appointed for mediation in November 2022.(Simeone, Maria) (Entered: 03/24/2022) |
| 03/28/2022 | 13 | MOTION to Disqualify Judge by Jennifer Gillum, Trader Joe's Company.(Melnick, Stephen) (Entered: 03/28/2022) |
| 03/30/2022 | 14 | Judge Patti B. Saris: ELECTRONIC ORDER entered ALLOWED re 13 Motion to Disqualify Judge. (Geraldino−Karasek, Clarilde) (Entered: 03/30/2022) |
| 03/30/2022 | 15 | ELECTRONIC NOTICE of Reassignment. District Judge Leo T. Sorokin added. Judge Patti B. Saris no longer assigned to case. (Finn, Mary) (Entered: 03/30/2022) |
| 03/31/2022 | 16 | Disclosure pursuant to Rule 26 by Gloria Cocuzzo.(Perry, Timothy) (Entered: 03/31/2022) |
| 03/31/2022 | 17 | District Judge Leo T. Sorokin: ORDER entered.<br>SCHEDULING ORDER: Status Conference set for 11/3/2022 02:45 PM by video before District Judge Leo T. Sorokin.(Belmont, Kellyann) (Entered: 03/31/2022) |
| 04/01/2022 | 18 | ELECTRONIC NOTICE of Hearing.<br><br>The Alternative Dispute Resolution Hearing is set for November 4, 2022 at 10:00 a.m. in Courtroom 14 before Magistrate Judge Jennifer C. Boal. |

Counsel and principals are directed to be present and have full settlement authority. Each party must submit a brief (no more than 5 pages) mediation memorandum that includes a discussion of (1) the merits of the case (both strengths and weaknesses); (2) damages or other relief sought by the parties; (3) the status of discovery; and (4) the status of the parties' settlement discussions. The memoranda should be BY E−MAIL to (steve_york@mad.uscourts.gov) no later than five (5) business days prior to the mediation and marked "Confidential − Not for Docketing." In the event that any party believes that the case is not ripe for mediation, or the date poses a serious conflict, counsel are to notify opposing counsel and call the deputy clerk at 617−748−9238 as soon as possible.

Prior to the Mediation hearing, there will be a Preliminary Conference set for November 1, 2022 at 11:30 a.m. by remote proceedings before Magistrate Judge Jennifer C. Boal.

**The Preliminary Conference will be conducted by video, the clerk will provide the relative information for this conference to all parties at the email registered in CM/ECF, prior to the upcoming hearing.**

If you have technical or compatibility issues with video technology, please notify the session's courtroom deputy as soon as possible.

It shall be understood (a) that all parties and counsel will participate in this court−sponsored mediation in good faith and with the interest of settling the matter on mutually acceptable terms, (b) that the entire mediation process, including all communications during any in−person, video or audio part thereof, is confidential, (c) that all statements made during the course of mediation are privileged settlement discussions, made without prejudice to any party's legal position, and inadmissible for any purpose in any legal proceeding, (d) that no party, participant, or representative shall seek in any proceeding to hereafter compel the mediator to testify and/or produce any document with respect to the mediation, and (e) that all parties, counsel and other participants agree that, by participating in this court−sponsored mediation, they are bound by these conditions and shall keep confidential all communications exchanged during the mediation process.

(York, Steve) (Entered: 04/01/2022)

| 04/20/2022 | 19 | CERTIFICATION pursuant to Local Rule 16.1 . (Perry, Timothy) (Entered: 04/20/2022) |
| --- | --- | --- |
| 05/04/2022 | 20 | NOTICE of Appearance by Ellen E. Lemire on behalf of Jennifer Gillum, Trader Joe's Company (Lemire, Ellen) (Entered: 05/04/2022) |
| 06/01/2022 | 21 | Assented to MOTION to Substitute Party by Gloria Cocuzzo.(Perry, Timothy) (Entered: 06/01/2022) |
| 06/02/2022 | 22 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered re 21 Assented to MOTION to Substitute Party by Gloria Cocuzzo. ALLOWED. (Belmont, Kellyann) (Entered: 06/02/2022) |
| 06/27/2022 | 23 | ELECTRONIC NOTICE OF RESCHEDULING: Status Conference reset for 11/8/2022 02:30 PM in Courtroom 13 (Remote only) before District Judge Leo T. Sorokin. |

| | | This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(Belmont, Kellyann) (Entered: 06/27/2022) |
|---|---|---|
| 08/15/2022 | 24 | STIPULATION *of Confidentiality, Protective Order, and Clawback Agreement* by Jennifer Gillum, Trader Joes East Inc.. (Attachments: # 1 Exhibit A)(Melnick, Stephen) (Entered: 08/15/2022) |
| 09/20/2022 | 25 | MOTION to Compel *Discovery* by Gloria Cocuzzo.(Perry, Timothy) (Entered: 09/20/2022) |
| 09/20/2022 | 26 | MEMORANDUM in Support re 25 MOTION to Compel *Discovery* filed by Gloria Cocuzzo. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11)(Perry, Timothy) (Attachment 3 replaced on 10/3/2022) (Dore, Samantha). (Entered: 09/20/2022) |
| 10/04/2022 | 27 | MEMORANDUM in Opposition re 25 MOTION to Compel *Discovery* filed by Jennifer Gillum, Trader Joes East Inc.. (Attachments: # 1 Declaration of Stephen Melnick, # 2 Exhibit A − Excerpts and Exhibits from Plaintiff's Deposition, # 3 Exhibit B − Trader Joe's Responses to RFPD, # 4 Exhibit C − Gillim's Responses to RFPD, # 5 Exhibit D − Gillim's Answers to Ints, # 6 Exhibit E − 7.15.22 Email, # 7 Exhibit F − 7.27.22 Email)(Melnick, Stephen) (Entered: 10/04/2022) |
| 10/27/2022 | 28 | ELECTRONIC NOTICE Resetting the Hearing.<br><br>The Alternative Dispute Resolution Hearing on November 4, 2022 at 10:00 a.m. before Magistrate Judge Jennifer C. Boal will now be held by video. The clerk will provide the relative information for this hearing to all parties at the email registered in CM/ECF, prior to the upcoming hearing.<br><br>(York, Steve) (Entered: 10/27/2022) |
| 11/01/2022 | 29 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Jennifer C. Boal: Preliminary Conference held on 11/1/2022.<br><br>The Court met with the parties to review preliminary matters prior to the upcoming mediation. The parties requested that the Court cancel the scheduled mediation. The Court grants the request.<br><br>(Court Reporter: Digital Recording.) To order a copy of this Digital Recording, please go to https://www.mad.uscourts.gov/caseinfo/transcripts.htm#audio−recordings . For a transcript of this proceeding, contact Katelyn Coppola by email at |

| | | |
|---|---|---|
| | | mad_transcripts@mad.uscourts.gov.(Attorneys present: Perry for the plaintiff; Melnick for the defendant.) (York, Steve) (Entered: 11/01/2022) |
| 11/01/2022 | 30 | REPORT of Alternative Dispute Resolution Provider: Magistrate Judge Jennifer C. Boal reports that this case did not settle. This case should be restored to your trial list.(York, Steve) (Entered: 11/01/2022) |
| 11/01/2022 | 31 | ELECTRONIC NOTICE OF RESCHEDULING: Status Conference reset for 11/8/2022 03:45 PM in Courtroom 13 (Remote only) before District Judge Leo T. Sorokin. **Note: change is to time only!**<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(Belmont, Kellyann) (Entered: 11/01/2022) |
| 11/04/2022 | 32 | ELECTRONIC NOTICE OF RESCHEDULING: Status Conference set for 11/8/2022 02:15 PM in Courtroom 12 (Remote only) before District Judge Leo T. Sorokin. **Note: change is to time only!**<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>(Belmont, Kellyann) (Entered: 11/04/2022) |
| 11/08/2022 | 33 | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin: Status Conference held on 11/8/2022.<br>Parties inform the Court of the status of the case. Parties do not anticipate expert discovery. Defendants intend to file motion for summary judgment. Court hears argument on # 25 MOTION to Compel Discovery. Court takes the motion under advisement.<br>(Court Reporter: Rachel Lopez at raeufp@gmail.com.)(Attorneys present: Timothy Perry for the plaintiff and Stephen Melnick, III for defendants) (Belmont, Kellyann) |

| | | |
|---|---|---|
| | | (Entered: 11/09/2022) |
| 11/09/2022 | 34 | District Judge Leo T. Sorokin: ORDER entered. ORDER ON MOTION TO COMPEL DISCOVERY (DOC. NO. 25 ) (Belmont, Kellyann) (Entered: 11/09/2022) |
| 11/09/2022 | 35 | ELECTRONIC NOTICE of Hearing. Status Conference set for 12/12/2022 10:00 AM in Courtroom 13 (In person only) before District Judge Leo T. Sorokin. (Belmont, Kellyann) (Entered: 11/09/2022) |
| 11/09/2022 | 36 | Reset Deadlines: 30(b)(6) deposition by December 1, 2022. Summary Judgment Motions due by 1/17/2023. (Belmont, Kellyann) (Entered: 11/09/2022) |
| 11/14/2022 | 37 | Assented to MOTION to Continue Deadlines by Jennifer Gillum, Trader Joes East Inc..(Melnick, Stephen) Modified event used on 11/15/2022 (Belmont, Kellyann). (Entered: 11/14/2022) |
| 11/15/2022 | 38 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered re 37 Assented to MOTION to Continue Deadlines by Jennifer Gillum, Trader Joes East Inc. ALLOWED. Deposition of corporate representative by 1/16/2023. Dispositive Motions due by 2/17/2023. (Belmont, Kellyann) (Entered: 11/15/2022) |
| 11/18/2022 | 39 | ELECTRONIC NOTICE OF RESCHEDULING: Status Conference set for 12/12/2022 is reset for 1/18/2023 11:00 AM in Courtroom 13 (In person only) before District Judge Leo T. Sorokin. (Belmont, Kellyann) (Entered: 11/18/2022) |
| 01/18/2023 | 40 | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin: Status Conference held on 1/18/2023. Parties inform the Court of the status of the case. Defendants are planning to file motion for summary judgment. The Court discusses whether a status conference with clients would be helpful. Parties may have discovery dispute and Court will determine whether it will set a status conference with clients after the discovery dispute has been resolved. Parties may file a joint status report regarding whether or not discovery dispute has been resolved. (Court Reporter: Rachel Lopez at raeufp@gmail.com.)(Attorneys present: Timothy Perry for the plaintiff and Stephen T. Melnick, III for defendants) (Belmont, Kellyann) (Entered: 01/18/2023) |
| 02/13/2023 | 41 | Assented to MOTION for Extension of Time to February 24, 2023 to File *Dispositive Motions* by Jennifer Gillum, Trader Joes East Inc..(DiGiovine, Lauren) (Entered: 02/13/2023) |
| 02/13/2023 | 42 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered re 41 Assented to MOTION for Extension of Time to February 24, 2023 to File Dispositive Motions by Jennifer Gillum, Trader Joes East Inc. ALLOWED. Motions due by 2/24/2023 (Belmont, Kellyann) (Entered: 02/13/2023) |
| 02/24/2023 | 43 | MOTION for Summary Judgment by Jennifer Gillum, Trader Joes East Inc..(Melnick, Stephen) (Entered: 02/24/2023) |
| 02/24/2023 | 44 | MEMORANDUM in Support re 43 MOTION for Summary Judgment filed by Jennifer Gillum, Trader Joes East Inc.. (Melnick, Stephen) (Entered: 02/24/2023) |
| 02/24/2023 | 45 | Statement of Material Facts L.R. 56.1 re 43 MOTION for Summary Judgment filed by Jennifer Gillum, Trader Joes East Inc.. (Attachments: # 1 Declaration of Stephen Melnick, # 2 Exhibit A to the Declaration of Stephen T. Melnick, # 3 Exhibit B to the Declaration of Stephen T. Melnick, # 4 Exhibit C to the Declaration of Stephen T. Melnick, # 5 Exhibit D to the Declaration of Stephen T. Melnick, # 6 Declaration of |

| | | Christopher Maguire)(Melnick, Stephen) (Entered: 02/24/2023) |
|---|---|---|
| 03/27/2023 | 46 | Assented to MOTION for Extension of Time to April 3, 2023 to Respond to Summary Judgment by Gloria Cocuzzo.(Perry, Timothy) (Entered: 03/27/2023) |
| 03/27/2023 | 47 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered re 46 Assented to MOTION for Extension of Time to April 3, 2023 to Respond to Summary Judgment by Gloria Cocuzzo. ALLOWED.(Belmont, Kellyann) (Entered: 03/27/2023) |
| 04/03/2023 | 48 | Opposition re 43 MOTION for Summary Judgment filed by Gloria Cocuzzo. (Perry, Timothy) (Entered: 04/03/2023) |
| 04/03/2023 | 49 | Statement of Material Facts L.R. 56.1 re 43 MOTION for Summary Judgment *(Combined)* filed by Gloria Cocuzzo. (Perry, Timothy) (Entered: 04/03/2023) |
| 04/03/2023 | 50 | AFFIDAVIT in Opposition re 43 MOTION for Summary Judgment filed by Gloria Cocuzzo. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18)(Perry, Timothy) (Entered: 04/03/2023) |
| 04/06/2023 | 51 | MOTION for Extension of Time to April 17, 2023 to File *Reply in Support of Motion for Summary Judgment and Motion for Additional Pages* by Jennifer Gillum, Trader Joes East Inc..(Melnick, Stephen) (Entered: 04/06/2023) |
| 04/06/2023 | 52 | Opposition re 51 MOTION for Extension of Time to April 17, 2023 to File *Reply in Support of Motion for Summary Judgment and Motion for Additional Pages (Opposition as to Page Limit Only)* filed by Gloria Cocuzzo. (Perry, Timothy) (Entered: 04/06/2023) |
| 04/10/2023 | 53 | District Judge Leo T. Sorokin: ELECTRONIC ORDER entered re 51 MOTION for Extension of Time to April 17, 2023 to File Reply in Support of Motion for Summary Judgment and Motion for Additional Pages by Jennifer Gillum, Trader Joes East Inc. ALLOWED. (Belmont, Kellyann) (Entered: 04/10/2023) |
| 04/17/2023 | 54 | REPLY to Response to 43 MOTION for Summary Judgment filed by Jennifer Gillum, Trader Joes East Inc.. (Attachments: # 1 Declaration of Stephen T. Melnick)(Melnick, Stephen) (Entered: 04/17/2023) |
| 04/17/2023 | 55 | MOTION to Strike 49 Statement of Material Facts L.R. 56.1 by Jennifer Gillum, Trader Joes East Inc..(Melnick, Stephen) (Entered: 04/17/2023) |
| 04/28/2023 | 56 | Opposition re 55 MOTION to Strike 49 Statement of Material Facts L.R. 56.1 filed by Gloria Cocuzzo. (Perry, Timothy) (Entered: 04/28/2023) |
| 07/17/2023 | 57 | ELECTRONIC NOTICE Setting Hearing on Motion 55 MOTION to Strike 49 Statement of Material Facts L.R. 56.1 , 43 MOTION for Summary Judgment : Motion Hearing set for 7/24/2023 10:00 AM in Courtroom 13 (In person only) before District Judge Leo T. Sorokin. (Belmont, Kellyann) (Entered: 07/17/2023) |
| 07/17/2023 | 58 | ELECTRONIC NOTICE Resetting Hearing on Motion 55 MOTION to Strike 49 Statement of Material Facts L.R. 56.1 , 43 MOTION for Summary Judgment : Motion Hearing reset for 7/21/2023 10:00 AM in Courtroom 13 (In person only) before District Judge Leo T. Sorokin. (Belmont, Kellyann) (Entered: 07/17/2023) |
| 07/21/2023 | 59 | |

| | | |
|---|---|---|
| | | Electronic Clerk's Notes for proceedings held before District Judge Leo T. Sorokin: Motion Hearing held on 7/21/2023 re 55 MOTION to Strike 49 Statement of Material Facts L.R. 56.1 filed by Trader Joes East Inc., Jennifer Gillum, 43 MOTION for Summary Judgment filed by Trader Joes East Inc., Jennifer Gillum. Court heard argument on the motions. Court took the motions under advisement. (Court Reporter: Rachel Lopez at raeufp@gmail.com.)(Attorneys present: Timothy Perry for the plaintiff and Ellen Lemire and Stephen Melnick, III for defendants) (Belmont, Kellyann) (Entered: 07/21/2023) |
| 07/28/2023 | 60 | District Judge Leo T. Sorokin: ORDER entered. ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 43 ) AND DEFENDANTS' MOTION TO STRIKE (DOC. NO. 55 ) (Dore, Samantha) (Entered: 07/28/2023) |
| 07/28/2023 | 61 | District Judge Leo T. Sorokin: ORDER entered. FINAL JUDGMENT (Dore, Samantha) (Entered: 07/28/2023) |
| 08/21/2023 | 62 | NOTICE OF APPEAL as to 61 Judgment, 60 Order on Motion for Summary Judgment, Order on Motion to Strike, 34 Order on Motion to Compel by Gloria Cocuzzo Filing fee: $ 505, receipt number AMADC−10001125 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 9/11/2023. (Perry, Timothy) (Entered: 08/21/2023)** |
| 08/22/2023 | 63 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 62 Notice of Appeal. (Pacho, Arnold) (Entered: 08/22/2023) |

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**                                                    **SUPERIOR COURT DEPT.**
                                                                    **OF THE TRIAL COURT**

)
GLORIA COCUZZO,                          )
                                         )
        Plaintiff,                       )
v.                                       )          Docket No.:
                                         )
TRADER JOE'S COMPANY and                 )
JENNIFER GILLUM,                         )
                                         )          *11/10/2021*
        Defendants.                      )
_____)

### COMPLAINT

Pursuant to Mass. R. Civ. P. 8, Gloria Cocuzzo ("Gloria") hereby states her Complaint against Defendant Trader Joe's Company ("Trader Joe's") and Defendant Jennifer Gillum ("Ms. Gillum") as follows:

### <u>Introduction</u>

1. As set forth more fully below, Gloria was unlawfully discriminated against, subjected to a hostile work environment, retaliated against, and, ultimately, terminated based upon her age in violation of the Massachusetts Fair Employment Practices Act, G.L. c. 151B and the Age Discrimination in Employment Act, 29 U.S.C. § 621 to 29 U.S.C. § 634 ("ADEA").

### <u>Parties</u>

2. Gloria Cocuzzo is an individual with a place of residence at 27 ½ Priscilla Street, Brighton, Suffolk County, Massachusetts.

3. Defendant Trader Joe's Company is a corporation with a place of business at 199 North Harvard Street, Allston, Suffolk County, Massachusetts.

1

4. Defendant Jennifer Gillum is an individual with a place of business at 1317 Beaconb Street, Brookline, Massachusetts.

## Jurisdiction and Venue

5. The Massachusetts Superior Court has original jurisdiction over the subject matter of this dispute pursuant to, *inter alia*, Mass. G. L. c. 151B, Mass. G.L. c. 149 § 150 and Mass. G.L. c. 151, §§ 1B and 20.

6. Personal jurisdiction exists because Trader Joe's and Gillum conduct continuous business in Massachusetts and because the actions and omissions of these defendants occurred primarily and substantially within Massachusetts.

7. Venue is appropriate in Superior Court in Suffolk County because Gloria resides in Suffolk County and Trader Joe's has a usual place of business in Suffolk County.

## Summary of Pertinent Facts

8. Gloria began work at Trader Joe's in or around 2004.

9. In 17 years at the company, Gloria had an undisputed stellar employment record.  Indeed, she has recently been described in news reports as *the* "fixture of the Coolidge Corner store" and "a favorite among regular shoppers."

10. The Boston Globe describes Gloria as follows: "The George Bailey of Brookline is a 77 year-old grandmother named Gloria."

11. Another news outlet declares: "Anyone who doesn't know Gloria (here, in Brookline, MA), never shops for groceries at Trader Joe's."

12. Given the foregoing, the manner in which Gloria was treated and then terminated by Trader Joe's is nothing short of incredible.

13. On Saturday, February 21, 2021, Gloria, a nearly 78 year-old grandmother of five, was working a 10 a.m. to 6:30 shift at Trader Joe's.

14. Gloria's grandson, Kevin (also an employee of Trader Joe's) started his shift at 4:30.

15. That day, Gloria and her grandson had planned to meet for dinner at Gloria's home in Brighton after his shift.

16. Kevin turned 21 years-old in 2021.

17. It is not unusual for Kevin to have a beer with his grandmother at dinner.  Certainly, there is nothing "illegal" about such a routine even though Kevin was slightly younger than 21 years-old in early 2021.

18. Indeed, Mass. G.L. c. 138 § 34 *specifically permits* parents and grandparents to serve alcohol to their children and grandchildren in their home.

19. Consistent with relevant law (although perhaps not cognizant of the statute itself), Gloria purchased of four-pack of craft beer at Trader Joe's for her upcoming dinner with her grandson (and placed it in the Trader Joe's employee designated refrigerator where she intended to pick it up at the end of her shift).

20. Nothing could be more innocent or inoffensive than that – a grandmother preparing to have a nice dinner with her grandson at the end of their respective Trader Joe's shifts.

21. Nonetheless, Ms. Gillum, who had recently become Gloria's Manager (known as a store "Captain") at the Brookline store, falsely declared that Gloria's purchase of alcohol was "illegal" and against company policy.

22. Ms. Gillum stated that Gloria would be reported up the chain of command at Trader Joe's.

23. Ms. Gillum knew that her false claims and her irresponsible report of Gloria to management would cause Gloria great emotional distress.  And it did.

24. For three nights Gloria was unable to sleep or eat (which continues to this day).  Gloria, of course, had never been in trouble before and now Ms. Gillum was accusing her (falsely) of committing a crime and being subject to discipline at the company.

25. The distress this has caused to Gloria is incalculable.

26. Nonetheless, ever the dutiful Trader Joe's soldier, Gloria reported to work for the next three days (February 22-24).

27. After holding the matter over Gloria's head during these excruciating days and nights, Ms. Gillum demanded that Gloria report to her office on February 24, 2021.

28. Ms. Gillum purposefully continued a hostile and intimidating environment at this meeting, among other things haling a "witness" (Brian Foote) to the meeting and menacing Gloria during the meeting.

29. Gloria was so nervous and upset that she felt faint.  Ms. Gillum then demanded that Gloria retire or that she would be fired.  Ms. Gillum's only concern was: "what are we going to tell the customers?"

30. Ms. Gillum knew that the customers of the store loved Gloria so she attempted to force Gloria to "retire" in order to save face for the company.  Ms. Gillum's intimidation had its intended effect – Gloria left the store shaking and could barely drive home, crying.

31. When Gloria refused to tow Ms. Gillum's company line and agree to a "retirement," she was summarily fired and deprived of all of her benefits (including her much needed healthcare during a worldwide pandemic).

32. Without hyperbole, it can be objectively observed that Ms. Gillum's and Trader Joe's concerted discriminatory conduct ruthlessly inflicted extreme emotional distress upon her

and needlessly, purposefully, and callously placed Gloria's future employment security

and life in jeopardy.

33. In regards to the foregoing, another news outlet, the "Morning Newsbeat," rather

accurately reported the following:

> After a harrowing call to the manager's office and three sleepless nights of
> waiting. Gloria was fired. At 77 years old, in the middle of a pandemic Gloria
> finds herself with no job, no income, no health insurance and no chance for
> appeal. Management knowing how she's so beloved by the community reportedly
> tried to pressure her into saying she had resigned. Gloria refused to be part of this
> untruth.

34. Gloria attempted in vain to reach out to Trader Joe's management to rectify the situation.

35. First, Gloria reached out to a former Captain with whom she worked, Chris Maguire. He

turtled: never responding to Gloria's email.

36. Instead, he cowered behind Ms. Gillum who responded for Mr. Maguire, stating: "Gloria,

I thought you were just going to retire" to put the matter behind the company.

37. Later, a Vice President of the company, Jon Basalone, called Gloria, but he offered no

explanation for Trader Joe's ridiculously overblown position, much less a resolution.

38. However, his assistant later called Gloria back and stated that the company would live up

to its obligation to pay Gloria her Covid Bonus ($4067.90) which she had earned due to

her diligent service to the company during the worldwide pandemic.

39. As it turns out, this was another lie made by the company.

40. In violation of the Massachusetts Wage Payment statute, Trader Joe's has refused to pay

the earned bonus to date.

41. In reflection, although Gloria was too much of an optimist and loyal employee to

complain about the issues at the time, Gloria's termination was merely a continuation of a

hostile work environment and discrimination aimed at her as an elderly employee of the store for a long time.

42. It is now clear that Ms. Gillum's goal was to rid the store of Gloria due to her age and her earned pay-scale as of 2021.

43. At that time, Gloria was paid $28.90 per hour and made approximately $60,000 per year.

44. Ms. Gillum immediately replaced Gloria with a young employee who makes only $15 per hour.

45. This confirms the discriminatory intent set in play by Trader Joe's and its managers.

46. Worse, Ms. Gillum and Trader Joe's knew full-well when they engaged in their unlawful conduct that they were essentially terminating Gloria's potential to find equivalent work and rate of pay (i.e. it will be virtually impossible for a 78 year-old employee to be hired, much less earn the level of tenure and pay she had achieved in 17 years at Trader Joe's).

47. In short, the discriminatory termination has ruined Gloria's chances of future employment success.

**COUNT I**
**(Age Discrimination)**

48. Gloria repeats and realleges each of the foregoing allegations and incorporates them herein by reference.

49. This matter was presented to the Massachusetts Commission Against Discrimination ("MCAD") as required by G.L. c. 151B and was investigated at the MCAD for a period exceeding 90 days.

50. Gloria requested that the matter be withdrawn from the MCAD so that she could pursue his private right of action in Massachusetts Superior Court.

51. Per Gloria's request, the MCAD closed its investigation and informed Gloria of her right to pursue the matter in this court.

52. Therefore, Gloria has properly exhausted his administrative requirements at the MCAD and is entitled to bring this action in this Court.

53. Under G.L. 151B and 29 U.S.C § 623 *et seq*., it is unlawful to discriminate against a person based upon her age – specifically to discriminate against a person based on her age being above 40 years.

54. At all material times, Gloria was above 40 years old and was a person protected by the cited statutes.

55. At all material times, Trader Joe's and Ms. Gillum knew Gloria was more than 40 years old.

56. In violation of law, Trader Joe's and Ms. Gillum targeted Gloria based upon her age, discriminated against Gloria based upon her age, and created and maintained a hostile work environment toward Gloria based upon her age.

57. The conduct of Trader Joe's and Ms. Gillum shows a willful, discriminatory animus in violation of both Mass. G. L. c. 151B (the Massachusetts anti-discrimination statute) and in violation of 29 U.S.C § 623 *et seq*. (the Age Discrimination in Employment Act).

58. As a result of the willful, discriminatory conduct of Trader Joe's and Ms. Gillum, Gloria is entitled to recover all remedies under G.L. c. 151B and 29 U.S.C § 623 *et seq*., including but not limited to compensatory damages, front and back pay, emotional distress damages, punitive damages, interest, and attorney's fees.

**DEMAND FOR JURY**

Gloria demands a trial by jury on all counts of this Complaint that are so triable.


**WHEREFORE**, Gloria requests that this Honorable Court:

(1) Enter Judgment in her favor and against each named defendant on all counts of this

Complaint;

(2) Award all damages on each count to which Gloria is entitled by law and in equity

against each named defendant, including but not limited to, compensatory damages,

front pay, back pay, wages, emotional distress, punitive damages, costs and

attorney's fees;

(3) Order reinstatement of Gloria to her position at Trader Joe's; and

(4) Award such other and further relief as this Court finds just and equitable.

                    **PLAINTIFF GLORIA COCUZZO,**

                    By HER attorney,

                    /s/ *Timothy J. Perry*
                    Timothy J. Perry (BBO# 631397)
                    *tperry@pkcounsel.com*
                    **PERRY KRUMSIEK LLP**
                    One Boston Place, Suite 2600
                    Boston, MA  02108
                    (617) 720-4300

Date: November 9, 2021       fax (617) 720-4310

8

APP0018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GLORIA COCUZZO, <br><br> PLAINTIFF, <br><br> V. <br><br> TRADER JOE'S COMPANY AND JENNIFER GILLUM, <br><br> DEFENDANT. | Civil Action No. 1:22-cv-10162-RBS |

## ANSWER AND AFFIRMATIVE DEFENSES

Defendants Trader Joe's East, Inc.[1] ("Trader Joe's") and Jennifer Gillum (together, conjunctively and disjunctively, "Defendants") respond to Plaintiff Gloria Cocuzzo's Complaint ("Complaint") as follows:

Defendants state that the first unnumbered paragraph of the Complaint consists of an introductory paragraph to which no response is necessary. To the extent a response is necessary, Defendants deny the allegations of the first unnumbered paragraph of the Complaint.

## Introduction

1.     Defendants deny the allegations of Paragraph 1.

## Parties

2.     Defendants are without sufficient information to form a belief as to the truth of the allegations of Paragraph 2 and therefore deny them.

3.     Defendants admit the allegations of Paragraph 3.

4.     Defendants admit that Defendant Jennifer Gillum is an individual who formerly

---

[1]  Incorrectly identified as Trader Joe's Co.

worked at 1317 Beacon Street, Brookline, Massachusetts.  Defendants deny the remaining allegations of Paragraph 4.

## Jurisdiction and Venue

5.    Defendants state that Paragraph 5 consists of legal conclusions to which no response is necessary.  Defendants admit only that the United States District Court for the District of Massachusetts has jurisdiction over this matter.  Defendants deny the remaining allegations of Paragraph 5.

6.    Defendants state that Paragraph 6 consists of legal conclusions to which no response is necessary.  Defendants admit only that the United States District Court for the District of Massachusetts has jurisdiction over this matter.  Defendants deny the remaining allegations of Paragraph 6.

7.    Defendants state that Paragraph 7 consists of legal conclusions to which no response is necessary.  Defendants admit only that venue is proper in the United States District Court for the District of Massachusetts.  Defendants deny the remaining allegations of Paragraph 7.

## Summary of Pertinent Facts

8.    Defendants admit that Plaintiff began working for Trader Joe's in 2003. Defendants deny the remaining allegations of Paragraph 8.

9.    Defendants deny the allegations of the first sentence of Paragraph 9.  Defendants are without sufficient information to form a belief as to the remaining allegations of Paragraph 9 and therefore deny them.

10.    Defendants are without sufficient information to form a belief as to the allegations of Paragraph 10 and therefore deny them.

11.     Defendants are without sufficient information to form a belief as to the allegations of Paragraph 11 and therefore deny them.

12.     Defendants deny the allegations of Paragraph 12.

13.     Defendants admit that on or about February 20, 2021, Plaintiff worked a shift at Trader Joe's.  Defendants are without sufficient information to form a belief as to the allegation that Plaintiff is "a nearly 78 year-old grandmother of five" and therefore denies same.  Defendants deny the remaining allegations of Paragraph 13.

14.     Defendants admit that Plaintiff's grandson, Kevin formerly was employed at Trader Joe's and worked a shift on or about February 20, 2021.  Defendants deny the remaining allegations of Paragraph 14.

15.     Defendants are without sufficient information to form a belief as to the truth of the allegations of Paragraph 15 and therefore deny them.

16.     Defendants are without sufficient information to form a belief as to the truth of the allegations of Paragraph 16 and therefore deny them.

17.     Defendants are without sufficient information to form a belief as to the truth of the allegations of the first sentence of Paragraph 17 and therefore deny them.  Defendants deny the remaining allegations of Paragraph 17.

18.     Defendants state Paragraph 18 consists of legal conclusions to which no response is necessary.  To the extent a response is necessary, Defendants deny the allegations of Paragraph 18.

19.     Defendants admit that Plaintiff purchased four-pack of beer at Trader Joe's for her underage grandson.  Defendants deny the remaining allegations of Paragraph 19.

20.     Defendants deny the allegations of Paragraph 20.

21.      Defendants deny the allegations of Paragraph 21.

22.      Defendants deny the allegations of Paragraph 22.

23.      Defendants deny the allegations of Paragraph 23.

24.      Defendants are without sufficient information to form a belief as to the truth of the allegations of the first sentence of Paragraph 24 and therefore deny them.  Defendants deny the remaining allegations of Paragraph 24.

25.      Defendants deny the allegations of Paragraph 25.

26.      Defendants admit that Plaintiff worked at Trader Joe's on or about February 22, 23, and 24, 2021.  Defendants deny the remaining allegations of Paragraph 26.

27.      Defendants admit that Plaintiff was called to meet with Ms. Gillum on or about February 24, 2021.  Defendants deny the remaining allegations of Paragraph 27.

28.      Defendants admit that Brian Foote was present at a meeting with Plaintiff and Ms. Gillum on or about February 24, 2021.  Defendants deny the remaining allegations of Paragraph 28.

29.      Defendants deny the allegations of Paragraph 29.

30.      Defendants deny the allegations of Paragraph 30.

31.      Defendants admit that Plaintiff's employment with Trader Joe's ended on or about February 24, 2021.  Defendants deny the remaining allegations of Paragraph 31.

32.      Defendants deny the allegations of Paragraph 32.

33.      Defendants are without sufficient information to form a belief as to the truth of the allegations of Paragraph 33 and therefore deny them.

34.      Defendants deny the allegations of Paragraph 34.

35.      Defendants admit that Plaintiff contacted Chris Maguire, a Trader Joe's employee

with whom Plaintiff had worked, and that Mr. Maguire did not respond to that email.  Defendants deny the remaining allegations of Paragraph 35.

36.     Defendants admit that Ms. Gillum contacted Plaintiff following her separation from Trader Joe's employment.  Defendants deny the remaining allegations of Paragraph 36.

37.     Defendants admit that Jon Basalone called Plaintiff.  Defendants deny the remaining allegations of Paragraph 37.

38.     Defendants deny the allegations of Paragraph 38.

39.     Defendants deny the allegations of Paragraph 39.

40.     Defendants deny the allegations of Paragraph 40.

41.     Defendants deny the allegations of Paragraph 41.

42.     Defendants deny the allegations of Paragraph 42.

43.     Defendants admit that Plaintiff was paid $28.90 per hour at the time of her separation.  Defendants deny the remaining allegations of Paragraph 43.

44.     Defendants deny the allegations of Paragraph 44.

45.     Defendants deny the allegations of Paragraph 45.

46.     Defendants deny the allegations of Paragraph 46.

47.     Defendants deny the allegations of Paragraph 47.

## COUNT I

### (Age Discrimination)

48.     Defendants repeat and re-assert their responses to Paragraphs 1-47 as if set forth fully herein.

49.     Defendants admit that Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination, the contents of which speak for itself, more

than 90 days ago.  Defendants deny the remaining allegations of Paragraph 49.

50.      Defendants admit the allegations of Paragraph 50.

51.      Defendants admit the allegations of Paragraph 51.

52.      Defendants deny the allegations of Paragraph 52.

53.      Defendants state Paragraph 53 consist of legal conclusions to which no response is necessary.

54.      Defendants admit Plaintiff was a person over 40 at all times relevant to the Complaint.  Defendants state the remainder of Paragraph 54 consists of legal conclusions to which no response is necessary.

55.      Defendants admit the allegations of Paragraph 55.

56.      Defendants deny the allegations of Paragraph 56.

57.      Defendants deny the allegations of Paragraph 57.

58.      Defendants deny the allegations of Paragraph 58.

Defendants state the paragraph headed "Demand for Jury," the paragraph headed "Wherefore," and subparagraphs (1) – (4) that follow it, consist of legal conclusions and demands to which no response is necessary.  To the extent a response is necessary, Defendants deny the allegations and demands of same.

## **GENERAL DENIAL**

Defendants deny all allegations, theories and premises not expressly admitted herein.

## **AFFIRMATIVE AND OTHER DEFENSES**

## **FIRST AFFIRMATIVE DEFENSE**

The Complaint, in whole or in part, fails to state a claim on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

To the extent the claims of the Plaintiff are based on alleged actions that occurred outside the applicable statutes of limitations, such claims are barred.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred by the failure to exhaust administrative remedies required by applicable laws, and failure to meet administrative prerequisites before filing suit.

## FOURTH AFFIRMATIVE DEFENSE

Insofar as Plaintiff seeks to recover for any act or omission not timely referenced in any administrative charge or complaint, Plaintiff may not recover any relief for such alleged act or omission.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred because she failed to exercise reasonable diligence in mitigating her alleged damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by her failure to exercise reasonable diligence to avoid harm.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff mitigated, minimized or avoided any damages allegedly sustained or unreasonably failed to mitigate, minimize or avoid any damages, any economic damages attributable to the conduct of Defendants must be reduced by that amount.

### EIGHTH AFFIRMATIVE DEFENSE

Any and all actions Defendants took with respect to Plaintiff's employment were taken for legitimate, nondiscriminatory reasons and consistent with business necessity and/or based on a reasonable factor other than age.

### NINTH AFFIRMATIVE DEFENSE

Defendants, at all times relevant to this action, acted in good faith and in full compliance with all applicable laws and duties.

### TENTH AFFIRMATIVE DEFENSE

At all times relevant to the allegations in the Complaint, Trader Joe's had an effective policy for the prevention and correction of unlawful practices.  Notwithstanding the existence of this policy, Plaintiff unreasonably failed to utilize it in connection with the allegations of unlawful practices asserted in the Complaint.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendants are not liable to the extent that any of their respective individual employees or agents acted outside the course and scope of his or her employment.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and/or limited by the after-acquired evidence doctrine to the extent that discovery shows she engaged in misconduct prior to, during, after, or in connection with his employment, that otherwise would have resulted in her discharge, if such conduct were then known to Defendants.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendants would have taken the same actions in regard to Plaintiff in the absence of any alleged discriminatory or retaliatory factor.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred by the doctrines of waiver, laches and/or estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred by the doctrine of accord and satisfaction.

## SIXTEENTH AFFIRMATIVE DEFENSE

Any recovery should be offset by sums owed by Plaintiff to Defendants.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Defendants were justified in all actions taken towards Plaintiff.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because she timely received all amounts owed.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendants do not owe wages to Plaintiff to the extent those wages were subject to attachment, trustee process, a valid assignment thereof, or a valid set-off against the same.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Defendants do not owe wages to Plaintiff because of her absence from her regular place of labor at the time of payment.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Defendants do not owe wages to Plaintiff because there was an actual tender to Plaintiff of any wages earned by her.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff is not entitled to punitive, exemplary, multiple or liquidated damages.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to equitable relief.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to attorneys' fees and/or costs.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to reinstatement, and/or reinstatement would not be practicable.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff cannot establish that Ms. Gillum is individually liable, in whole or in part.

Defendants hereby give notice that they intend to rely upon such further defenses as may become available and apparent during discovery proceedings in this case and hereby reserve the right to amend this Answer and assert such defenses.

WHEREFORE, Defendants request judgment dismissing the Complaint with prejudice, together with its costs and disbursements of this action, reasonable attorneys' fees and such other and further relief as the Court deems just and proper.

Respectfully submitted,

TRADER JOE'S EAST, INC. AND
JENNIFER GILLUM,

By their attorneys,

*/s/ Stephen T. Melnick*

Stephen T. Melnick (No. 667323)
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
smelnick@littler.com

Dated:  February 7, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2022, a true and accurate copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and sent via first class mail to unregistered participants.

/s/ Stephen T. Melnick
Stephen T. Melnick

4894-8745-3451.2 / 071820-1101

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|                              |     |                                    |
|------------------------------|-----|------------------------------------|
| GLORIA COCUZZO,              | )   |                                    |
|                              | )   |                                    |
|     Plaintiff, | )   |                                    |
| v.                           | )   | Civil Action No.: 1:22-cv-10162-LTS |
|                              | )   |                                    |
| TRADER JOE'S EAST, INC. and  | )   |                                    |
| JENNIFER GILLUM,             | )   |                                    |
|                              | )   |                                    |
|     Defendants. | )   |                                    |
|                              | )   |                                    |

## PLAINTIFF GLORIA COCUZZO'S MOTION TO COMPEL DISCOVERY

Pursuant to Fed. R. Civ. P. 26, 30, 34 and 37, Plaintiff Gloria Cocuzzo ("Ms. Cocuzzo") hereby submits her motion to compel discovery from Defendant Trader Joe's East, Inc. ("Trader Joe's").

(1) Ms. Cocuzzo seeks specified documents responsive to her First Request for Production of Documents (Exhibit 1 to accompanying Memorandum). In particular, Ms. Cocuzzo requests responses to Document Request Nos. 6-10, 40, 41, 53-58, including personnel files and related documents which identify the employees at the Trader Joe's location where Ms. Cocuzzo worked from 2018 to present. These documents are relevant to whether Ms. Cocuzzo was subject to different treatment from other employees due to her age.

(2) Ms. Cocuzzo seeks responses to specified Requests for Interrogatories (Exhibits 2, 3 of the accompanying Memorandum). In particular, Ms. Cocuzzo seeks further responses to Interrogatory Requests Nos. 14-16. These Interrogatories seek, *inter alia*, an

identification of employees who performed any of Ms. Cocuzzo's job responsibilities at

Trader Joe's Store #501 (where she was employed) from 2018-present.

(3) Ms. Cocuzzo seeks a Rule 30(b)(6) deponent to testify in regards to the 11

straightforward topic areas set forth in its most recent Notice of Deposition. *See* Exhibit

4 to accompanying Memorandum.  Trader Joe's objects to all of the topic areas and

refuses to produce a witness for deposition.

(4) Trader Joe's refuses to voluntarily provide any of the foregoing discovery after repeated

requests and Rule 7.1 conferences.

(5) As set forth in the accompanying Memorandum of Law, all of the discovery sought is

permissible and mandated by the Rules of Civil Procedure.

(6) As set forth in the accompanying Memorandum of Law, Trader Joe's withholding of the

discovery is unjust and inequitable and inconsistent with the Rules of Civil Procedure.

**WHEREFORE**, Plaintiff requests that its motion to compel be ALLOWED and that all

documents requested by Ms. Cocuzzo herein be produced forthwith, that all interrogatory answers

requested herein be provided forthwith, and that a deponent be designated under Rule 30(b)(6) so

that the deposition can be taken forthwith.

Respectfully submitted,

**PLAINTIFF GLORIA COCUZZO,**

By her attorneys,

 /s/ *Timothy J. Perry*
Timothy J. Perry (BBO #631397)
tperry@pkcounsel.com
PERRY KRUMSIEK LLP
One Boston Place, Suite 2600
Boston, MA  02108
(617) 720-4300
facsimile (617) 720-4310

**CERTIFICATE OF SERVICE**

      I hereby certify that on this day, I served a copy of the foregoing document upon counsel for defendants via the Electronic Court Filing service of the United States District Court for the District of Massachusetts.

Dated: September 20, 2022            /s/ *Timothy J. Perry*  
                                       Timothy Perry


**LOCAL RULE 7.1(A)(2) CERTIFICATE**

      The undersigned certifies pursuant to Local Rule 7.1(A)(2) that on July 22, 2022 the moving party conferred with opposing counsel on the matters set forth herein and that Respondents' counsel has not consented to the relief sought herein; nor were the parties able to narrow the disputes set forth in this motion.

/s/ *Timothy J. Perry*  
Timothy J. Perry

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GLORIA COCUZZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.: 1:22-cv-10162-LTS |
| | ) | |
| TRADER JOE'S EAST, INC. and | ) | |
| JENNIFER GILLUM, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF GLORIA COCUZZO'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY

Pursuant to Fed. R. Civ. P. 26, 30, 34 and 37, Plaintiff Gloria Cocuzzo ("Ms. Cocuzzo")

hereby submits her memorandum of law in support of her motion to compel discovery from

Defendant Trader Joe's East, Inc. ("Trader Joe's").  Ms. Cocuzzo seeks specified documents

responsive to her First Request for Production of Documents (Exhibit 1)[1] and responses to

specified Requests for Interrogatories (Exhibits 2, 3)[2].  Ms. Cocuzzo also requests that the Court

Order Trader Joe's to present a Rule 30(b)(6) deponent to testify in regards to the 11

straightforward topic areas set forth in its most recent Notice of Deposition.  *See* Exhibit 4.

Trader Joe's refuses to voluntarily provide any of the foregoing discovery.

## INTRODUCTION AND FACTUAL BACKGROUND

This is an age discrimination case concerning Ms. Cocuzzo, a 79 year-old former

seventeen-year employee of Trader Joe's.  In an effort to stymie Ms. Cocuzzo's ability to prove

---

[1] Personnel files and related documents reflecting information concerning the employees at the Trader Joe's location where Ms. Cocuzzo worked from 2018 to present.  Document Request Nos. 6-10, 40, 41, 53-58.
[2] Interrogatories requesting an identification of employees who performed any of Ms. Cocuzzo's job responsibilities from 2018-present.  Interrogatory Requests Nos. 14-16.

her claims, Trader Joe's has improperly (1) failed to produce relevant documents (2) failed to answer relevant interrogatories, and (3) refused to produce a Rule 30(b)(6) witness for deposition.  Ms. Cocuzzo, therefore, requests an order for the immediate production of each of these permissible categories of discovery.

By way of background, there is no doubt that Ms. Cocuzzo has shown a prima facie case of age discrimination, which requires plaintiff to show the following[3]:

(1) <u>That she is a member of a protected class</u> (i.e. over 40). Here, Ms. Cocuzzo is 79.

(2) <u>That she was performing her job adequately</u>.  Here, Trader Joe's testified, *inter alia*, that Ms. Cocuzzo performed at a level known as "Excellence Overall," that she "continually shine[ed] as *the person* our customers go to for shopping advice, neighborhood chats, and a unique friendship that you've established throughout years of relationships created in our store," and that, indeed, she had become "a true neighborhood icon" for Trader Joe's.  *See* Exhibit 5 (Jennifer Gillum Depo., p. 64-66).

(3) <u>That she was subject to adverse treatment</u>.  Here, she was terminated.

(4) <u>That she was treated differently from other employees who are substantially younger</u>. Here, Trader Joe's has been unable to show that any employee in its history has ever been terminated for the alleged misconduct engaged in by Ms. Cocuzzo.

Primarily at issue in this discovery motion is Ms. Cocuzzo's attempt to obtain, review and analyze information relating to paragraph (4), above (different treatment based upon age). In particular, Ms. Cocuzzo seeks personnel files for employees of Trader Joe's Store #501 (Brookline, MA) where she worked before she was terminated.  This information is relevant to Trader Joe's hiring and employment practices, including the treatment of employees of differing ages.  Ms. Cocuzzo believes that this information shall provide further evidence that the reason provided by Trader Joe's for her termination was false.  As set forth below, the law plainly allows her to obtain this discovery. *See Sullivan v. Liberty Mutual Ins. Co.*, 444 Mass.

---

[3] *See Abramian v. President & Fellows of Harvard College*, 432 Mass. 104, 116 (2000); *Knight v. Avon Products, Inc.*, 438 Mass. 413, 424-25 (2003).

34, 55 (2005); *see also* Argument, Section II, below.

Simply put, in this case, Ms. Cocuzzo was fired when she refused to retire at the behest and convenience of Trader Joe's and to make way for younger employees.  Complaint, Par. 31.  Because, as set forth above, Ms. Cocuzzo has established a prima facie case, Trader Joe's must articulate a legitimate, non-discriminatory reason for the adverse action it took and provide credible evidence that this is the *real* reason for her termination.  *See Matthews*, *supra*, 426 Mass. at 128 (1997).  This, Trader Joe's has utterly failed to do (as it cannot do).  Instead, Trader Joe's concocted a story in its Interrogatory Answers in which Ms. Cocuzzo was purportedly fired because she violated Trader Joe's Alcohol Policy **and** Massachusetts state law by "buying two 4-packs of beer" for her 20 year-old grandson.  Exhibit 2 (Interrogatory Response No. 7).[4]

First and foremost, purchasing a four-pack of beer that Ms. Cocuzzo intended to bring home and consume with her grandson later that evening and in the privacy of her own home is neither a violation of Massachusetts law nor a violation of Trader Joe's policy.  Indeed, the statute on point, Mass. G.L. c. 138 § 34, *specifically permits* parents *and grandparents* to purchase and serve alcohol to their children and grandchildren in their home.

Trader Joe's now admits this fact:

```
1    Q      So the statute actually carves out an
2           exception to the law that permits a parent
3           or a grandparent to furnish alcoholic
4           beverages to someone under 21 years on
5           premises or property owned or controlled by
```

---

[4] A minor point of clarification: Trader Joe's has now admitted that Ms. Cocuzzo purchased a single four-pack of beer, not two four-packs as originally alleged.  *See* Exhibit 6 (Andre Diehl Depo., p. 27).

```
6              the person charged, correct?
7    A         Correct.
```

*See* Exhibit 7 (Brian Foote Depo., p. 66); *see also* Exhibit 5 (Jennifer Gillum Depo., p. 118)

(Gillum admitted that "to have alcohol with your grandson at home is not illegal.")

In addition, the Trader's Joe's Alcohol Policy plainly does not prohibit Ms. Cocuzzo's

conduct (a 79 year-old's purchase of alcohol to be later consumed with her grandson at home)

as falsely alleged by Trader Joe's.  Rather, Trader Joe's written Alcohol Policy merely

prohibits a direct sale of alcohol by a store clerk to a minor or to an intoxicated person (neither

of which Ms. Cocozzo is accused of doing).  *See* Exhibit 7, p. 56 (Foote admitted that Trader

Joe's alcohol policy states: "No alcoholic beverages shall be sold to anyone who is under 21 or

intoxicated.").  Ms. Gillum testified:

```
1    Q         Right.    So now back to the policy -- the
2              policy simply says that no alcohol[ic] beverage
3              shall be sold to anyone under 21 years of
4              age or who is intoxicated, correct?
5    A         That is one of the things the alcohol
6              policy says, yes.
7    Q         Okay.    Now, she didn't violate that,
               because she didn't sell alcohol to anyone
               that day, correct?
     A         Correct.
```

Thus, Ms. Cocuzzo has also shown that the "proffered reasons for [Trader Joe's] employment

decision was not the real reason, but is a pretext for discrimination."  *Matthews*, 426 Mass. at

128.

Having shown her prima facie case and having revealed Trader Joe's reason for her termination to be a pretext, Ms. Cocuzzo seeks the additional discovery set forth above that she is confident will reveal that she was treated differently than her co-workers based upon her age in many respects – including with respect to her discipline and termination at issue in this case.

## ARGUMENT

### I.    Discovery Standard

District courts exercise broad discretion to manage discovery matters.  *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 51 (1st Cir. 2009); *quoting Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd*., 333 F.3d 38, 41 (1st Cir.2003).  "The scope of discovery is broad, and to be discoverable, information need only appear to be reasonably calculated to lead to the discovery of admissible evidence."  *Id*.; *quoting 5 Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 n. 5 (1st Cir.1998); Fed. R. Civ. P. 26(b)(1).  Federal Rule of Civil Procedure 26 allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Under Federal Rule of Civil Procedure 37, a party seeking discovery through an interrogatory under Rule 33, the production of documents under Rule 34, or a deposition under Rule 30, may — after conferring in good faith with the opposing party — seek to compel a response.  *See* Fed. R. Civ. P. 37(a)(1), 37(a)(3)(B)(i), (iii)-(iv).

### II.    Plaintiff Has A Right To The Comparator Discovery Sought In The Document Requests (Including Personnel Files of Other Trader Joe's Employees) and Sought In The Interrogatories (Including Full Identification of Workers Who Undertook Plaintiff's Job Responsibilities)

Through her Document Requests, Ms. Cocuzzo has sought information that would

identify employees who undertook her job responsibilities before and after her termination (limited to 2018-present), including personnel files for employees at the store where she worked (known as Store #501 in Brookline) that would reflect the treatment of these employees compared to that of Ms. Cocuzzo.  *See* Exhibit 1 (Responses to Document Requests Nos. 6-10, 40, 41, 53-58).  In Interrogatory Requests, Ms. Cocuzzo has requested similar information.  *See* Exhibit 2, 3 (Responses to Interrogatory Nos. 14-17).[5]  However, the only "identification" of the relevant workers that Trader Joe's has provided in response to these requests is a list attached to the its Interrogatory Responses that purports to contain the year of birth for "individuals employed [at Trader Joe's] at the time of Plaintiff's termination."  *See* Exhibit 3.[6]  From this vague list, and without the corresponding personnel files of these employees, it is impossible for Ms. Cocuzzo to fully pursue her claims (including comparing her treatment with other, younger Trader Joe's employees) and to test the defenses that Trader Joe's has raised to her claims.

It is clear that Ms. Cocuzzo has a right to the comparator discovery that she has requested – i.e. company information including personnel files "that will enable her to properly identify comparators and establish her … discrimination … claims."  *Rowe v. Google LLC*, Case No. 19-cv-08655 (Schofield, USDJ) (S.D.N.Y. April 22, 2020); *Pardo,* 446 Mass. at 9; *Matthews*, 426 at 129.  "The refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact

[5] Trader Joe's merely asserts in its Interrogatory Answers:  "No one person took over Plaintiff's job after her termination.  Rather, her former responsibilities are shared among **all** crew members at Store 501."  Exhibit 3, Interrogatory Answer No. 14 (emphasis added).
[6] The attachment thereto is not attached here because Trader Joe's marked the document "Attorney's Eye Only" under the parties' Confidentiality Stipulation.

must determine." *See Bobo v. UPS*, 665 F.3d 741, 753 (6th Cir. 2012).

In particular, personnel records of other employees are relevant and critical to this analysis. *See, e.g., Riffelmacher v. Board of Police Comm'rs of Springfield*, 27 Mass. App. Ct. 159, 163 (1989) (proof of pretext in sex discrimination case included comparing the applications of the female applicants with male applicants to show that similarly situated females were treated differently from similarly situated men); *Buckley Nursing Home, Inc. v. MCAD*, 20 Mass. App. Ct. 172, 176 (1985) (comparison of plaintiff's employment application with applications of others showed she was treated differently); *Duenez, supra*; *citing Lauer v. Longevity Med. Clinic PLLC*, C13-0860-JCC, slip op. at 4 (W.D. Wash. Oct. 29, 2014) ("Pattern and practice" evidence is discoverable and admissible to prove discriminatory intent in employment discrimination cases. To that end, "non-party personnel files of current and past employees fit squarely into the pattern and practice evidentiary category that has been deemed relevant" in such cases.)[7]

In refusing to produce the requested discovery, Trader Joe's misstates the purpose of this type of discovery: "the purpose of discovery here is, in part, to help identify the universe of proper comparators." *Vuona v. Merrill Lynch & Co.*, No. 10 Civ. 6529, 2011 WL 5553709, at *4 (S.D.N.Y. Nov. 15, 2011); *see also Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 753 (6th Cir. 2012) ("The refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine."). For instance, Trader Joe's outlandish claims that there are no similarly situated

---

[7] It is important to note that Ms. Cocuzzo agreed to the Confidentiality Stipulation and Protective Order provided by Trader Joe's and this pleading has been filed with the Court. *See* Court Docket, No. 24. Thus, the privacy of the personnel files shall be fully protected.

employees and that there has been no similar issues that have arisen with other employees and that Trader Joe's progressive discipline has been evenly applied without regard to age must be tested through obtaining this discovery.

In addition, whether the persons sought through this discovery are appropriate comparators for Ms. Cocuzzo (in Trader Joe's subjective view) is not determinative and is not appropriate to raise in the context of a discovery dispute. Such arguments should be raised and addressed, if at all, at the summary judgment stage or at trial. *Khazarian, supra*; *citing Farm Mutual Automobile Ins. Co. v. Fayda*, 14-cv-9792, 2015 WL 7871037 (S.D.N.Y. Dec. 12, 2015) (the "information still 'need not be admissible in evidence to be discoverable.'")

Here, Ms. Cocuzzo's discovery request for identification of and personnel files for those employees who undertook any of her job responsibilities from 2018 to present[8] is appropriate. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (employees "need not be identical to that of another for the two to be similarly situated" and "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury."); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an identically situated employee."). From the information sought, Ms. Cocuzzo will be able to determine which employees were similarly situated to her and which employees may have been treated similarly or differently than her due to age. This is important here, in particular, because the stated reason for Ms. Cocuzzo's termination by Trader Joe's – that Ms. Cocuzzo violated both company policy and state law by purchasing

---

[8] "A five-year discovery period fits well within the range of time courts have approved in the employment discrimination context." *Duenez v. Dakota Creek Indus., Inc.*, C16-1238-JCC (Coughenour, USDJ) (W.D.Wash. Nov. 8, 2017); c*iting Paananen v. Cellco P'ship*, No. C08-1042-RSM, slip op. at 9 (W.D. Wash. Oct. 8, 2009) (finding that three to eight years is normally an appropriate range for discovery of comparator evidence in employment discrimination cases).

beer to bring home to have a dinner with her grandson – has already been shown to be a pretext as set forth above.

### III.    Trader Joe's Must Be Ordered To Produce A Rule 30(b)(6) Deponent

Trader Joe's has steadfastly refused to produce a Rule 30(b)(6) deponent despite Ms. Cocuzzo's repeated efforts to schedule same and her counsel's repeated, good faith efforts to narrow the scope of the deposition at Trader Joe's requests.[9]  The most recent request for a corporate representative, Exhibit 4, is patently reasonable and only seeks a representative to provide Trader Joe's position on eleven narrow topic areas (which counsel understood would be acceptable to Trader Joe's after a Local Rule 7.1 Conference and after he reduced the topic areas from 24 to 11).  *Id*.  Yet, Trader Joe's again made general objections to each and every topic area requested and made additional specific objections to every topic area except #9.  *See* Exhibit 11.  This is impermissible under the Rules and is a purposeful attempt to hinder Ms. Cocuzzo's pursuit of her claims.

The Federal rules were amended in 1970 to include Rule 30(b)(6) as a method to curb organizations from using their size and complexity to their advantage by "bandying" their opponents with a series of organizational employees who are "deposed in turn but each disclaims knowledge of facts that are clearly known to the persons in the organization and thereby to it."  Committee's Note to Fed. R. Civ. P. 30(b)(6) (1970).

---

[9] On March 31, 2022, Ms. Cocuzzo served her initial Notice of Rule 30(b)(6) Deposition with 24 topic categories requested.  *See* Exhibit 8.  On May 6, 2022, Trader Joe's responded with an objection to each and every category requested by Ms. Cocuzzo.  *See* Exhibit 9.  On July 15, 2022, Ms. Cocuzzo served a Re-Notice of Rule 30(b)(6) Deposition with 23 topic categories requested.  On July 22, 2022, counsel for both parties held a Local Rule 7.1 Conference and Ms. Cocuzzo agreed to provide a new notice in an attempt to narrow the scope of the request and resolve the discovery dispute.  On August 10, 2022, Ms. Cocuzzo provided a second Re-Notice of Rule 30(b)(6) Deposition with only 11 topic categories requested.  *See* Exhibit 4.  On August 12, 2022, Trader Joe's responded again objecting to every category and refusing to produce the corporate representative requested.  *See* Exhibit 11.

Rule 30(b)(6) requires a party to cooperate in discovery by properly responding to a notice and designating an individual to testify on its behalf. *See Gleason v. Source Perrier, S.A.,* 28 Mass. App. Ct. 561, 569 (1990). Rule 30(b)(6) is not a game to be played. "Rule 30(b)(6) means what it says ... [entities] must produce live witnesses who know or can reasonably find out what happened in given circumstances." *See Wilson v. Lakner,* 228 F.R.D. 524, 530 (D. Md. 2005).

**WHEREFORE**, Plaintiff requests that its motion to compel be ALLOWED and that all documents requested by produced forthwith, that all interrogatory answers be provided forthwith, and that a deponent be designated under Rule 30(b)(6) forthwith.

Respectfully submitted,

**PLAINTIFF GLORIA COCUZZO,**

By her attorneys,

/s/ *Timothy J. Perry*
Timothy J. Perry (BBO #631397)
tperry@pkcounsel.com
PERRY KRUMSIEK LLP
One Boston Place, Suite 2600
Boston, MA  02108
(617) 720-4300
facsimile (617) 720-4310

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I served a copy of the foregoing document upon counsel for defendants via the Electronic Court Filing service of the United States District Court for the District of Massachusetts.

Dated: September 20, 2022                    /s/ *Timothy J. Perry*
                                             Timothy Perry

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA COCUZZO,

                    PLAINTIFF,

        V.

TRADER JOE'S EAST INC. AND
JENNIFER GILLUM,

                    DEFENDANTS.

Civil Action No. 1:22-cv-10162-LTS

## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Trader Joe's East Inc. ("Trader Joe's") hereby opposes Plaintiff Gloria Cocuzzo's Motion to Compel ("Mot.", ECF nos. 25, 26).  Plaintiff, a former Trader Joe's employee, admits to the misconduct for which she was terminated: she purchased alcohol for a underaged person, in violation of Trader Joe's alcohol policy.  Even though the facts in this case are essentially undisputed, Plaintiff served nearly <u>two hundred</u> document requests on the Defendants, most of which were duplicative and over-broad.  There was no reason for such burdensome discovery.  Plaintiff's Motion should be denied on that basis alone.

Regardless, the discovery Plaintiff now seeks – the personnel files for <u>every employee</u> who worked at Trader Joe's Brookline store since 2018 – is irrelevant, unduly burdensome, and improperly invades the privacy interests of third parties.  To make out her age discrimination claims, Plaintiff may seek discovery about other employees who are similarly situated to her in all relevant respects.  Trader Joe's has produced such discovery, namely information and documents about other employees who were also disciplined for violating the alcohol policy.  The unfocused discovery Plaintiff seeks with this Motion is not limited to similarly situated individuals, and therefore is not relevant.  Further, Trader Joe's has employed <u>715</u> people at the Brookline store

1

since 2018.  The burden of locating, reviewing and producing the entire personnel files for all of them is plain.  Plaintiff's request for discovery should be denied.

Further, Plaintiff's request for Trader Joe's to designate a corporate representative deponent is improper, because the parties have not finished conferring on that issue.  Many of the topics Plaintiff noticed are improper.  Trader Joe's expressed its concerns about those topics and invited further discussion, but instead Plaintiff filed this Motion.  Plaintiff's Motion should be denied.

Lastly, per Rule 37, Trader Joe's should be awarded it expenses in opposing this Motion.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff formerly worked for Trader Joe's at Store 501 in Brookline.  Pl. Dep. 15.[1]  Because the Brookline store sells alcohol, Plaintiff was subject to the store alcohol policy, and received training on selling alcohol.  Pl. Dep. 33-35.  The alcohol policy states that Trader Joe's is "committed to adhering to all liquor laws," and that any employee who "violates the Alcohol Policy or is not in line with the Company's standards will be subject to disciplinary action, which may range from a written warning to termination of employment."  Pl. Dep. Exh. 6.

At her deposition, Plaintiff testified that on February 20, 2021, at the Brookline store, a person under 21 selected beer, took the beer off the shelf, and handed it to Plaintiff.  Plaintiff knew the person under 21 would consume the beer.  She took the beer to a register and purchased the beer for the underage person.  Pl. Dep. 38-40.  Another Trader Joe's employee saw Plaintiff buy the beer for the minor, and reported it to store management.  Pl. Dep. 108.

---

[1] Excerpts and exhibits to the Deposition of Gloria Cocuzzo are attached to the Declaration of Stephen Melnick, Esq. (Melnick Decl."), submitted herewith, at <u>Exhibit A.</u>

The Brookline store manager, Ms. Gillum, asked Plaintiff about this, and Plaintiff confirmed that she purchased beer for a minor.  Pl. Dep. Exh. 11.  Because of this, Plaintiff was given the option of resigning, retiring, or being terminated.  ECF 26-2, at p.10.  Plaintiff initially asked to retire, then changed her mind.  *Id*.  Trader Joe's therefore terminated Plaintiff.  Pl. Dep. Exh. 12.

### B.    Procedural History

Plaintiff filed this suit against Trader Joe's and Ms. Gillum, alleging age discrimination. On March 31, 2022, Plaintiff served written discovery on both Defendants: 92 document requests on Trader Joe's; 90 document requests on Ms. Gillum; 22 interrogatories on Trader Joe's; and 20 interrogatories on Ms. Gillum.[2]  Melnick Decl. ¶ 4; Exhs. B-D thereto.  Many of these document requests are internally duplicative (or even identical),[3] and most are duplicative between Ms. Gillum and Trader Joe's.[4]  The majority of the requests to Ms. Gillum sought documents that were in Trader Joe's possession, not hers.[5]

Trader Joe's and Ms. Gillum served their objections and responses to these discovery requests.  Among other things, Trader Joe's produced Plaintiff's personnel file; relevant policies, including the alcohol policy; and documents, communications, and information relating to Plaintiff's termination.  Melnick Decl. ¶ 8. Trader Joe's also identified four other employees who

---

[2]  Plaintiff only included excerpts of her document requests to Defendants.  *See* ECF no. 26-1.
[3]  For instance, four requests to Trader Joe's (nos. 5, 27, 38, 42) ask for Plaintiff's compensation.  Seven requests (nos. 2, 28, 29, 47, 73, 76, 77) ask for Plaintiff's personnel file, or documents in it.  Eight requests (nos. 14, 15, 19, 23, 24, 78, 79, 80) ask for documents regarding Plaintiff's termination.  Request nos. 64 and 65 are identical, and nos. 9 and 85; 11 and 67; and 45 and 92 are almost identical.  *See* Melnick Decl. Exh. B.
[4]  The following requests are identical: Trader Joe's nos. 2-4, 7-12, 15-20, 22-32, 34-44, 48, 52-69, 72-75, 77-92; and Gillum nos. 3-5, 8-13, 16-21, 23-33, 35-45, 47, 51-68, 70-73, 75-90. *See* Melnick Decl. Exhs. B, C.
[5]  For instance, Plaintiff issued requests to Gillum to produce Trader Joe's policies (nos. 26, 36, 51, 72, 73);  documents reflecting compensation paid to other employees (nos. 6, 28, 39, 40, 42, 43, 44, 57, 80, 82); personnel records for other employees (nos. 41, 52, 53, 55, 56, 79, 80, 81, 82, 83, 84, 85); lawsuits against Trader Joe's (no. 45); Trader Joe's finances (no. 59); and compensation paid to Trader Joe's officers and directors (no. 58).  All of these are duplicative of discovery propounded on Trader Joe's. *See* Melnick Decl. Exh. C.

had been terminated for violating the alcohol policy, along with their ages and documentation regarding same.  ECF no. 26-2, at pp.10-11.

Plaintiff has taken three depositions, including Ms. Gillum; the person who witnessed Plaintiff purchasing the beer; and another manager at the store.  *See* ECF nos. 26-5, 26-6, 26-7; Melnick Decl. ¶ 10. Plaintiff also issued a corporate representative notice.  ECF no. 26-8.  Plaintiff did not ask to meet and confer before sending that notice.  Melnick Decl. ¶ 11.  On May 6, 2022, Trader Joe's sent a letter explaining its objections and concerns with the corporate representative notice.  ECF no. 26-9.

On Friday, July 15, 2022 at 5:19 pm, Plaintiff's lawyer sent an email regarding Defendants' discovery responses.  The email concluded, "Please respond to the foregoing by Monday at close of business.  Otherwise, a motion to compel and for sanctions shall be filed."  Melnick Decl. ¶ 12; Exh. E thereto.  Defendants' counsel responded that he would not be able to respond by close of business Monday, but asked to meet and confer.  Melnick Decl. Exh. E.

The parties spoke on July 22, 2022.  Both Defendants agreed to supplement certain interrogatory responses and document requests.[6]  Melnick Decl. ¶ 13.  However, during the call, Plaintiff's lawyer insisted that Plaintiff was seeking documents and information regarding all Trader Joe's employees, in some instances going back to 2010.  Defendants' counsel explained that Trader Joe's had hundreds of stores and tens of thousands of employees, and therefore such broad discovery would be unduly burdensome and irrelevant.  Plaintiff's lawyer did not agree to modify those requests or interrogatories.  Melnick Decl. ¶ 14; *see* Melnick Decl. Exh. F.

---

[6]  That supplementation was completed on August 19, 2022. Melnick Decl. ¶ 13.  Among other things, Trader Joe's clarified that no one person at the store "undertook Plaintiff's responsibilities" after her termination, and instead her duties were generally assumed by the other employees of the store.  To that end, Trader Joe's produced a list of Brookline store employees, including their ages.  *See* ECF no. 26-3.

During the July 22 call, the parties also discussed Plaintiff's corporate representative deposition notice.  Melnick Decl. ¶ 15.  Plaintiff agreed to issue a new notice, which was sent on August 10, 2022.  Melnick Decl. ¶ 17; ECF no. 26-4.  Trader Joe's responded with a letter on August 12, 2022, expressing further concerns and suggesting alternate topics.  The letter concluded, "Please let me know if Plaintiff will modify the Notice as stated above, or if you would like to discuss further."  ECF no. 26-11.

Plaintiff's lawyer did not contact Defendants' counsel about any discovery issues after August 12, 2022.  Melnick Decl. ¶ 19.  At no time before bringing this Motion has Plaintiff offered to modify the scope of the discovery sought, or discuss the corporate representative deposition.  Melnick Decl. ¶ 20.

## II.     DISCUSSION

### A.     This Motion Should Be Denied Based on Plaintiff's Improper Discovery Conduct

At the outset, this Motion should be denied because of Plaintiff's bad-faith discovery practices. The Motion misleadingly attaches portions of the discovery Plaintiff propounded on Defendants.  In total, Plaintiff propounded 182 document requests on the Defendants.  Most of these requests were cumulative and duplicative: many of the requests to Trader Joe's were repeated; nearly all of the requests to Ms. Gillum copied verbatim requests to Trader Joe's, and sought documents that Ms. Gillum clearly would not have.  Plaintiff also propounded a total of 42 interrogatories, which exceeds the number permitted by Local Rule 26.1(c).  Given that the essential facts in this case are undisputed, there was no conceivable reason for Plaintiff to serve such a large number of discovery requests, other than an improper attempt to drive up the costs of litigation.

The discovery requests here were also facially overbroad and unreasonable. Many of Plaintiff's document requests and interrogatories seek <u>company-wide</u> data, in some instances going back <u>12 years</u>.[7] Trader Joe's employed hundreds of thousands of people during that period. There is no discernible relevance to such wide-ranging discovery, and the undue burden is plain. *See Lafate v. Vanguard Group, Inc.*, 2014 WL 4384510, *10 (E.D. Penn. Sept. 5, 2014) (denying motion to compel given the "burden associated with producing company-wide discovery").

Plaintiff now has changed tack, and seeks personnel files for all employees of the Brookline store (which, as discussed below, is still overbroad). Notably, Plaintiff never offered this during the parties' meet and confer session, or any time before filing this Motion. That is, Plaintiff forced Defendants to respond to dozens of concededly unreasonable discovery requests for no reason. Such litigation tactics should not be condoned. The Court should deny this Motion.

**B.     The Discovery Sought Is Irrelevant, Unduly Burdensome, and Infringes on Third Parties' Privacy Rights**

Further, Plaintiff has failed to establish that the discovery sought – the complete personnel files for hundreds of employees – is relevant and proportional to the needs of the case. "The party seeking discovery information over an adversary's objection has the burden of showing the information's relevance." *Cutter v. HealthMarkets, Inc.*, 2011 U.S. Dist. LEXIS 13593, *6 (D.Mass. 2011); *see Koninklijke Philips N.V. v. Wangs Alliance Corp.*, 2018 U.S. Dist. LEXIS 607, *1 (D.Mass. Jan. 2, 2018) (same); *ACI Worldwide Corp. v. Keybank Nat'l Ass'n*, 2018 U.S. Dist. LEXIS 219999, *3 (D.Mass. July 31, 2018) (same). In this, the Court should balance relevance against the proportionality of the needs of the case:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

---

[7] E.g., request no. 56 to Trader Joe's asks for all discipline to any employee since 2010, and request no. 58 asks for "documents that reflect the age, gender, job titles, and compensation of all employees of Trader Joe's" since 2010. Melnick Decl. Exh. B.

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Further, the Rules provide that the Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

"A plaintiff in a disparate treatment case may attempt to show that others similarly situated to him in all relevant respects were treated differently by the employer." *Ray v. Ropes & Gray LLP*, 799 F. 3d 99, 114 (1st Cir. 2015).  For such "comparator" evidence, "reasonableness is the touchstone," and thus "while the plaintiff's case and the comparison cases that he advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances."  *Id.*; *see Trs. of Health & Hosps. of the City of Boston, Inc. v. MCAD*, 449 Mass. 675, 682 (2007) (a relevant comparator's circumstances need not be identical, but must be "substantially similar" "in all relevant aspects concerning the adverse employment decision"). "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. ... Exact correlation is neither likely nor necessary, but the cases must be fair congeners." *Conward v. Cambridge Sch. Cmte.*, 171 F.3d 12, 21 (1st Cir. 1999).  "It is the plaintiff's burden to demonstrate that she is comparing apples to apples." *Rathbun v. Autozone, Inc.*, 361 F. 3d 62, 76 (1st Cir. 2004).

Trader Joe's has fully produced relevant comparator discovery.  In response to specific discovery requests,[8] Trader Joe's identified four other employees who violated the alcohol policy,

---

[8]  Request no. 81 to Trader Joe's ("All documents that reflect the discipline of any employee for any violation of Trader Joe's Alcohol Policy at any of its stores from January 1, 2015 – present"); interrogatory no. 12 ("identify each and every employee who has been disciplined for any violation of Trader Joe's Alcohol Policy at any of its stores from January 1, 2015 – present").

including their ages, and produced documentation regarding same.  Trader Joe's is not aware of any other employee who has violated the alcohol policy.  Thus, Trader Joe's <u>has</u> produced relevant discovery about similarly situated "comparators."  Plaintiff's assertion that Trader Joe's "claim[s] that there are no similarly situated employees and that there has been no similar issues that have arisen with other employees" (Mot. at 7-8) is absolutely false.

Plaintiff does not explain why this discovery is insufficient.  Nor does she explain why the discovery she currently seeks – the complete personnel files for <u>every</u> person who worked at the Brookline store since 2018 – is relevant or necessary.  None of these files will reveal any violations of the alcohol policy; there were no other violations at that store since 2018.  Many if not most of these files will contain no disciplinary history at all.  Trader Joe's has produced sufficient comparator discovery.

Further, the discovery Plaintiff seeks is overly broad and excessively burdensome.  Since 2018, Trader Joe's employed <u>715</u> people at the Brookline store.  Melnick Decl. ¶ 21.  Producing the full personnel files for them will likely amount to tens of thousands of pages,[9] virtually all of which will have nothing to do with the claims or defenses of this matter.  The discovery Trader Joe's has produced, limited to employees who violated the same policy Plaintiff did, is appropriate.  *See EEOC v. Baystate Med. Ctr., Inc.*, 2017 U.S. Dist. LEXIS 179016, *15-16 (D.Mass. Oct. 30, 2017) (rejecting request to produce entire personnel files, and limiting discovery to documents reflecting discipline for violations of the policy at issue); *see also Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989) ("cull[ing] through personnel records of hundreds of employees" was "unduly burdensome or expensive, taking into account the needs of the case").

---

[9] Plaintiff's personnel file is 59 pages long.  Melnick Decl. ¶ 22.  Assuming the average employee's personnel file is half that, the discovery Plaintiff seeks would total 21,450 pages.

Moreover, "personnel files contain perhaps the most private information about an employee within the possession of an employer." *Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D.Mass. 1995).  Plaintiff "requests the Court to order [Trader Joe's] to hand over entire files of employees without any particularized showing that any, let alone all, of the information therein is relevant to [her] claim." *Id.*  In this, "Plaintiff has not demonstrated that the files [she] seeks, even if marginally relevant, outweigh the privacy interests of these individuals." *Id.* at 127-28.

None of the cases Plaintiff cites in her Motion[10] hold that a plaintiff can obtain unfettered discovery about hundreds of employees without any showing of similarity or relevance.  To the contrary, the cases cited require production of tailored and focused discovery about a small number of similar comparators.  *Cf. Bobo v. UPS, Inc.*, 665 F.3d 741, 753 (6th Cir. 2012) (granting discovery into a "small number of specific individuals"); *Vuona v. Merrill Lynch & Co.*, 2011 WL 5553709, *4 (S.D.N.Y. Nov. 15, 2011) (ordering limited discovery as to employees who were part of the same layoff as plaintiffs).

Plaintiff has not established that the discovery she seeks here is relevant, necessary, or proportional to the needs of the case.  The Court should deny Plaintiff's Motion seeking additional comparator discovery.

**C.     The Court Should Deny Plaintiff's Motion Regarding a Corporate Representative Deposition**

The Court should also deny Plaintiff's Motion with respect to the corporate representative deposition.  Trader Joe's has not "refused to produce a Rule 30(b)(6) deponent."  *Cf.* Mot. at 9. Instead, Trader Joe's was in the process of conferring with Plaintiff about that deposition when this Motion was filed.  Rule 30(b)(6) requires, "before or promptly after the notice or subpoena is

---

[10]   Some of the cases Plaintiff references lack citation to any reporter, or any citation at all, making it impossible to confirm they stand for the propositions stated.

9

served, the serving party and the organization must confer in good faith about the matters for examination." Plaintiff did not seek to confer with Trader Joe's regarding the corporate representative deposition; rather, Trader Joe's had to ask to meet. The parties began the meet and confer process, but never finished it: On August 12, 2022, Defendants' counsel sent a letter noting Trader Joe's concerns with the topics noticed, offering to provide a witness for certain topics, and asking Plaintiff to either revise the notice or discuss further. Plaintiff did neither, and instead filed this Motion. Plaintiff did not "confer in good faith to narrow the areas of disagreement to the greatest possible extent" before filing this Motion, as required by Local Rule 37.1, and therefore her request that "a deponent be designated under Rule 30(b)(6) forthwith" (Mot. at 10) should be denied.

Regardless, Trader Joe's stands by the objections and concerns it raised to Plaintiff's latest corporate representative deposition notice. "The party seeking a Rule 30(b)(6) deposition must first serve a notice that describes 'with reasonable particularity' the issues and topics that will be addressed at the deposition." *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 2013 U.S. Dist. LEXIS 44977, *5 (S.D.N.Y. Mar. 28, 2013). The duty to "describe with reasonable particularity the matters on which examination is requested" exists because "an overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task": when "the notice is overbroad, the responding party is unable to identify the outer limits of the areas of inquiry noticed, and designating a representative in compliance with the deposition notice becomes impossible." *Bowers v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 6013092, *4 (D.Kan. Dec. 2, 2011). Likewise, "Rule 30(b)(6) witnesses must be prepared and knowledgeable, but they need not be subjected to a 'memory contest.'" *W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*, 2012 U.S. Dist. LEXIS 195292 (C.D. Cal. Aug. 27, 2012) (quoting *Alexander v. F.B.I.*, 186 F.R.D. 137, 143 (D.D.C. 1998)). Thus,

"to allow [Rule 30(b)(6)] to effectively function, the requesting party must take care to designate, <u>with painstaking specificity</u>, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D.Minn. 2000) (emphasis supplied); *see Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057 n.5 (7th Cir. 2000) (same).

In this light, addressing the specific topics noticed by Plaintiff in her August 10, 2022 Notice (ECF no. 26-4):

**1.      Trader Joe's May 23, 2022 Response to Plaintiffs First Request for Production of Documents; specifically limited to Trader Joe's Responses to Document Requests Nos. 6, 7, 8, 9, 10, 12, 14, 15, 18, 19, 22, 25, and 30 and the documents produced in response thereto.**

This topic does not state with reasonable particularity what aspects of its "Response to Plaintiffs First Request for Production of Documents" Plaintiff will ask about.  To the extent it seeks a witness to testify about the objections Trader Joe's interposed to these Requests, such "discovery on discovery" is not a proper basis for a corporate representative deposition.  *See Hubbard v. Potter*, 247 F.R.D. 27, 29, 31 (D.D.C. 2008) (denying request for "meta-discovery, i.e., discovery about the discovery"); *Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, *17 (D. Md. Feb. 21, 2017) (same).  The Court should not permit Plaintiff to ask a corporate representative about objections or the like.

With respect to "documents produced in response" to Request nos. 6, 7, 8, 9, 10, 18, 22, 25, and 30, Trader Joe's objected to those Requests (and stands by those objections, as discussed above).  There are no "documents produced in response thereto," and therefore Trader Joe's cannot offer a witness to testify about same.  Trader Joe's offered to have a witness testify to the other Requests to which it did produce documents (nos. 12, 14, 15, 19).  That should be sufficient.

**2.      Trader Joe's May 23, 2022 Response to Plaintiff's First Request for Answers to Interrogatories.**

This topic does not state with reasonable particularity what aspects of Trader Joe's answers to interrogatories it seeks.  Further, Trader Joe's interrogatory responses speak for themselves; preparing a witness to testify about what is already stated would be cumulative and duplicative. This topic should be struck. *See Smithkline Beecham Corp. v. Apotex Corp.*, 2000 U.S. Dist. LEXIS 667, *31 (N.D. Ill. Jan. 21, 2000) (forcing corporation to prepare a witness to testify to interrogatory answers is a "duplicate process [which] is unnecessary and overly burdensome").

**3.      An identification of persons who provided information to Answer Plaintiffs First Request for Answers to Interrogatories and the information provided by each.**

Trader Joe's interrogatory responses were drafted by counsel, and therefore the identity of "persons who provided information to answer" same is work product privileged.  Further, the identity of such "persons" has no bearing on the claims or defenses of this matter.  This topic should be struck.

**4.      The factual basis for Trader Joe's denial of any allegations set forth in the November 9, 2021 Complaint filed by Gloria Cocuzzo against Trader Joe's and Jennifer Gillum.**

**5.      The factual basis for any defense Trader Joe's intends to raise to the claims submitted by Cocuzzo in this matter.**

**6.      The assertions of Trader Joe's set forth in the October 6, 2021 Position Statement filed by Trader Joe's in response to the August 5, 2021 MCAD action brought by Cocuzzo.**

While a party "has a right to discover the facts upon which [the defendant] will rely for its defense," the attempt "to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable."  *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996).  "Even under the present-day liberal discovery rules, [a defendant] is not required to have counsel marshal all of its factual proof and prepare a witness to be able to testify on a given

defense." *Id*. (quoting *United States v. Dist. Council*, 1992 WL 208284, at *15 (S.D.N.Y. August 18, 1992)). Such a request "also implicates serious privilege concerns." *Id*. Said differently, "the lay witness should not be expected to testify as to how any such facts form the basis of a legal affirmative defense. Depositions, including 30(b)(6) depositions, are designed to discover facts … not legal theories." *Neponset Landing Corp. v. The Nw. Mut. Life Ins. Co*., 279 F.R.D. 59, 61 (D. Mass. 2011). Topics 4-6, requesting discovery about denials and defenses asserted by Trader Joe's in its Answer or the position statement with the Massachusetts Commission Against Discrimination, is thus improper and should be struck.

**7.     Cocuzzo's job performance at Trader Joe's.**

This topic does not state with reasonable particularity the information sought, and is overly broad. Plaintiff worked for Trader Joe's for 17 years. It would be unreasonable to expect a witness to testify about all aspects of Plaintiff's "performance" over this span, without further limitation. Trader Joe's offered to have a corporate representative testify about the contents of Plaintiff's performance reviews. That should be sufficient.

**8.     An identification, specifically by gender and compensation, of any employees who undertook any of Cocuzzo's job responsibilities at Store #501 after her termination (i.e. Crew Members and Merchant level employees).**

Trader Joe's stated in its interrogatory responses that no one person "undertook any of Cocuzzo's job responsibilities at Store #501 after her termination;" rather, her "responsibilities" were generally performed by the other employees at the store. Trader Joe's further provided a list of employees who worked at the store, including their ages. There is no reason to have a corporate representative memorize a list of hundreds of employees when this information has already been produced.

Trader Joe's further objects that "compensation" has no relevance to this case. Plaintiff has not alleged that she was underpaid because of her age. Further, it has long been settled that age and pay "are analytically distinct" and therefore "an employer can take account of one while ignoring the other." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993); *see Reeder v. Wasatch Cnty. Sch. Dist.*, 359 Fed.Appx. 920 (10th Cir. 2009) (fact that replacements "were paid half the salary" of plaintiff did not establish age discrimination). There is no reason to have a witness testify about "compensation."

Finally, Plaintiff does not bring a gender discrimination claim, and therefore identification of employees "by gender" is completely irrelevant. This topic should be struck.

**9.     All communications concerning Cocuzzo's termination.**

To the extent this is limited to communications produced in discovery by Trader Joe's, Trader Joe's can produce a witness to testify regarding same.

**10.     The policies and procedures of Trader Joe's applicable to employee conduct and discipline in effect from January 1, 2019 - present.**

**11.     The manner in which Trader Joe's conducts its Corrective Action processes under the Policies and Procedures produced by Trader Joe's in this litigation, including specifically the manner in which it conducted any Corrective Action process with regards to Cocuzzo.**

These topics are overly broad in time and scope. Trader Joe's agreed to produce a witness to testify about the policies that were in effect at the time of Plaintiff's termination. This is a reasonable proposal.

### D.     The Court Should Award Trader Joe's Its Expenses

Rule 37(a)(5)(B) states that if a motion to compel is denied, the Court "<u>must</u>, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was

14

substantially justified or other circumstances make an award of expenses unjust" (emphasis supplied).

This Motion was not substantially justified: The discovery Plaintiff currently seeks, the personnel files of hundreds of employees with no connection to this case, is patently over-broad. Further, the parties had not finished conferring about the corporate representative deposition before Plaintiff brought this Motion.  Likewise, nothing would make an award of expenses unjust.  Quite the contrary, Plaintiff has engaged in improper discovery tactics in this litigation, including serving 182 overly broad and duplicative document requests, then bringing this unreasonable Motion.

Trader Joe's therefore requests, after a hearing, it be awarded its reasonable expenses incurred in opposing this Motion.

## III.   CONCLUSION

For the aforementioned reasons, the Court should deny Plaintiff's Motion, and grant Trader Joe's its reasonable expenses.

Respectfully submitted,

TRADER JOE'S EAST INC,

By its attorneys,

/s/ Stephen T. Melnick
Stephen T. Melnick (No. 667323)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
smelnick@littler.com

Dated:  October 4, 2022

15

**Certificate of Service**

I hereby certify that on this 4th day of October 2022, a true and accurate copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and sent via first class mail to unregistered participants as identified on the Notice of Electronic Filing.

/s/ Stephen Melnick
Stephen Melnick

4889-1030-5333.1 / 071820-1101

APP0059

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLORIA COCUZZO,<br><br>    PLAINTIFF,<br><br>V.<br><br>TRADER JOE'S EAST INC. AND<br>JENNIFER GILLUM,<br><br>    DEFENDANTS. | Civil Action No. 1:22-cv-10162-LTS |

## <u>DECLARATION OF STEPHEN MELNICK, ESQ.</u>

I, Stephen T. Melnick, do hereby depose and state as follows:

1.  I make the statements contained in this declaration based on my personal knowledge and am competent to testify as to all facts stated herein.

2.  I am an attorney at the law firm Littler Mendelson, P.C., One International Place, Suite 2700, Boston, MA 02110.  I represent Trader Joe's East Inc. ("Trader Joe's") and Jennifer Gillum (together, "Defendants") in the above-captioned matter.

3.  On September 2, 2022, I took the deposition of Plaintiff Gloria Cocuzzo.  Attached as <u>Exhibit A</u> are true and accurate copies of excerpts of Ms. Cocuzzo's deposition transcript and exhibits thereto.

4.  On March 31, 2022, Plaintiff served 92 document requests on Trader Joe's; 90 document requests on Ms. Gillum; 22 interrogatories on Trader Joe's; and 20 interrogatories on Ms. Gillum.

5.  Attached hereto as <u>Exhibit B</u> is a true, accurate, and complete copy of Trader Joe's objections and responses to Plaintiff's document requests to it.

6.     Attached hereto as <u>Exhibit C</u> is a true, accurate, and complete copy of Ms. Gillim's objections and responses to Plaintiff's document requests to her.

7.     Attached hereto as <u>Exhibit D</u> is a true, accurate, and complete copy of Ms. Gillum's objections and responses to Plaintiff's interrogatories to her.

8.     In response to the document requests propounded on it, Trader Joe's produced, among other things, Plaintiff's personnel file; relevant policies, including the alcohol policy applicable to Plaintiff; and documents, communications, and information relating to Plaintiff's termination.

9.     In response to interrogatories, Trader Joe's identified four other employees who had been terminated for violating the alcohol policy, along with their ages and documentation regarding same.

10.     Plaintiff has taken three depositions, including Ms. Gillum; the person who witnessed Plaintiff purchasing the beer, Andre Diehl; and another manager at the store, Brian Foote.

11.     Plaintiff issued a corporate representative notice on March 31, 2022.  Plaintiff did not ask to meet and confer before sending that notice.  On May 6, 2022, Trader Joe's sent a letter explaining its objections and concerns with the corporate representative notice.

12.     On Friday, July 15, 2022 at 5:19 pm, Plaintiff's lawyer, Timothy Perry, Esq., sent an email regarding Defendants' discovery responses.  A true and accurate copy of that email chain is attached as <u>Exhibit E</u>.

13.     I spoke with Mr. Perry on July 22, 2022.  During the call, both Defendants agreed to supplement certain interrogatory responses and document requests.  That supplementation was completed on August 19, 2022.

14.     During the July 22, 2022 call, Mr. Perry insisted that Plaintiff was seeking documents and information regarding all Trader Joe's employees, in some instances going back to 2010.  I explained that Trader Joe's had hundreds of stores and tens of thousands of employees, and therefore such discovery would be unduly burdensome and irrelevant.  During this call, Mr. Perry did not agree to modify those requests or interrogatories.

15.     During the July 22, 2022 call, the parties also discussed Plaintiff's corporate representative deposition notice.

16.     I sent an email confirming the conversation I had with Mr. Perry on July 27, 2022, attached as Exhibit F hereto.

17.     Mr. Perry agreed to issue a new corporate representative notice, which was sent on August 10, 2022.

18.     I responded to the latest corporate representative deposition notice with a letter on August 12, 2022.

19.     I did not speak with Mr. Perry about Trader Joe's discovery responses or the corporate representative deposition after August 12, 2022.

20.     Mr. Perry never suggested limiting the scope of discovery to Trader Joe's to anything less than corporate-wide.

21.     I have reviewed Trader Joe's corporate records.  According to these records, since 2018, Trader Joe's has employed 715 individuals at its Brookline, Massachusetts store (Store no. 501).

22.     The personnel file for Gloria Cocuzzo as produced in this matter totals 59 pages.

3

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 4, 2022.

/s/ Stephen T. Melnick
Stephen T. Melnick

APP0063

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLORIA COCUZZO, <br><br> Plaintiff, <br><br> v. <br><br> TRADER JOE'S EAST INC. and JENNIFER GILLUM, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil No. 22-10162-LTS |

ORDER ON MOTION TO COMPEL DISCOVERY (DOC. NO. 25)

November 9, 2022

SOROKIN, J.

Trader Joe's employed Plaintiff Gloria Cocuzzo as a "merchant" in their Brookline

store. Ms. Cocuzzo worked there for approximately seventeen years. On or about February 24,

2021, Trader Joe's terminated her employment. She has sued Defendants Trader Joe's East Inc.

and her former manager, Jennifer Gillum, claiming, inter alia, age discrimination. The parties

have completed fact discovery except for an outstanding motion to compel further discovery

filed by counsel for Ms. Cocuzzo. Doc. No. 25. At a status conference on November 8, 2022,

counsel for both parties appeared to agree that Ms. Cocuzzo brought a four pack of craft beer to

the checkout counter, purchased the beer, and placed it in the employee refrigerator. According

to Trader Joe's, the beer was selected by and removed from the shelf by Ms. Cocuzzo's then-

twenty-year-old (i.e., underage) grandson, also an employee at the Trader Joe's store. Counsel

for Ms. Cocuzzo disputes whether Ms. Cocuzzo admitted in her deposition that her grandson

removed the beer from the shelf. The foregoing is the gist of the information, apparently, upon which Trader Joe's terminated Ms. Cocuzzo for violation of its alcohol policy.

In discovery, Trader Joe's has produced the records of all persons terminated for violation of its alcohol policy: four persons nationwide during the relevant time period. Counsel for Ms. Cocuzzo seeks more. Specifically, counsel seeks the personnel records of all 715 persons employed by Trader Joe's at the Brookline location since 2018. This request is DENIED. Counsel has not articulated any basis for inquiry into the personnel records of such a large number of people given the privacy, burden, and overbreadth considerations attendant to his request. Merely seeking "objective" comparators, as counsel stated at the conference, is insufficient to support such a sweeping request. This is especially so when Trader Joe's has already produced a relevant group of comparators. The Motion presses no other specific document requests or interrogatories and does not comply with Local Rule 37.1(b)(4)&(5). Thus, the Court declines to sua sponte review all of the numerous discovery requests and responses.

The Motion does press a Rule 30(b)(6) notice that includes 11 topic areas, which the parties dispute. The topics appear in Doc. No. 26-4 at 4. The Court sustains the objection to Topic 1. Topic 1 shall be limited to only the response to document requests for which Trader Joe's produced documents. Otherwise, the Court strikes Topic 1. The Court strikes Topics 2–6. Topic 7 is ALLOWED to the extent Trader Joe's shall have a corporate representative prepared to speak to the contents of Ms. Cocuzzo's performance reviews. Topic 8 is struck. Topic 9 is allowed to the extent of non-privileged communications concerning Ms. Cocuzzo's termination. Topics 10 and 11 are allowed to the extent of the policies in effect at the time of the termination of Ms. Cocuzzo and, as to any of the policies Trader Joe's invoked or applied in terminating Ms. Cocuzzo, any changes to those policies made during the preceding six months.

2

The Motion to Compel Discovery (Doc. No. 25) is ALLOWED IN PART as described herein and OTHERWISE DENIED. The request for fees and expenses is DENIED. The parties shall complete the 30(b)(6) deposition by December 1, 2022. Counsel for both parties with Ms. Cocuzzo and a representative of Trader Joe's shall appear for a further status conference on December 12, 2022 at 10:00 am. Summary judgment motions shall be filed no later than January 17, 2023.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA COCUZZO,

        PLAINTIFF,

    V.

TRADER JOE'S EAST INC. AND
JENNIFER GILLUM,

        DEFENDANTS.

Civil Action No. 1:22-cv-10162-LTS

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56, Defendants Trader Joe's East Inc. and Jennifer Gillum (together, "Defendants") hereby move that the Court grant them summary judgment and dismiss Plaintiff Gloria Cocuzzo's claims, with prejudice.  Plaintiff admitted to purchasing alcohol for her underage grandson, in violation of Trader Joe's alcohol policy.  Plaintiff was terminated as a result.  There is no evidence in the record to support Plaintiff's allegations of age discrimination.  Therefore, the Court should grant Defendants' Motion for Summary Judgment.

In support, Defendants rely upon their Memorandum of Law, Statement of Material Facts, and accompanying materials.

Defendants request oral argument on this Motion.

LOCAL RULE 7.1 CERTIFICATION

Counsel for Defendants certifies that he conferred and attempted in good faith to resolve or narrow the issues presented by this Motion on February 23, 2023.

1

Respectfully submitted,

TRADER JOE'S EAST INC. AND JENNIFER GILLUM,

By their attorneys,

/s/ Stephen T. Melnick
Stephen T. Melnick (No. 667323)
Ellen E. Lemire (No. 670994)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
smelnick@littler.com
elemire@littler.com

Dated:  February 24, 2023

## Certificate of Service

I hereby certify that on this 24th day of November 2022, a true and accurate copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and sent via first class mail to unregistered participants as identified on the Notice of Electronic Filing.

/s/ Stephen T. Melnick
Stephen Melnick

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA COCUZZO,

        PLAINTIFF,

V.

TRADER JOE'S EAST INC. AND
JENNIFER GILLUM,

        DEFENDANTS.

Civil Action No. 1:22-cv-10162-LTS

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

      Plaintiff Gloria Cocuzzo, a former employee of Defendant Trader Joe's East Inc. ("Trader Joe's"), admitted to purchasing alcohol for her underage grandson, in violation of Trader Joe's alcohol policy.  Plaintiff was terminated as a result.  Plaintiff now claims that Trader Joe's and Jennifer Gillum (collectively "Defendants") terminated her employment because of her age. Plaintiff has no evidence to support this assertion.  Therefore, the Court should grant Defendants' Motion for Summary Judgment.

## I.    BACKGROUND

### A.    Trader Joe's

      Trader Joe's is a chain of specialty grocery stores.  Defendants' Statement of Material Facts ("SMF") ¶ 1.  Each store is staffed by a Captain (the manager in charge of the store) and Mates (assistant managers), and a non-supervisory staff of Merchants and Crew. Trader Joe's refers to its employees, collectively, as "Crew Members."  SMF ¶ 2.

      It is the policy of Trader Joe's that each Crew Member of the company is entitled to work in an environment that is free of unlawful discrimination, harassment, or intimidation and in which

1

his or her personal dignity is respected. Unlawful discrimination or harassment in employment on the basis of sex, race, ancestry, color, religion, sexual orientation, gender identity, national origin, citizenship, veteran status, age (over 40), physical or mental disability or medical condition is strictly prohibited by Trader Joe's. Crew Members who violate Trader Joe's anti-discrimination policy are subject to disciplinary action, up to and including termination of employment.  SMF ¶ 3.

### B.    Plaintiff's Employment at Trader Joe's

Plaintiff began employment at the Trader Joe's store in Brookline, Massachusetts in 2004, when she was 62 years old.  SMF ¶ 4.  Plaintiff began work as a Crew Member.  SMF ¶ 5.  Because the Brookline store sells alcohol, all Crew Members, including Plaintiff, were subject to the store alcohol policy, and received training on selling alcohol.  SMF ¶ 6.  The alcohol policy states that Trader Joe's is "committed to adhering to all liquor laws," and that any employee who "violates the Alcohol Policy or is not in line with the Company's standards will be subject to disciplinary action, which may range from a written warning to termination of employment."  SMF ¶ 7.

In 2012, the store Captain at the time, Chris Maguire, promoted Cocuzzo to a Merchant position, a role which was more focused on customer service.  SMF ¶ 8.  Plaintiff was 70 years old when she was promoted.  SMF ¶ 9.

Gillum became the Captain of the Brookline store in 2018.  SMF ¶ 10.  In 2020, Gillum gave Plaintiff a positive performance review; approved a $1,200 performance bonus for Plaintiff; and gave Plaintiff a $1.00 per hour raise, which Plaintiff thought was "wonderful."  SMF ¶ 11.

### C.    Plaintiff Illegally Purchases Alcohol For An Underage Person

On Saturday, February 20, 2021, Plaintiff was working her usual 10:00 a.m. to 6:30 p.m. shift.  SMF ¶ 12.   Plaintiff's 19-year old grandson, Kevin Quinn, also a Trader Joe's employee,

was working a shift that day as well.  SMF ¶¶ 13-14.  Plaintiff and Quinn walked together to the alcohol section of the store, where Quinn selected beer from the shelf.  SMF ¶ 15.  Quinn handed Plaintiff the beer, and Plaintiff went to the registers and purchased the beer for Quinn.  SMF ¶¶ 15-17.  Another Trader Joe's employee saw Plaintiff buy the beer for Quinn, and reported the incident to store Captain Jennifer Gillum.  SMF ¶ 18.  Gillum approached Plaintiff and asked her about the incident, and Plaintiff confirmed that she had purchased beer for Quinn, an underage person.  SMF ¶ 19.

Gillum contacted Christopher Maguire, her Regional-Vice President.  SMF ¶ 20.  Gillum told Maguire that an underage Crew Member had gone to the alcohol section, took alcohol from a shelf, gave the alcohol to Plaintiff, and that Plaintiff bought the alcohol.  SMF ¶ 21.  Gillum told Maguire that when Plaintiff was asked about this, Plaintiff admitted to purchasing alcohol for the Crew Member who happened to be her grandson and a minor.  SMF ¶ 22. Gillum said she was considering termination, and Maguire agreed that "there was nothing else you can do."  SMF ¶ 23.

On February 24, 2021, Gillum and Mate Brian Foote met with Plaintiff.  SMF ¶ 24.  Gillum explained to Plaintiff that her employment was ending because she had knowingly purchased alcohol for an underage person.  SMF ¶ 25.  During the meeting, Gillum offered Plaintiff the option of resigning, retiring or being terminated.  SMF ¶ 26.  Plaintiff initially asked to retire, and the meeting concluded.  SMF ¶ 27.  After the meeting, Plaintiff sent an email to Gillum in which she said she no longer wanted to retire.  SMF ¶ 27.  Plaintiff admitted in writing that her "termination was prompted by purchasing beer for [her] grandson, Kevin."  SMF ¶ 28.  As a result, Gillum changed Plaintiff's retirement to a termination, and asked her to sign a termination notice the following day, which Plaintiff refused to do.  SMF ¶ 29.

3

## II.      STANDARD OF REVIEW

Summary judgment is appropriate where, as here, "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). To withstand summary judgment, the non-moving party must present affirmative evidence showing a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The non-moving party's evidence must demonstrate that a trier of fact reasonably could find in her favor on each issue on which she has the burden of proof. *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is "merely colorable" or "not significantly probative" is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 249-52. A plaintiff's obligation to produce evidence cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence that, in the aggregate, is less than significantly probative. *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001); *see also DeNovellis*, 124 F.3d at 306 (holding that, where plaintiff relies solely upon such evidence, summary judgment may be appropriate even where intent is an issue).

Here, Cocuzzo alleges that Defendants discriminated against her because of her age, in violation of M.G.L. c. 151B and the Age Discrimination in Employment Act ("ADEA"). The record evidence shows that Cocuzzo cannot establish an age discrimination claim. Summary judgment is therefore warranted.

## III.      LEGAL ARGUMENT

"The analysis of a discrimination claim filed pursuant to the ADEA and Chapter 151B are so similar that they can be analyzed together." *Tombeno v. FedEx Corp. Servs., Inc.*, 284 F.Supp.3d 80, 86 (D.Mass. 2018) (citing *Adamson v. Walgreens Co.*, 750 F.3d 73, 78 (1st Cir.

2014)).  Under either statute, "it is the employee's burden to prove that but for [her] employer's discrimination, [she] would not have been terminated."  *Id.*  Plaintiff cannot meet that burden as to either Trader Joe's or Gillum.

### A.  Trader Joe's Cannot Be Held Liable for Age Discrimination

The *McDonnell Douglas* burden-shifting framework is used to analyze whether discrimination has occurred.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  Plaintiff first must establish a *prima facie* case of discrimination.  If she does so, the burden of production shifts to Trader Joe's to articulate a legitimate, non-discriminatory reason for its decisions.  Then burden then returns to Plaintiff to prove that the reason given was a pretext, and that discriminatory animus was the cause of her termination.  *Zavalianos v. Southern Folger Det. Equip. Co., LLC*, 2012 U.S. Dist. LEXIS 129336, *9-11 (D.Mass. Sept. 11, 2012).

Trader Joe's will assume for purposes of this Motion that Plaintiff can meet her *prima facie* case.  Trader Joe's then has the burden of articulating a legitimate, non-discriminatory reason for Plaintiff's termination.  It has done so: Plaintiff violated the alcohol policy by knowingly purchasing beer for an underage person, placing Trader Joe's liquor license in jeopardy.  This is clearly a legitimate, non-discriminatory reason.  *See Dyjak v. Baystate Health Sys., Inc.*, 945 F.Supp.2d 197, 207-08 (D.Mass. 2013) (violation of company policy was a legitimate, non-discriminatory reason); *Tombeno v. FedEx Corp. Servs., Inc.*, 284 F.Supp.3d 80, 86 (D.Mass. 2018) (same); *see also Fried v. Wynn Las Vegas, LLC*, 2021 U.S. App. LEXIS 34269, *3-4 (9th Cir. Nov. 18, 2021) (dismissing discrimination claims by employee who allowed underage customer to consume alcohol in violation of company policy).

Thus, "to avoid summary judgment [Plaintiff] must raise a genuine issue of material fact that the reasons offered by [Trader Joe's] were a pretext for discrimination."  *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 113 (1st Cir. 2015).  At this stage, Plaintiff "must produce sufficient evidence

5

to create a genuine issue of fact as to two points: (1) the employer's articulated reasons for its adverse actions were pretextual, and (2) the real reason for the employer's actions was discriminatory animus." *Id.*; *see Collazo-Rosado v. Univ. of Puerto Rico*, 765 F.3d 86, 92 (1st Cir. 2014) ("to establish pretext [Plaintiff] must show that the explanation was a lie, which would let a factfinder infer that the defendants made the story up to cover their tracks"); *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 54-55 (2005) (plaintiff's burden "to establish that the basis of [the employer's] decision was unlawful discrimination by adducing evidence that the reasons given by [the employer] for its actions were mere pretexts to hide such discrimination"). Calling into question the employer's reason for termination is not enough. *Bonefont–Igaravidez v. Int'l Shipping Corp.*, 659 F.3d 120, 124–25 (1st Cir. 2011). Rather, Plaintiff must point to specific facts to show that her termination was "not only a sham, but a sham intended to cover up its real motive of discrimination." *Id.* at 125 (citing *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006)).

Plaintiff cannot prove that the reason for her termination were "pretextual," a "lie," or a "sham" for the simple reason that she <u>admitted</u> – <u>multiple times</u> – to knowingly purchasing alcohol for an underage person.  There is no way for her to establish pretext, given that she acknowledges her illegal misconduct.

Plaintiff may argue that her actions – purchasing beer for her underage grandson – did not violate Massachusetts law, because she intended to serve the beer to him at her home.  This is unavailing on multiple levels.  First, the statute Plaintiff has referenced, M.G.L. c. 138, § 34, expressly forbids "deliver[ing] or procur[ing] to be delivered … any such [alcoholic] beverages or alcohol to or for use by a person who he knows or has reason to believe is under 21 years of age." While a person is allowed to provide alcohol to a grandchild in "premises or property owned or

controlled by the person charged," that was not the case here – Plaintiff knowingly purchased alcohol for a minor in a store.  Second, Plaintiff admits that she was unaware of this law allowing alcohol to be provided by family members in a home setting when she bought the alcohol for the underage person.  SMF ¶ 30.  Third, whether Plaintiff actually violated the law or not is immaterial.  At summary judgment, the Court's "task is limited to determining whether the employer believed in the accuracy of the reason given for the adverse employment action." *Espinal v. Nat'l Grid NE Holdings 2, LLC*, 693 F.3d 31, 35 (1st Cir. 2012); *see Wooster v. Abdow Corp.*, 46 Mass.App.Ct. 665, 673 (1999) (to "withstand a defendant's motion for summary judgment, a plaintiff claiming discrimination must show something more than a conflict in the evidence regarding the employer's legitimate, nondiscriminatory explanation for the employment decision").  "This holds true even when the decisionmaker is relying on information that may later prove to be inaccurate. In other words, it is not enough for a plaintiff to show that the decisionmaker acted on an incorrect perception." *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 67 (1st Cir. 2008). "It is the decisionmaker's reasonable belief that guides the inquiry." *Id.* at 70; *see also Valls v. O'Sullivan Corp.*, 67 Mass.App.Ct. 1113, *5-6 (2006) (holding lack of evidence supporting decisionmaker's termination decision does not preclude summary judgment).  The record shows that Gillum believed that Plaintiff violated the law when she bought alcohol for an underage person.  SMF ¶¶ 31-34.  Whether this was legally accurate or not is irrelevant; Gillum's belief, alone, is enough to justify granting summary judgment.  *See Bennett v. St.-Gobain Corp.*, 507 F.3d 23, 31-32 (1st Cir. 2007) (affirming summary judgment because "the decisionmaker … believed the plaintiff" engaged in misconduct).

Plaintiff may also argue that her conduct did not warrant termination.  Trader Joe's disagrees; her illegal misconduct, buying alcohol for a minor, could have led to the Brookline store

being sanctioned by the Town, such as reduction in hours, suspension of the liquor license, or even revocation of the license. *See* Town of Brookline Sale of Alcoholic Beverages Regulations, § A.25;[1] *see also* Maguire Decl. ¶ 6. Regardless, "while [Plaintiff] may perceive the result as 'unfair,' it is well established that [courts] may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions." *Lahens v. AT&T Mobility P.R., Inc.*, 28 F.4th 325, 336 (1st Cir. 2022); *see Sullivan*, 444 Mass. at 56 (same). Even if the Court were to find that Plaintiff's "dismissal was unfair or unwise, [that] would not indicate age discrimination." *Davila v. Corporación de Puerto Rico*, 498 F.3d 9, 16 (1st Cir. 2007).

Trader Joe's further notes that there is nothing to suggest that age played any part in the decision to terminate Plaintiff. There is no evidence of ageist remarks or the like. *Cf*. Pl. Dep. 78. Quite the contrary: Gillum, who made the decision to terminate Plaintiff, provided Plaintiff with a significant raise and a bonus only a few months earlier. Maguire, who reviewed the termination decision, promoted Plaintiff to Merchant when she was 70. "It is improbable that the same persons who hire or promote someone already in an older age bracket will suddenly develop an aversion to older people." *Dziamba v. Warner & Stackpole LLP*, 56 Mass. App. Ct. 397, 406 (2002).

Trader Joe's also terminated other Crew Members in Maguire's region who either purchased alcohol while underage or knowingly sold it unlawfully (such as providing illegal discounts). *See* SMF ¶¶ 35-44. All of these Crew Members who Trader Joe's terminated were under 40. *See id.* Plaintiff may note that in some instances Trader Joe's issued warnings for violations of the alcohol policy; yet those cases involved Crew Members who failed to properly check a customer's identification – not situations where the Crew Member intentionally purchased

---

[1] *Available at* https://www.brooklinema.gov/DocumentCenter/View/721/Sale-of-Alcoholic-Beverages-Regulations-PDF.

or sold alcohol to a minor they knew was underage in violation of the law.  *See* SMF ¶¶ 35-44.  There is no evidence of age discrimination here.  Trader Joe's should be granted summary judgment.

      **B.**      **Cocuzzo's Claims Against Individual Defendant Gillum Should Be Dismissed**

Cocuzzo also brings claims against Gillum individually for age discrimination.  There is no cause of action against individuals under the ADEA, so any federal claims against Gillum should be dismissed.  *Ventura v. Hanitchak*, 719 F.Supp.2d 132, 137 (D.Mass. 2010).

Plaintiff does not specify the basis for her state-law claims against Gillum.  Individuals can be liable under state law under either M.G.L. c. 151B, § 4(4A) (interference with rights) or § 4(5) (aiding and abetting).  *See Ruffino v. State Street Bank & Trust Co.*, 908 F.Supp. 1019, 1048 (D.Mass. 1995).  Neither section applies here.

Under M.G.L. c. 151B, § 4(4A), it is unlawful "for any person to coerce, intimidate, threaten or interfere with another person in the exercise or enjoyment of any right granted or protected by [chapter 151B]."  In order to establish such a claim, Plaintiff must prove (1) that Gillum had the authority or the duty to act on behalf of the employer, (2) her action or failure to act implicated rights under the statute, and (3) there is evidence that the action or failure to act was in deliberate disregard of plaintiff's protected rights.  *Furtado v. Standard Parking Corp.*, 820 F.Supp.2d 261, 278-79 (D.Mass. 2011).  "Deliberate disregard requires an intent to discriminate." *Canfield v. Con-Way Freight, Inc.*, 578 F.Supp.2d 235, 242 (D.Mass. 2008).  As detailed above, none of Plaintiff's rights under c. 151B were disregarded or violated in any way.  Therefore, Plaintiff's interference claim against Gillum fails as a matter of law as well.  *See id*. at 242-43 (where plaintiff could not prove discrimination against employer, the court need not separately consider individual liability under c. 151B).  Moreover, there is nothing in the record that indicates that Gillum acted with any specific intent to discriminate against Plaintiff.  *See Furtado*, 820

F.Supp.2d at 279 (dismissing claims against individuals where there was no evidence individuals "ever said or did anything that would suggest they had a bias"). Gillum is thus entitled to summary judgment.

Under M.G.L. c. 151B, § 4(5), the individual defendant must have committed "(1) a wholly individual and distinct wrong ... separate and distinct from the claim in main"; (2) she "shared an intent to discriminate not unlike that of the alleged principal offender"; and (3) she "knew of [her] supporting role in an enterprise designed to deprive [Plaintiff] of a right guaranteed him or her under G.L. c. 151B." *Lopez v. Com*., 463 Mass. 696, 713 (2012). An aiding and abetting claim under § 4(5) is "entirely derivative" of an underlying discrimination claim. *Id*. Because there is no evidence of discrimination on Trader Joe's part, the claim against Gillum should also be dismissed. *See id.* at 713. Furthermore, there are no allegations of "a wholly individual and distinct wrong" against Gillum "separate and distinct from the claim in main" – everything alleged against Gillum is also alleged against Trader Joe's. *See Saari v. Allegro Microsystems, LLC*, 436 F.Supp.3d 457, 466 (D.Mass. 2020) (dismissing aiding and abetting claim because plaintiff did not allege any acts of discrimination by the employer separate and distinct from those of the individual defendants). There is no basis for an aiding and abetting claim. Any claims against Gillum should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter summary judgment and dismiss Cocuzzo's claims in their entirety, with prejudice.

Respectfully submitted,

TRADER JOE'S EAST INC. AND JENNIFER
GILLUM,

By their attorneys,

/s/ Stephen T. Melnick
Stephen T. Melnick (No. 667323)
Ellen E. Lemire (No. 670994)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
smelnick@littler.com
elemire@littler.com

Dated:  February 24, 2023

## Certificate of Service

I hereby certify that on this 24th day of November 2022, a true and accurate copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and sent via first class mail to unregistered participants as identified on the Notice of Electronic Filing.

/s/  Stephen T. Melnick
Stephen Melnick

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA COCUZZO,

       PLAINTIFF,

V.

TRADER JOE'S EAST INC. AND
JENNIFER GILLUM,

       DEFENDANTS.

Civil Action No. 1:22-cv-10162-LTS

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants Trader Joe's East Inc. ("Trader Joe's") and Jennifer Gillum (collectively, "Defendants") submit this Statement of Undisputed Material Facts in support of their motion for summary judgment.

1.     Trader Joe's is a chain of specialty grocery stores.  Pl. Dep. 16.[1]

2.     Each Trader Joe's store is staffed by a Captain (the manager in charge of the store) and Mates (assistant managers), and a non-supervisory staff of Merchants and Crew.  Pl. Dep. 16-17.

3.     Trader Joe's policy states that each Crew Member of the company is entitled to work in an environment that is free of unlawful discrimination, harassment, or intimidation and in which his or her personal dignity is respected. Unlawful discrimination or harassment in employment on the basis of sex, race, ancestry, color, religion, sexual orientation, gender identity, national origin, citizenship, veteran status, age (over 40), physical or mental disability or medical

---

[1] The excerpts and relevant exhibits of the transcript from the Deposition of Gloria Cocuzzo ("Pl. Dep.") are attached as <u>Exhibit A</u> to the Declaration of Stephen T. Melnick.

condition is strictly prohibited by Trader Joe's. Crew Members who violate Trader Joe's anti-discrimination policy are subject to disciplinary action, up to and including termination of employment.  Pl. Dep. Exh. 5, at TJ 0077, 0079-86.

4.      Plaintiff began employment at the Trader Joe's store in Brookline, Massachusetts in 2003, when she was 62 years old.  Pl. Dep. 14-16.

5.      Plaintiff began work at Trader Joe's as a Crew Member.  Pl. Dep. 16-17.

6.      Because the Brookline Trader Joe's store sells alcohol, all Crew Members, including Plaintiff, were subject to the store alcohol policy, and received training on selling alcohol.  Pl. Dep. 33-36; Pl. Dep. Exh. 6, 7; Gillum Dep. 87-89.[2]

7.      The alcohol policy states that Trader Joe's is "committed to adhering to all liquor laws," and that any employee who "violates the Alcohol Policy or is not in line with the Company's standards will be subject to disciplinary action, which may range from a written warning to termination of employment."  Pl. Dep. Exh. 6.

8.      In 2012, the store Captain at the time, Chris Maguire, promoted Cocuzzo to a Merchant position, a role which was more focused on customer service.  Pl. Dep. 17, 19-20; Pl. Dep. Exh. 1.

9.      Plaintiff was 70 years old when she was promoted.  Maguire Dep. Exh. 2, excerpt, at TJ 0150. [3]

10.      Jennifer Gillum became the Captain of the Brookline store in 2018.  Gillum Dep. 49.

---

[2] The excerpts of the transcript from the Deposition of Jennifer Gillum ("Gillum Dep.") are attached as Exhibit C to the Declaration of Stephen T. Melnick.

[3] The excerpts and relevant exhibit of the transcript from the Deposition of Christopher Maguire ("Maguire Dep.") are attached as Exhibit B to the Declaration of Stephen T. Melnick.

11.     In 2020, Gillum gave Plaintiff a positive performance review; approved a $1,200 performance bonus for Plaintiff; and gave Plaintiff a $1.00 per hour raise, which Plaintiff thought was "wonderful."  Pl. Dep. 20, 24-25.

12.     On Saturday, February 20, 2021, Plaintiff was working her usual 10:00 a.m. to 6:30 p.m. shift.  Pl. Dep. 37-38.

13.     Plaintiff's grandson, Kevin Quinn, was born in July 2001.  Pl. Dep. 12.

14.     Kevin Quinn, also a Trader Joe's employee, was working a shift and at the Brookline Trader Joe's store on February 20, 2021.  Pl. Dep. 12, 38.

15.     Plaintiff and Quinn went to the alcohol section of the Brookline Trader Joe's store, and Quinn selected beer from the alcohol section and handed it to Plaintiff.  Pl. Dep. 38-40.

16.     Plaintiff knew the beer was for Quinn, and that Quinn would be consuming the beer.  Pl. Dep. 39.

17.     Plaintiff took the beer to the register at the Brookline store, and purchased the beer for Quinn.  Pl. Dep. 39-40.

18.     Another Trader Joe's employee saw Plaintiff buy the beer for Quinn, and reported the incident to store Captain Jennifer Gillum.  Pl. Dep. 108; Gillum Dep. 103-04.

19.     Gillum approached Plaintiff and asked her about the incident.  Plaintiff confirmed that she had purchased beer for Quinn, an underage person.  Pl. Dep. 41-42; Gillum Dep. 106-08.

20.     Gillum contacted Christopher Maguire, her Regional-Vice President.  Gillum Dep. 123-24.

21.     Gillum told Maguire that an underage Crew Member had gone to the alcohol section, took alcohol from a shelf, gave the alcohol to Plaintiff, and that Plaintiff bought the alcohol.  Gillum Dep. 124; Maguire Dep. 29.

3

22.     Gillum told Maguire that when Plaintiff was asked about this, Plaintiff admitted to purchasing alcohol for the Crew Member who happened to be her grandson and a minor.  Maguire Dep. 29.

23.     Gillum said she was considering termination, and Maguire agreed that "there was nothing else you can do."  Gillum Dep. 124.

24.     On February 24, 2021, Gillum and Mate Brian Foote met with Plaintiff.  Pl. Dep. 55-56.

25.     Gillum explained to Plaintiff that her employment was ending because she had knowingly purchased alcohol for an underage person.  Pl. Dep. 57-58.

26.     During the meeting, Gillum offered Plaintiff the option of resigning, retiring or being terminated.  Pl. Dep. 57; Gillum Dep. 22.

27.     Plaintiff initially asked to retire, and the meeting concluded.  Pl. Dep. 58.

28.     After the meeting, Plaintiff sent an email to Gillum in which she said she was "being fired."  Plaintiff stated in the email that her "termination was prompted by purchasing beer for [her] grandson, Kevin."  Pl. Dep. Ex. 11.

29.     As a result, Gillum changed Plaintiff's retirement to a termination, and asked her to sign a termination notice the following day, which Plaintiff refused to do.  Pl. Dep. Ex. 12.

30.     Plaintiff admits that she was unaware of this law allowing alcohol to be provided by family members in a home setting when she bought the alcohol for the underage person.  Pl. Dep. 45; Complaint ¶ 18.

31.     Gillum testified that she considered Plaintiff buying alcohol for a minor to be a violation of the Alcohol Policy.  Gillum Dep. 107, 108-09.

32.     Gillum testified that she considered Plaintiff buying alcohol for a minor to be a violation of the Alcohol Policy for which Plaintiff should have been terminated.  Gillum Dep. 108-09.

33.     Gillum testified that she believed that Plaintiff buying alcohol for a minor violates the law.  Gillum Dep. 124-26, 135.

34.     Gillum testified that Plaintiff was terminated for purchasing alcohol for a minor. Gillum Dep. 120, 122, 123, 135-36.

35.     On February 26, 2018, Crew Member S.L. was terminated by Trader Joe's for purchasing a bottle of vodka while underage.  S.L. was born in January 1999.  Declaration of Christopher Maguire ("Maguire Decl."), Exh. 1, at TJ 0327; Supplemental Response to Interrogatory no. 12.[4]

36.     On February 9, 2022, Crew Member L.C. was terminated by Trader Joe's for giving a crew discount for an alcohol purchase to a customer who was not a Crew Member, in violation of Massachusetts law.  L.C. was born in October 1992.  Maguire Decl., Exh. 1, at TJ 0334; Supplemental Response to Interrogatory no. 12.

37.     On February 10, 2022, Crew Member S.A. was terminated by Trader Joe's for giving a crew discount for an alcohol purchase to a customer who was not a Crew Member, in violation of Massachusetts law.  S.A. was born in June 1997.  Maguire Decl., Exh. 1, at TJ 0335; Supplemental Response to Interrogatory no. 12.

38.     On February 13, 2022, Crew Member J.M. was terminated by Trader Joe's.  A customer had two cans of hard cider, but J.M. only rang the customer up for one.  J.M. was born

---

[4] The response to Trader Joe's Supplemental Response to Interrogatory no. 12 is attached as <u>Exhibit D</u> to the Declaration of Stephen T. Melnick.

in December 1999.  Maguire Decl., Exh. 1, at TJ 0336; Supplemental Response to Interrogatory no. 12.

39.     On November 19, 2022, Crew Member B.D. received a written warning for failing to check the identification of a customer buying alcohol.  B.D. was born in December 2001. Maguire Decl., Exh. 1, at TJ 0337; Supplemental Response to Interrogatory no. 12.

40.     On November 20, 2022, Crew Member M.S. received a written warning for failing to check the identification of a customer buying alcohol.  M.S. was born in June 2002.  Maguire Decl., Exh. 1, at TJ 0338; Supplemental Response to Interrogatory no. 12.

41.     On November 12, 2019, Crew Member M.A. received a written warning for failing to check the identification of a customer buying alcohol.  M.A. was born in October 1999.  Maguire Decl., Exh. 1, at TJ 0332; Supplemental Response to Interrogatory no. 12.

42.     On June 8, 2021, Crew Member P.R. received a written warning for failing to check the identification of a customer buying alcohol.  P.R. was born in February 2001. Maguire Decl., Exh. 1, at TJ 0333; Supplemental Response to Interrogatory no. 12

43.     On February 26, 2018, Crew Member J.D. received a written warning for selling a bottle of vodka to an underage Trader Joe's Crew Member.  J.D. brought that to the attention of a Trader Joe's Mate immediately after.  J.D. was born in October 1981.  Maguire Decl., Exh. 1, at TJ 0326; Supplemental Response to Interrogatory no. 12.

44.     On January 26, 2023, Crew Member J.L. received a written warning for failing to check the identification of a customer buying alcohol.  J.L. was born in April 1999.  Maguire Decl., Exh. 1, at TJ 339; Supplemental Response to Interrogatory no. 12.

Respectfully submitted,

TRADER JOE'S EAST INC. AND JENNIFER
GILLUM,

By their attorneys,

/s/ Stephen T. Melnick
Stephen T. Melnick (No. 667323)
Ellen E. Lemire (No. 670994)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
smelnick@littler.com
elemire@littler.com

Dated:  February 24, 2023

## Certificate of Service

I hereby certify that on this 24th day of February 2023, a true and accurate copy of the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and sent via first class mail to unregistered participants as identified on the Notice of Electronic Filing.

/s/  Stephen T. Melnick
Stephen Melnick

4896-2309-1537.1 / 071820-1101

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA COCUZZO,

          PLAINTIFF,

   V.

TRADER JOE'S EAST INC. AND
JENNIFER GILLUM,

          DEFENDANTS.

Civil Action No. 1:22-cv-10162-LTS

## <u>DECLARATION OF STEPHEN T. MELNICK</u>

I, Stephen T. Melnick, do hereby depose and state as follows:

1.     I make the statements contained in this declaration based on my personal knowledge and am competent to testify as to all facts stated herein.

2.     I am an attorney at the law firm Littler Mendelson, P.C., One International Place, Suite 2700, Boston, MA 02110. I represent Defendants Trader Joe's East Inc. and Jennifer Gillum in this litigation.

3.     On September 2, 2022, I took the deposition of Plaintiff Gloria Cocuzzo. Attached hereto as <u>Exhibit A</u> is a true and accurate copy of excerpts from the transcript of Ms. Cocuzzo's deposition and certain exhibits attached thereto.

4.     On January 5, 2023, this office defended the 30(b)(6) deposition of Christopher Maguire. Attached hereto as <u>Exhibit B</u> is a true and accurate copy of excerpts from the transcript of Mr. Maguire's deposition and the relevant portion of an exhibit attached thereto.

5.     On June 7, 2022, this office defended the deposition of Jennifer Gillum. Attached hereto as <u>Exhibit C</u> is a true and accurate copy of excerpts of the transcript of Ms. Gillum's deposition.

1

APP0087

6.     On February 7, 2023, Defendant Trader Joe's East served supplemental responses to Plaintiff's First Request for Answers to Interrogatories.  Attached hereto as <u>Exhibit D</u> is a true and accurate copy of Defendant's supplemental responses.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 24, 2023.

/s/ Stephen T. Melnick      
Stephen T. Melnick

4872-7120-9554.1 / 071820-1101

APP0088

# Exhibit A

```
 1            UNITED STATES DISTRICT COURT

 2             DISTRICT OF MASSACHUSETTS

 3            Case No. 1:22-cv-10162-LTS

 4   _____X

 5   GLORIA COCUZZO,

 6                    Plaintiffs,

 7         vs.

 8   TRADER JOE'S COMPANY and JENNIFER

 9   GILLUM,

10                    Defendants.

11   _____X

12            DEPOSITION OF GLORIA J. COCUZZO, a witness

13   called on behalf of the Defendants, taken pursuant

14   to the applicable provisions of the Massachusetts

15   Rules of Civil Procedure, before Valerie R.

16   Johnston, Registered Professional Reporter and

17   Notary Public in and for the Commonwealth of

18   Massachusetts, at the Offices of Littler Mendelson,

19   P.C., at One International Place, Boston,

20   Massachusetts, on Friday, September 2, 2022,

21   commencing at 9:57 a.m.

22

23

24
```

2

```
 1    APPEARANCES:

 2

 3    On behalf of the Plaintiff:

 4         Perry Krumsiek, LLP

 5         TIMOTHY J. PERRY, ESQ.

 6         One Boston Place, Suite 2600

 7         Boston, Massachusetts  02108

 8         617-720-4300

 9         tperry@pkcounsel.com

10

11    On behalf of the Defendants:

12         Littler Mendelson, P.C.

13         STEPHEN T. MELNICK, ESQ.

14         ELLEN LEMIRE, ESQ.

15         One International Place

16         Suite 2700

17         Boston, Massachusetts  02110

18         617-378-6000

19         smelnick@littler.com

20         elemire@littler.com

21

22    Also Present:  Nancy Inesta, Esq. - Trader Joe's

23

24
```

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

12

```
1        Q.   What's Kevin's date of birth?
2        A.   Kevin is -- I'd have to really look at my
3   phone.  Am I able to do that?
4        Q.   Not right now.
5        A.   Yeah.
6        Q.   How -- how old is he?
7        A.   Kevin; he just turned 21 in July.
8        Q.   July of '22?
9        A.   Yes.
10       Q.   So that means he was born in July 2001?
11       A.   Right.
12       Q.   Other than this case, have you ever been
13  part of a lawsuit?
14       A.   No.
15       Q.   Have you ever testified under oath
16  before?
17       A.   No.
18       Q.   Have you ever been convicted of a crime?
19       A.   No.
20       Q.   Have you ever -- ever been charged with a
21  crime?
22       A.   No.
23       Q.   Do you have a resume?
24       A.   No.
```

14

1      Q.   You started working at Trader Joe's?

2      A.   Uh-huh.

3      Q.   Was that 2003?

4      A.   It was 17 years ago.  Yeah, I guess.

5      Q.   How did you first hear about the job at

6   Trader Joe's?

7      A.   A very dear friend of mine who lives in

8   Worcester was a very -- she loved Trader Joe's, and

9   she -- told me about it.  I had never been there,

10   and I decided to go in Brookline.  I applied, and I

11   loved my job there.

12      Q.   Who was the friend in Worcester?

13      A.   She's since passed away.  Her name is Cathy

14   Brosdan.

15      Q.   I'm sorry to hear that.

16      A.   Uh-huh.  Okay.  I'm still friendly with her

17   family and her sister, Kim Welch, who works at

18   Trader Joe's in Hanover.

19      Q.   You applied for a job at Trader Joe's?

20      A.   Did I apply when I -- yes, I did.

21      Q.   What position did you apply for?

22      A.   Just sales.

23      Q.   Why did you apply for a job at Trader

24   Joe's?

15

1      A.  Because Cathy was just -- you know, she

2  was -- she just loved the company and loved the

3  products, and I just thought it would be a nice

4  place to work, and also, it was close to Brighton.

5  It was, you know, Brookline and Brighton, very

6  close.

7      Q.  What did you do to apply for the job?

8      A.  I just went there and filled out an

9  application and was interviewed.

10     Q.  Who interviewed you?

11     A.  Oh, I think she -- she's still with the

12 company.  I think, Debbie, but I don't remember her

13 last name.

14     Q.  Do you know where Debbie works now?

15     A.  No.

16     Q.  No?

17     A.  No, I don't.  Her husband worked for Trader

18 Joe's as well.  I don't remember where she is now.

19     Q.  And this was at the Brookline store,

20 correct?

21     A.  Yes.  That's correct.

22     Q.  Store 501?

23     A.  That's correct.

24     Q.  Who hired you?

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

16

```
 1        A.  This Debbie.

 2        Q.  Okay.

 3        A.  Yup.

 4        Q.  How old were you when you were hired?

 5        A.  Well, I'm -- I'm 79 now so...

 6        Q.  62 --

 7        A.  Yes.  I guess so.

 8        Q.  -- roughly?

 9        A.  Thank you.  Yeah.

10        Q.  Did you work at any other store other than

11   the Brookline --

12        A.  No.  I was at Brookline, and I loved it.

13        Q.  Trader Joe's is a grocery store, correct?

14        A.  Right.

15        Q.  What are the different positions at a

16   Trader Joe's store?

17        A.  Well, I was -- I was kind of promoted to --

18   actually, I don't even remember the title of it, but

19   it was...

20        Q.  Let me ask it this way:  There -- there are

21   crew, correct?

22        A.  Yes.

23        Q.  And those are just the store employees?

24        A.  Yeah.  I think I was crew --
```

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

17

1      Q.  Okay.

2      A.  -- actually.

3      Q.  And then the next level is merchant, is

4   that correct?

5      A.  Yes.

6      Q.  Okay.  And above that is mate?

7      A.  That's right.

8      Q.  And above that is captain?

9      A.  Correct.

10     Q.  And you started as a crew, correct?

11     A.  Yes.

12     Q.  At some point, you became a merchant?

13     A.  Right.

14     Q.  Do you remember when that was?

15     A.  No, I don't.

16     Q.  Was that a promotion?

17     A.  Yes.

18     Q.  Who made the decision to promote you to

19   merchant?

20     A.  Chris Maguire.  He's regional now, but he

21   was a captain when I first -- at Brookline when I

22   first started; so, I've known him many years.

23     Q.  Do you recall how old you were when you

24   were promoted to merchant?

19

1    Q.  All right.  If you could please read this
2  document, and the question I'm going to ask you is
3  if there's anything that looks inaccurate or not
4  accurate so --
5    A.  Okay.
6    Q.  -- please, read and let me know when you're
7  done.
8    A.  Yeah.  Okay.
9    Q.  Okay.  So from what just read in Exhibit 1,
10  is there anything there that does not look accurate
11  or correct to you?
12    A.  No.  It's definitely, you know, why I loved
13  my job.  I was very active with the customers at
14  Brookline.
15    Q.  From this -- from this job description,
16  thinking about the work that you did, is there
17  anything that you would add or subtract from this?
18    A.  Not really, but I think I did a good job
19  there.
20    Q.  How were the duties of a merchant different
21  from the duties of another crew member?
22    A.  Well, I think that, as a merchant, you were
23  really more focused on, you know, Trader Joe's core
24  values and the customers and your job in general.

20

1    Q.  As a merchant, you were not a manager,
2    correct?
3    A.  No, not at all.
4    Q.  You did not supervise other employees?
5    A.  No.
6    Q.  At Trader Joe's, you received annual
7    performance reviews, correct?
8    A.  Yes.
9    Q.  Ms. Gillum gave you your review for 2020,
10   correct?
11   A.  Yes.
12   Q.  Was it a positive review?
13   A.  Yes.
14   Q.  Do you recall anything negative in it?
15   A.  No.
16   Q.  You didn't own the Brookline Trader Joe's
17   store, correct?
18   A.  I what?
19   Q.  You did not own the Trader Joe's?
20   A.  Own?
21   Q.  Yeah.
22   A.  No.
23   Q.  You didn't run or control it?
24   A.  No.

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

24

```
1        A.   Uh-huh.
2        Q.   -- row here it says, "Bonus $1,200."  Do
3   you see that?
4        A.   The next row?
5        Q.   Sorry.  It's the middle here (indicating).
6        A.   Oh, here.  Bonus.  Oh, I see here.  Bonus.
7        Q.   $1,200?
8        A.   When was that?  I don't see it.
9        Q.   It looks like August 14, 2020.
10       A.   Oh, I'm sure.  Yeah.  Yeah.  The company
11   was great.  Again, I loved my job there; so, yes.
12       Q.   Do you know who approved that bonus?
13       A.   I don't remember who it -- you know, who
14   was in charge.  I mean, they changed so often, the
15   captains and all of that.  I don't remember,
16   Mr. Melnick.
17       Q.   In August 2020, it was -- it was Ms. Gillum
18   who gave you your review, correct?
19       A.   Yes.
20       Q.   So she was the captain around that time?
21       A.   Yes.
22       Q.   Do you think she was the one who approved
23   that bonus?
24       A.   She must have been.
```

1       Q.   This next --

2       A.   Uh-huh.

3       Q.   -- row, if you will, it looks like your

4   regular pay went up to 28.90 per hour, is that

5   correct?

6       A.   Yeah.  It was wonderful.  Yes.

7       Q.   You got a dollar an hour raise?

8       A.   Yes.

9       Q.   Ms. Gillum approved that?

10       A.   Yes.

11       Q.   Was that your rate of pay until you left

12   Trader Joe's?

13       A.   That's correct.

14       Q.   At the time you left Trader Joe's, what

15   benefits were you receiving?

16       A.   Well, I had, you know, my weekly paycheck

17   and I had my AR, which is absent reserve.  I don't

18   know what else.

19       Q.   Did you receive health insurance?

20       A.   Yes.  Oh, yes.  Of course.

21       Q.   What other types of fringe benefits,

22   insurances did you receive?

23       A.   Honestly, I don't remember if there was any

24   additional.

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

33

1      A.  Yes.

2      Q.  Two more pages, 85.

3      A.  85.

4      Q.  And this box that says, "Non-Retaliation

5  Policy," if you could read that and let me know when

6  you're done.

7      A.  I'm done.

8      Q.  Do you understand that to be Trader Joe's

9  policy?

10     A.  Yes.

11     Q.  You can put that aside.

12         MR. MELNICK:  Next exhibit, please.

13             (Document marked as Exhibit 6

14             for identification)

15  BY MR. MELNICK:

16     Q.  Ms. Cocuzzo, you've been handed a document

17  marked Exhibit 6.  Have you seen that before?

18     A.  Yes.

19     Q.  And that's your signature there at the

20  bottom?

21     A.  Yes.

22     Q.  And I appreciate this is a little fuzzy on

23  the printout, but I understand this to be Trader

24  Joe's Brookline store alcohol policy.

34

1     A.  Uh-huh.

2     Q.  Is that a yes?

3     A.  Yes.

4     Q.  Sorry.  You have to yes, not uh-huh.

5     A.  Yes.

6     Q.  Sorry.

7     A.  Yes.

8     Q.  You read this policy before you signed

9  it?

10    A.  Yes.

11    Q.  And did you have any questions about this

12 policy?

13    A.  No.

14          (Document marked as Exhibit 7

15          for identification)

16 BY MR. MELNICK:

17    Q.  You've been handed a document marked

18 Exhibit 7.  Have you seen this document before?

19    A.  Yes.

20    Q.  What is this?

21    A.  It's a training for alcohol --

22    Q.  And --

23    A.  -- and the service of alcohol and

24 purchasing of alcohol.  Yup.

35

1      Q.  And you went through that training?

2      A.  Yes.

3      Q.  What do you recall from that training?

4      A.  Just the -- the different -- well, the

5  different laws concerning the purchase and the sale

6  of alcohol.

7      Q.  Was there a booklet that you had to go

8  through with that training?

9      A.  Yes.

10     Q.  Fair to say that how you were trained in

11  this training is what -- is what Trader Joe's

12  expected you to do at work?

13     A.  Right.

14        MR. MELNICK:  Next exhibit.

15            (Document marked as Exhibit 8

16            for identification)

17  BY MR. PERRY:

18     Q.  So you've been handed a document marked as

19  Exhibit 8, Ms. Cocuzzo.  I don't know if you

20  recognize this document.

21     A.  Yes.

22     Q.  Is this part of the --

23     A.  Yup.  Part of the training.

24     Q.  Okay.

36

1      A.  Yeah.

2      Q.  And that's the training that you received

3  from TIPS, the -- the alcohol training?

4      A.  Yes.

5      Q.  Okay.

6          MR. MELNICK:  Next exhibit, please.

7              (Document marked as Exhibit 9

8              for identification)

9  BY MR. MELNICK:

10     Q.  You've been handed a document marked as

11 Exhibit 9, Ms. Cocuzzo.  Have you seen this document

12 before?

13     A.  Yes.

14     Q.  And this is the complaint that started this

15 lawsuit, correct?

16     A.  Yes.  Yes.

17     Q.  Before this was filed, did you have an

18 opportunity -- opportunity to review it?

19     A.  Yes.

20     Q.  Did you have an opportunity to make changes

21 to this document?

22     A.  I believe so.

23     Q.  If you could go to Page 2, please, and read

24 Paragraphs 13 through 19, and let me know when

37

1    you're done.

2         A.   13 to 19?

3         Q.   Yes, please.

4         A.   Yup.

5         Q.   Okay.  So let's talk about that.

6         A.   Uh-huh.

7         Q.   That was a Saturday, correct?

8         A.   Correct.

9         Q.   So Saturday 2021 -- it was February 20th?

10        A.   Right.

11        Q.   Okay.  Not the 21st, correct?

12        A.   I -- I --

13        Q.   Well, I'll -- we can get out a calendar but

14   it was --

15        A.   Yeah.

16        Q.   -- the 20th.  Okay.

17        A.   Yeah.  All right.

18        Q.   So that's the date I'm trying to talk

19   about.

20        A.   Yeah.

21        Q.   February 20, that's Saturday.

22        A.   Right.

23        Q.   It says you were working the 10:00 a.m. to

24   6:30 shift.

38

1      A.  Correct.

2      Q.  Was that your shift?

3      A.  Yes.

4      Q.  Okay.  That's the shift you usually

5  worked?

6      A.  Yes.

7      Q.  Okay.  So that day you were at the

8  Brookline Trader Joe's store, correct?

9      A.  Yes.

10      Q.  Kevin Quinn was at the Trader Joe's

11  store?

12      A.  My grandson, yes.

13      Q.  You and Mr. Quinn were at the store at the

14  same time?

15      A.  Yes.  I was leaving.  My -- my shift was

16  over when he was arriving, and I invited him over

17  for dinner --

18      Q.  So Mr. --

19      A.  -- and to -- and to sleep over because he

20  lives in Holliston.  He was going to work the next

21  day; so, I thought come home for dinner and stay

22  over so you can easily get to work.

23      Q.  Mr. Quinn went to the alcohol section of

24  the --

39

1      A.   He went --
2      Q.   -- Trader Joe's Brookline store, correct?
3      A.   He went with me, yes.
4      Q.   Mr. Quinn selected beer from the alcohol
5   selection --
6      A.   Right.
7      Q.   -- of the Trader Joe's Brookline --
8      A.   Right.
9      Q.   -- store?  I'm sorry.  Sorry.
10      A.   Go ahead.
11      Q.   Mr. Quinn selected beer from the alcohol
12   section of the Brookline Trader Joe's store,
13   correct?
14      A.   Correct.
15      Q.   He handed you the beer, correct?
16      A.   Right.
17      Q.   And that was in the Trader Joe's store?
18      A.   Correct.
19      Q.   You knew that the beer was for Mr. Quinn,
20   correct?
21      A.   Yes.
22      Q.   And you knew that Mr. Quinn would be
23   consuming the beer?
24      A.   Yes.  In my --

40

1      Q.  You -- you took the beer to the register at
2  the Brookline store, correct?
3      A.  Correct.
4      Q.  You purchased the beer, correct?
5      A.  Yes.
6      Q.  You purchased the beer for Mr. Quinn?
7      A.  Yes.
8      Q.  How many beers was it?
9      A.  It was a six pack.
10      Q.  Do you remember what kind?
11      A.  I think he picked out something that was
12  a -- a company that brewed beer in Framingham.  I
13  forget the name of it, but you know how the local
14  beer companies were doing that, and that's what he
15  picked out, yes.
16      Q.  What time of day was it?
17      A.  Well, I was leaving at 6:30 so...
18      Q.  At the time you made the purchase, were you
19  on the clock?
20      A.  Was I on the clock?  I don't -- I -- I
21  don't remember.
22      Q.  When Mr. Quinn handed you the beer, was he
23  on  the clock?
24      A.  Yes.  He must have been because my shift

41

1  had ended.

2      Q.  What did you do with the beer after you

3  purchased it?

4      A.  Well, I went -- I was going to put it in

5  the back -- in the -- in the -- in the refrigerator

6  until I left --

7      Q.  Okay.

8      A.  -- and that's when Jennifer Gillum stopped

9  me.

10     Q.  What did -- what happened?

11     A.  Well, it was just so upsetting.  She just

12  said that, you know -- I don't remember the exact

13  words between us, but I was, like, so shocked that

14  she was, you know, stopping me from -- from

15  purchasing it.  It was just really upsetting.

16     Q.  Okay.  So you made -- you made the

17  purchase.  You took the beer.  How long after you

18  made the purchase did Ms. Gillum talk to you?

19     A.  She came right over.

20     Q.  Okay.  And what did she say, to the best of

21  your recollection?

22     A.  I don't remember.  It's just that --

23     Q.  In general.

24     A.  Well, she was addressing the fact that I --

42

1   I -- the beer was for Kevin, I guess, and she was --
2   yeah.
3       Q.  What did you say, to the best of your
4   recollection?
5       A.  I -- I was just so upset.  I -- I -- I
6   don't know what I said.
7       Q.  Why were you upset?
8       A.  Because I -- I didn't think I was doing
9   anything wrong.
10      Q.  What happened next?
11      A.  It was -- it was so upsetting for me
12  because she -- I don't -- I don't really remember
13  exactly what happened afterward, whether -- whether
14  I went home or what.  It was...
15      Q.  Did you -- that immediate time after
16  Ms. Gillum talked to you, shortly after that, did
17  you talk with Mr. Quinn, Kevin Quinn?
18      A.  No, not really.  I -- I was just so upset.
19      Q.  Okay.  Did you talk with anyone at the
20  store after Ms. Gillum talked to you?
21      A.  I don't believe I did.
22      Q.  Okay.  So you just left the store?
23      A.  You know what, Mr. Melnick; I -- I just
24  can't exactly remember what happened.

45

1  and grandchildren in their home."  Do you see

2  that?

3      A.  Correct.

4      Q.  Next line says, "Consistent with relevant

5  law (although perhaps not cognizant of the statute

6  itself), Gloria purchased a four-pack of craft beer

7  at Trader Joe's for her upcoming dinner."  Where in

8  Massachusetts law does it say that you can buy

9  alcohol for a minor?

10      A.  Where?

11      Q.  Yes.

12      A.  I guess, that's on 18.  It doesn't say

13  specifically permits grandparents and grandparents

14  to serve alcohol to their children and grandchildren

15  in their home.

16          MR. MELNICK:  Next exhibit, please.

17              (Document marked as Exhibit 10

18              for identification)

19  BY MR. MELNICK:

20      Q.  You've been handed a document marked

21  Exhibit 10 which I'll represent to you --

22          MR. PERRY:  That's 10?

23          MR. MELNICK:  Yes.

24          MR. PERRY:  Sorry.  10.  Which one was

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

55

1   three days?

2       A.  I have no idea.

3       Q.  So do you know if it was being held over

4   your head or not?

5       A.  I have no idea why it took three days, but

6   believe me, working three days after working at

7   Trader Joe's happily for 17 years was not an easy

8   task.

9       Q.  February 24, tell me how that day started.

10      A.  I reported to work as usual, a nervous

11  wreck, again, because of all of this happening, and

12  did my job until she called me to the office.

13      Q.  How long after you showed up at work did --

14      A.  I don't remember, Mr. Melnick.

15      Q.  A short time, long time?

16      A.  I don't remember.  I honestly don't.

17      Q.  Tell me about being called to the office.

18      A.  It was terrible.  She called me into the

19  office with Brian Foot.  And what she addressed that

20  was so upsetting for me in the beginning is she

21  started off by saying, "Gloria, will you -- will you

22  state that you've been -- you're retiring or that

23  you're being fired," and she was indicating that

24  because of my relationship with the customer base of

56

1    the store that it would be better if I told the

2    customers I was -- I was being retired.

3            At that point, Mr. Melnick, I said, "Okay."

4    However, when I left the store so upset, when I got

5    home, I texted Chris Maguire who I worked with and I

6    had known all the 17 years at Trader Joe's, that

7    I -- I didn't retire.  I was fired.  I was fired

8    from the store.

9        Q.  Okay.  Getting back to that meeting, you

10   came in?

11       A.  Right.

12       Q.  Where was the meeting?

13       A.  It was in an office on the 2nd floor --

14       Q.  Okay.

15       A.  -- with Brian Foot.

16       Q.  Who is -- who is Brian Foot?

17       A.  One of the assistant managers there.

18       Q.  They call them mates, right?

19       A.  Mate, yeah.

20       Q.  Okay.  So it was you, Mr. Foot, Ms. Gillum.

21   Anyone else?

22       A.  No.

23       Q.  Okay.  So you walked in.  Who started

24   talking?

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

57

1       A.   Jennifer.

2       Q.   Okay.  What was the -- what was the first

3   thing she said?

4       A.   I don't remember.  I don't remember.

5       Q.   Was the first thing she said that you could

6   choose to be retired or fired, I think is what you

7   said?

8       A.   She -- she addressed that immediately.

9       Q.   Okay.  Was there anything else she said?

10      A.   Not really.  She really focused on this

11  retirement business, and again, Mr. Melnick, I was

12  shattered, and I -- I -- I was so -- I don't know

13  how I drove home.

14          Anyway, when I drove home from the meeting,

15  I told you, I texted Chris Maguire and told him I

16  was fired, I'm not retiring.

17      Q.   Okay.  Sticking with that meeting still,

18  did Mr. Foot say anything?

19      A.   Nothing.  Not a word.

20      Q.   Do you know why Mr. Foot was there?

21      A.   Well, I -- I assume that, when you're being

22  fired, they have to have someone else there to

23  witness it.  I'm assuming.  I was never told.  He

24  said nothing.

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

58

1        Q.  What else do you remember that Ms. --
2   Ms. Gillum said?
3        A.  I don't remember, other than she really
4   focused on retiring.
5        Q.  Did she say why?
6        A.  Because of the customers.  Because I had a
7   great relationship with customers there.
8        Q.  Did she say why she was asking you to
9   either retire or be terminated, be fired?
10       A.  Because of the customer base.
11       Q.  What was the reason for your termination?
12       A.  She said because of the -- the incident
13  with -- with my purchase of -- of the beer.
14       Q.  Okay.  What did you say?
15       A.  I don't remember.
16       Q.  In general, what do you remember?
17       A.  I don't remember.  I was devastated.
18       Q.  Initially, you said you want -- you were
19  going to take the retirement option?
20       A.  Yes.
21       Q.  Why is that?
22       A.  Because she sort of was -- she -- she kept
23  saying that I -- you know, "because of the customers
24  Gloria, because of the customers."

78

1  correct?

2      A.  Yes.  Because what else could it be?  What

3  did I do?

4      Q.  Why do you think your age?  Other than --

5  what else -- just what else could it -- you know,

6  could it have been?

7      A.  What else could it be?  I -- when I tell

8  you, you can -- I performed my job with enthusiasm

9  for 17 years.  I loved it there.  I knew most of the

10 customers there.  Governor Dukakis used to come in

11 asking for me.  I loved my job there.

12     Q.  Any other reason that you think that age --

13     A.  What else could I have done?  What else --

14 what else could I have done?

15     Q.  Are you aware of any other Trader Joe's

16 employee who purchased alcohol for a minor --

17     A.  No.

18     Q.  -- at a Trader Joe's -- I'm sorry.  You

19 have to let me finish.

20     A.  Oh, sorry.

21     Q.  Are you aware of any other Trader Joe's

22 employee who purchased alcohol for a minor at a

23 Trader Joe's store?

24     A.  No.

1  facts at issue in this case.  The first person lists

2  yourself.  The second person is Kevin Quinn.  Is it

3  Q-U-I-N-N?

4      A.  Yes.  That's -- yes.

5      Q.  Okay.  We've talked about him.  Other than

6  what we've already discussed, anything else that he

7  might know?

8      A.  No, I don't believe so.

9      Q.  Andre Diehl?

10     A.  He's the fellow, evidently, that went to

11  Jennifer.  He's a -- he was a young mate -- not

12  mate -- a young employee.  I -- I guess, he's not

13  working there since, but he was the one that was

14  working in the alcohol area and reported the whole

15  incident.  Yeah.

16     Q.  How do you know that?

17     A.  I've been told that.

18     Q.  Okay.  Do you know anything yourself

19  firsthand about Mr. Diehl?

20     A.  No, not really.

21     Q.  Did you know him when he worked at Trader

22  Joe's?

23     A.  Yeah, casually, not -- not -- you know, a

24  lot of young people there.

Gloria Cocuzzo vs
Trader Joes East Inc. et al

Gloria J. Cocuzzo
September 02, 2022

126

1   COMMONWEALTH OF MASSACHUSETTS )

2   SUFFOLK, SS.                  )

3       I, Valerie Rae Johnston, Shorthand Reporter and

4   Notary Public in and for the Commonwealth of

5   Massachusetts, do hereby certify that there came

6   before me on the 2nd day of September 2022, at 9:57

7   a.m., the person hereinbefore named, who was by me

8   duly sworn to testify to the truth and nothing but

9   the truth of her knowledge touching and concerning

10  the matters in controversy in the cause; that she

11  was thereupon examined upon her oath, and her

12  examination reduced to typewriting under my

13  direction; and that the deposition is a true record

14  of the testimony given by the witness.

15      I further certify that I am neither attorney or

16  counsel for, nor related to or employed by, any

17  attorney or counsel employed by the parties hereto

18  or financially interested in the action.

19      In witness whereof, I have hereunto set my hand

20  and affixed my notarial seal this ___ day of

21  September 2022.

22      _____

23          Notary Public

24          My commission expires:  7/20/29

APP0118

# ☞ TRADER JOE'S ☜

# MERCHANT JOB DESCRIPTION

Merchants demonstrate unwavering Integrity and commitment to the Values Guide. The most important role for a Merchant is to deliver and set the standard for a WOW Customer Experience. Merchants make a significant contribution to overall store success. Merchants are experienced and committed Crew Members who are connected to the neighborhood. Merchants exhibit a high level of skill and contribution as Section Leaders, Helms and/or Demo, and at Checkout. Merchants are assigned to the following teams based on the daily needs of the store: Customer Experience Team, Product Team, Store Opening Team, and Store Closing Team. Merchants move between teams based on functional need.

Merchants demonstrate their commitment to our Values Guide and a WOW Customer Experience by performing the following duties under the direction of Captains and Mates:

- ❀ **Merchants engage customers** by seeing the store through the customer's eyes and performing the Helms or Demo duties accordingly. Merchants educate themselves, the Crew, and customers about products in their section and the rest of the store. They answer questions and enthusiastically help customers find items. Merchants engage customers by offering suggestions for meals and entertaining, and telling the story behind our products with signs and displays that WOW. They operate the cash register in a fun yet efficient manner, being respectful of our customer's time, bagging groceries with care, and helping customers out to their cars when needed. Merchants are prompt in getting back to customers who have questions that need follow up. Merchants are role models in customer engagement, always.

- ❀ **Merchants prepare the store for customers** by working as Section Leaders, ordering sufficient product for daily stock levels, and controlling backstock and unsaleables. Merchants protect the cold chain while receiving, unloading, and verifying deliveries. Merchants uphold the standards while stocking shelves, regularly rotating product, and recording unsaleables and returns. They build eye catching, informative merchandise displays and keep the store colorful and signed. Merchants keep the demo area fresh and exciting. They make the store shine inside and out and perform the appropriate parking lot and store maintenance and upkeep.

- ❀ **Merchants work as part of a team** by setting the example for the rest of the Crew and helping others to be successful. Merchants may be chosen to assist with new hire training and development. They are friendly, courteous, and respectful of fellow crew members. Merchants role-model a positive attitude. Merchants set the pace of work and help others work within designated time frames. They seek out new assignments and responsibilities, discover new ways to improve processes, and share these with others. Merchants arrive to work on time and ready to work at the start of their shift. They model the behavior for safe practices while performing all duties. Merchants contribute to a WOW Customer Experience by participating in all aspects of store operations.

Merchants work standing and walking throughout their shift. They use repetitive hand movements, and frequently lift weights up to 25 pounds. Merchants may occasionally lift weights from 10-50 pounds, to heights of 10 to 72 inches. They may also maneuver a 2-wheeled hand truck loaded with products weighing up to 200 pounds. Portions of the shift may be performed in temperatures around or below freezing. There may be abrupt temperature changes as Merchants move from one environment to another. We deem regular and punctual attendance an essential part of the job.

<u>Education:</u> High school graduate or equivalent.

EXHIBIT _1_
WIT: _Cocuzzo_
DATE: _9/2/22_
Valerie Rae Johnston, RPR

TJ 0060    Rev 10/2015

APP0119

EXHIBIT _____ S _____
WIT: _Cocv226_
DATE: _9/2/22_
Valerie Rae Johnston, RPR



# TRADER JOE'S
## MERCHANT
# HANDBOOK

TJ 0074

# Table of Contents

Introduction ◆ 1

Your Employment at Trader Joe's ◆ 2
Diversity and Opportunity ◆ 2
Our Employment Relationship ◆ 2
Open Door Policy ◆ 3
Resolving Your Concerns ◆ 3

Crew Member Performance and Conduct ◆ 4
Crew Member Conduct ◆ 4
Discrimination and Non-Harassment ◆ 6
Non-Retaliation Policy ◆ 10
Disability Accommodations ◆ 10
Drug-Free Workplace ◆ 11
Personal Relationships Between Co-Workers ◆ 12
Smoking ◆ 12
Safety ◆ 12
Workplace Violence Prevention ◆ 13
No Solicitation ◆ 14
Dress and Personal Appearance ◆ 15
Attendance ◆ 15
Social Media Guidelines ◆ 16
Crew Member Purchases ◆ 17
Crew Member Records and Information ◆ 17
Performance Evaluations ◆ 18
Requesting a Transfer ◆ 18
Computer and Communication Systems ◆ 18
Crew Member Privacy Notice ◆ 19
Customer Relations ◆ 19
Competitor Relations ◆ 19
Media Relations ◆ 20
Inspections ◆ 20

Your Compensation at Trader Joe's ◆ 21
Employment Classifications ◆ 21
Payroll Periods and Paydays ◆ 21
What Counts as Work ◆ 21
Overtime ◆ 22
Recording Your Time ◆ 23

Meal Periods and Rest Breaks ◆ 24
Direct Deposit ◆ 27
Your Pay ◆ 28

Your Benefits at Trader Joe's ◆ 29
Retirement Plan ◆ 29
Health Insurance ◆ 32
Life and AD&D Insurance Programs ◆ 34
Short Term Disability ◆ 35
Long Term Disability ◆ 36
Crew Member Assistance Program ◆ 37
Absence Reserve ◆ 37
College Scholarship Fund ◆ 40
Holidays ◆ 41
Crew Member Discount Plan ◆ 41
Regulatory Benefits ◆ 41
Electronic Disclosure ◆ 46

Leaves of Absence ◆ 47
General Leave of Absence Guidelines ◆ 47
Family/Medical Leave ◆ 49
Work-Related Medical Leave ◆ 53
Trader Joe's Medical Leave ◆ 54
Return-to-Work Program ◆ 55
Leaves for Civic Responsibilities ◆ 56
Military Leave ◆ 56
Family Military Leave ◆ 57
Jury Duty ◆ 57
Other Leaves ◆ 57
Personal Leave ◆ 58

Ending Employment with Trader Joe's ◆ 59

Important Reference Materials
Company Values Guide
A Message to All Trader Joe's Crew Members
The Background of Trader Joe's
Customer Experience: A Trader Joe's Love Story
Whom to Call

TJ 0075

# Introduction

*Congratulations and welcome aboard!*

We're glad you've chosen a career with Trader Joe's. We want you to think of working here as an adventure—and as an opportunity to grow with a one-of-a-kind company.

The mission of Trader Joe's is to give our customers the best food and beverage values that they can find anywhere and to provide them with the information required for informed buying decisions. We provide these with a dedication to the highest quality of customer satisfaction delivered with a sense of warmth, friendliness, fun, individual pride and company spirit.

This handbook is about more than rules and regulations; it's about how to succeed as a member of the Trader Joe's crew. Please take the time to read through it. The handbook is always available online for future reference. In the last section of this handbook you'll find some important materials, including our **Company Values Guide** and **A Message to All Trader Joe's Crew Members**.

At Trader Joe's there are many opportunities for promotion and growth. If you have the skills, motivation, and a passion for food and customer service, you have the potential for a strong future with Trader Joe's. If you are interested in a career at Trader Joe's, we encourage you to talk about the possibilities with your Captain or Regional Vice President.

Trader Joe's believes in open and honest communication. If, at any time, you have questions about this handbook or about any issues pertaining to the company or your job, you are encouraged to seek clarification and information from your Captain, Regional Vice President, or Human Resources.

This handbook is a "living" document that can and will change as Trader Joe's grows and changes. It is not a contract of employment, implied or otherwise, and you should not consider it to be one. It does not contain any guarantees concerning your length of service or any benefits, policies, or other matters. Although you will be notified of any changes to policies presented in this handbook, Trader Joe's reserves the right to make changes without notification. The most up to date version of the handbook can be accessed online at www.mytraderjoes.com.

APP0122

# Your Employment at Trader Joe's

## Diversity and Opportunity

At Trader Joe's we are committed to providing a WOW customer experience every day. This means that we select, place, train, and promote the best-qualified crew members based upon relevant factors such as work quality, attitude, experience, availability, and mobility. Every applicant and crew member has an equal employment opportunity and right to be free from discrimination without regard to non-work related factors, such as, sex, sexual orientation, gender, gender identity, gender expression, race, color, ancestry, national origin, citizenship, military and veteran status, religion, marital status, age (over 40), physical or mental disability, genetic information, or medical condition (including pregnancy, childbirth, lactation or the need to express milk, and related medical conditions), or any other consideration made unlawful by applicable federal, state, or local law. Equal employment opportunities will be extended to all persons in all aspects of the employer-employee relationship, including recruitment, hiring, upgrading, training, promotion, compensation, benefits, transfer, discipline, layoff, recall, termination, or any other terms, conditions, or privileges of employment.

## Our Employment Relationship

Your employment with Trader Joe's is "at-will." This means that both you and the company have the right to terminate your employment at any time, with or without notice or cause. This handbook is not contractual in nature and does not guarantee you any continuation of benefits. Although your employment with Trader Joe's is at-will, the company strives to provide all crew members the utmost respect and consideration in matters of employment.

TJ 0077

APP0123

## Open Door Policy

We are committed to maintaining a positive and pleasant environment in which to work and believe in an open door policy. You are encouraged to discuss with your immediate supervisor any suggestions, questions, or problems relating to your job. You may also discuss them with any member of management without regard to his or her position in the company.

While this process may not result in every problem being solved or every question answered to your satisfaction, we value your input and you should feel free to raise issues of concern.

## Resolving Your Concerns

If you believe a matter has not been sufficiently addressed by your Captain, you may contact your Regional Vice President or Human Resources. You should call your Regional and/or Human Resources as soon as possible after the event that has led to your concern.

All concerns will be investigated as appropriate and will generally involve interviews with you and other crew members named in your complaint. Trader Joe's will treat all internal concerns as confidential to the extent possible in order to resolve matters. Upon completion of the investigation, the company will promptly provide you with a response.

While Trader Joe's provides you with this opportunity to communicate your views, please understand that not every matter can be resolved to your satisfaction. If you report an incident in good faith, you will not be disciplined or otherwise penalized because of your report regardless of the outcome.

3

# Crew Member Performance and Conduct

## Crew Member Conduct

Our Mission Statement specifies that we are dedicated to providing the highest quality of customer satisfaction delivered with a sense of warmth, friendliness, fun, individual pride, and company spirit. This means that you must conduct yourself in a professional manner and treat customers and co-workers with courtesy and respect at all times.

Any crew member whose job performance or conduct is not in line with the company's standards will be subject to disciplinary action, which may range from a verbal warning to termination of employment. The appropriate disciplinary action will be determined at the discretion of Trader Joe's management on the basis of the particular facts and circumstances of the situation. Your employment with Trader Joe's is "at-will," which means that it may be terminated by either you or the company at any time, with or without notice or cause.

The following list is not intended to be exhaustive but rather to identify some of those behaviors that will not be tolerated by the company:

- Falsifying or omitting any information on your employment application or other personnel records;
- Failing to treat a customer, crew member, or any other member of the public with courtesy and respect;
- Insubordination or lack of cooperation;
- Failing to follow the instructions of, or to perform work requested by, your supervisor;
- Unsatisfactory work performance;
- Violation of any company policy or procedure;
- Falsifying a timecard or any other company report or record;
- Unauthorized or excessive absences from work;
- Excessive tardiness;
- Excessive cash drawer discrepancies;

TJ 0079

- Abusing, wasting, stealing, or embezzling the funds or property of Trader Joe's, a crew member, a customer, or any other person;

- Removing company property or records without written authorization;

- Communicating physically threatening or maliciously defamatory material about Trader Joe's, a crew member, a customer, or any other person, through any electronic means (including, but not limited to text messages, e-mails, voicemails, and internet blogs);

- Fighting or creating a disturbance on company premises, while performing job duties, while wearing a Trader Joe's name badge and/or shirt, or while at company-related events;

- Possession of firearms, weapons, drug paraphernalia, or dangerous substances while performing job duties, while on company premises, or while at company-related events;

- Making or receiving excessive personal telephone calls on company time;

- Sale of alcoholic beverages to a minor;

- Sale of alcohol when prohibited by state law;

- Consuming, possessing, or selling illegal drugs or controlled substances on company premises (including the parking lot) or while performing job duties;

- Consuming alcohol on company premises (including the parking lot) or while performing job duties (except during a store tasting supervised by store management);

- Becoming intoxicated and/or exhibiting behavior that is offensive to other crew members at company-related events;

- Reporting to work under the influence of alcohol, an illegal drug, or controlled substance, or in a condition unfit to perform your duties;

- Smoking, eating, or drinking in prohibited areas;

- Violating a company safety rule or practice;

- Unauthorized solicitation or distribution on company property (see section "No Solicitation" for guidelines on authorized solicitation or distribution);

- Disclosing confidential company information (for example, business, financial, and marketing strategies) without authorization;

- Acting in conflict with the interests of the company; and

- Failing to fully cooperate in any company investigation.

Nothing in this list is intended to interfere with a crew member's right to discuss terms and conditions of employment, to try and improve these conditions, or to engage in any form of legally protected

APP0126

activity.  This is not a complete list of grounds for discipline. A crew member may be subject to disciplinary action, up to and including termination of employment, for any other conduct deemed unacceptable by Trader Joe's.

---

## Discrimination and Non-Harassment

It is the policy of Trader Joe's that each crew member of the company is entitled to work in an environment that is free of unlawful discrimination, harassment, or intimidation and in which his or her personal dignity is respected. Unlawful discrimination or harassment in employment on the basis of sex, sexual orientation, gender, gender identity, gender expression, race, color, ancestry, national origin, citizenship, military and veteran status, religion, marital status, age (over 40), physical or mental disability, genetic information, or medical condition (including pregnancy, childbirth, and related medical conditions) violates state and federal law and is strictly prohibited by the company. Crew members who violate this policy will be subject to disciplinary action, up to and including termination of employment.

---

### What is Harassment?

Harassment includes, but is not limited to:

- Visual conduct, including displaying derogatory objects, pictures, cartoons, or posters;
- Verbal conduct, including making or using derogatory comments, epithets, slurs, or jokes;
- Physical conduct such as assaults, unwanted touching, blocking normal movement, or interfering with work because of sex, race, or any other protected basis;
- Threatening or intimidating behavior; or
- Retaliation for having reported or threatened to report harassment.

All forms of harassment undermine the employment relationship by creating an intimidating, hostile, or offensive work environment and will not be tolerated.

TJ 0081

APP0127

*What is Sexual Harassment?*

Sexual harassment is a particular form of crew member misconduct that is strictly prohibited and will not be tolerated. Sexual harassment includes, but is not limited to, unwanted sexual advances or visual, verbal, or physical conduct of a sexual nature. Sexual harassment includes gender harassment and harassment on the basis of pregnancy, childbirth, or related medical conditions and also includes sexual harassment of a crew member of the same gender as the harasser.

This includes, but is not limited to, the following types of offensive behavior:

- Unwanted sexual advances;

- Offering employment benefits in exchange for sexual favors;

- Making or threatening reprisals after a negative response to sexual advances;

- Visual conduct, including leering, making sexual or obscene gestures, or displaying sexually suggestive objects, pictures, cartoons, or posters;

- Verbal conduct, including making or using derogatory comments, epithets, slurs, jokes, invitations, suggestive or insulting sounds;

- Referring to an individual by the wrong gender, sexual preference or sexual orientation;

- Verbal sexual advances or propositions;

- Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, suggestive or obscene letters, notes, or invitations;

- Physical conduct, including touching, assault, impeding, or blocking movements; or

- Retaliation for having reported or threatened to report sexual harassment.

Some examples of sexual harassment complaints include (a) a crew member fired or denied a job or an employment benefit because he/she refused to grant sexual favors or because he/she complained about harassment; (b) a crew member who quit because he/she could no longer tolerate an offensive work environment; and (c) a crew member exposed to an offensive or hostile work environment.

Any behavior of a sexual nature in the workplace is considered unprofessional. Any conduct that degrades or ridicules another crew member is considered unprofessional. Such unprofessional conduct will not be tolerated because it undermines morale, interferes with performance, and demeans its victims.

TJ 0082

## Trader Joe's Complaint Procedure

Trader Joe's will take all reasonable steps to prevent all forms of harassment, including sexual harassment, from occurring and will take immediate and appropriate action when the company determines that unlawful harassment has occurred.



All crew members have the right to be free from unlawful harassment while in the employ of Trader Joe's. If you have been harassed by a co-worker, supervisor, agent, vendor, or customer, you should promptly report the facts of the incident(s) and the name(s) of the individual(s) involved to your Captain without fear of retaliation. If you want to report harassment by your Captain, or if you feel uncomfortable reporting the matter directly to your Captain, you can report it to either the Regional Vice President for your store, to Human Resources at (888) 507-7660, or to any other member of management.

The company will thoroughly investigate all claims of harassment. Trader Joe's will, to the extent practicable, respect the confidences and sensitivities of all persons involved in the incident. However, investigation of such complaints may require disclosure to the accused harasser and other witnesses in order to gain pertinent facts.

Following the investigation of a complaint, if the circumstances warrant it, the company will take prompt, effective, and appropriate action, up to and including termination of employment. The company's determination and related company action will be communicated to you and steps will be taken to prevent further harassment.

## Other Remedies

In addition, if you believe that you have been subjected to unlawful discrimination or harassment and are not satisfied with the company's response, you may file a complaint with either the U. S. Equal Employment Opportunity Commission (EEOC) or your state office (see table below). Further information on both of these agencies is contained in the legal postings in your store. The address and telephone number for the local offices of the EEOC may be found in the Government Offices listings in the telephone book or online at www.eeoc.gov.

APP0129

| Alabama | Equal Employment Opportunity Commission |
|---|---|
| Arizona | State of Arizona, Attorney General's Office, Civil Rights Division |
| Arkansas | Equal Employment Opportunity Commission |
| California | California Department of Fair Employment and Housing |
| Colorado | Colorado Civil Rights Division |
| Connecticut | Connecticut Commission on Human Rights and Opportunities |
| Delaware | Delaware Division of Industrial Affairs |
| District of Columbia | District of Columbia Commission on Human Rights |
| Florida | Florida Commission on Human Relations |
| Georgia | Georgia Commission on Equal Opportunity |
| Idaho | Idaho Human Rights Commission |
| Illinois | Department of Human Rights of the State of Illinois |
| Indiana | Indiana Civil Rights Commission |
| Iowa | Iowa Civil Rights Commission |
| Kansas | Kansas Human Rights Commission |
| Kentucky | Kentucky Human Rights Commission |
| Louisiana | Louisiana Human Rights Commission |
| Maine | Maine Human Rights Commission |
| Maryland | Maryland Human Relations Commission |
| Massachusetts | Massachusetts Commission Against Discrimination |
| Michigan | Michigan Department of Civil Rights |
| Minnesota | Minnesota Department of Human Rights |
| Missouri | Missouri Commission on Human Rights |
| Nebraska | Nebraska Equal Opportunity Commission |
| Nevada | Nevada Equal Rights Commission |
| New Hampshire | New Hampshire Human Rights Commission |
| New Jersey | New Jersey Department of Law & Public Safety, Division on Civil Rights |
| New Mexico | New Mexico Human Rights Division |
| New York | New York Division of Human Rights |
| North Carolina | North Carolina Human Relations Commission |
| Ohio | Ohio Civil Rights Commission |
| Oklahoma | Oklahoma Human Rights Commission |
| Oregon | Civil Rights Division of the Bureau of Labor and Industries |
| Pennsylvania | Pennsylvania Human Relations Commission |
| Rhode Island | Rhode Island Human Rights Commission |
| South Carolina | South Carolina Human Rights Commission |
| Tennessee | Tennessee Human Rights Commission |

TJ 0084

| Texas | Texas Workforce Commission |
| Utah | Utah Antidiscrimination & Labor Division |
| Vermont | Vermont Human Rights Commission |
| Virginia | Virginia Council on Human Rights |
| Washington | Washington State Human Rights Commission |
| Wisconsin | Wisconsin Department of Workforce Development, Equal Rights Division |

> ## Non-Retaliation Policy
>
> Trader Joe's will not tolerate retaliation by management or co-workers against any crew member for reporting or complaining of unlawful discriminatory practices (including harassment), for filing a complaint with a governmental agency, or for otherwise participating in any proceeding, including an investigation, in connection with such a complaint.

### False Claims

Crew members who knowingly file false complaints will be subject to appropriate discipline, up to and including termination of employment.

## Disability Accommodations

Trader Joe's will make reasonable accommodations for the known physical or mental disabilities (including conditions related to pregnancy) of otherwise qualified crew members or applicants for employment where their disability affects the performance of essential job functions, unless undue hardship to Trader Joe's would result. All employment decisions are based on the merits of the situation in accordance with defined criteria, not the disability of the individual.

Disability accommodations may be provided under the guidelines of the Americans with Disabilities Act (ADA). The ADA protects crew members and applicants from employment discrimination due to a disability. Trader Joe's is committed to complying with the ADA and any crew member or applicant who requires accommodation in order to perform the essential functions of a job or to apply for a job should contact Human Resources. The crew member and the company will identify possible accommodations, if any, that will help eliminate the limitation. If an accommodation is reasonable and will not impose an undue hardship upon the company,

the company will make the accommodation. If multiple accommodations are available, which accommodation is utilized will be at the company's discretion.

The company also will not discriminate against any qualified crew members or applicants because of a disability. If you believe that you have been subjected to any form of unlawful discrimination, you should promptly report the facts of the incident(s), name(s) of the individual(s) involved, and the name(s) of any witness(es) to your Captain or Mate. If you feel uncomfortable reporting the matter to store management, you can report it to the Regional Vice President for your store or to Human Resources at (888) 507-7660.

## Drug-Free Workplace

Trader Joe's expects you to be fit for duty at all times. To this end, we maintain a policy of intolerance for the use of drugs (as defined below) in the workplace. In addition, this policy extends to being under the influence of drugs during working hours. Further, possessing, selling, or transferring drugs on company premises is strictly prohibited.

For the purposes of this policy, drugs are defined as illegal drugs, alcohol, legally-prescribed drugs taken improperly, and other mind-altering substances. To the extent that they render or may render you unable to perform your duties competently and safely, certain properly administered prescription and over-the-counter drugs may be included as well.

If you are required to take a medication that may affect your job performance, it is your responsibility to report this to your Captain. Trader Joe's will make every effort to provide a reasonable accommodation to assure your safety and the safety of others.

We reserve the right to ask you to submit to a drug test any time that your behavior or appearance reasonably indicates that you may be in violation of this policy. If you are found to be in violation of this policy, you will be subject to disciplinary action, up to and including termination of your employment.

If you feel that you have a substance abuse problem that is affecting your job performance, you should notify your supervisor or Human Resources, or contact the Crew Member Assistance Program. Trader Joe's will make every effort to provide you the time necessary to seek assistance for your condition. Your disclosure will be kept in the strictest of confidence.

TJ 0086

APP0132

# Redacted



Trader Joe's Brookline #501
Alcohol Policy



APP0133





**TiPS** Off Premise

**CERTIFIED**

Issued: 10/14/2019

Expires: 10/7/2022

ID#: 5215146

GLORIA J COCUZZO
1317 Beacon St
Brookline, MA  02446-5242

For service visit us online at www.gettips.com
TIPS Trainer: Michael Marcantonio, 64

TJ 0173

Trader Joe's/ Cocuzzo, Statement of Position 000019

EXHIBIT 7
WIT: Cocuzzo
DATE: 9/2/22
Valerie Rae Johnston, RPR

| From: | Jennifer Gillum |
|---|---|
| To: | Chris Maguire; Jordanne Hancock |
| Subject: | Fwd: Firing - 2/24/21 |
| Date: | Wednesday, February 24, 2021 12:30:41 PM |

*** This is an external email. ***

This is Gloria Cucozzo's statement forwarded.

Sent from my iPhone

Begin forwarded message:

> **From:** Dee Cook <dcocuzzo27@yahoo.com>
> **Date:** February 24, 2021 at 3:21:31 PM EST
> **To:** jenniferlgillum@gmail.com
> **Subject: Firing - 2/24/21**

Jennifer Gillum, Captain
Trader Joe's
1317 Beacon Street
Brookline, MA 02446

Jennifer
I am putting this in writing to explain about my being fired from Trader Joe's after 16
years.  This termination was prompted by purchasing beer for my grandson, Kevin,
who was coming to dinner that evening at my home.  I totally did not think of his age!
Kevin does drink beer at home with his family so I did not think twice about this trans-
action
I've loved my job at Trader Joe's and therefore would do nothing to jeopardize my
position.  I am saddened by this whole incident because I've valued my job.
Trader Joe's is a fabulous company!

Sincerely - Gloria Cocuzzo
cc:  Chris Maguire

Sent from my iPad

EXHIBIT 11
WIT: Cocuzzo
DATE: 9/2/22
Valerie Rae Johnston, RPR

APP0135

# TRADER JOE'S
## Crew Member Incident Report

Crew Member Name: ___Gloria Cocuzzo___                    Store #: ___501___

Crew Member ID Number: ___1046744___

Position: Crew ☐    Merchant ☒    Mate ☐

Supervisor: ___Jennifer Gillum___

Witness: Joseph Gionet

Date Written: ___2/25/21___

### Termination

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position. This statement will be added to your personnel file.)

Your performance has been found to be unsatisfactory or unacceptable for the reasons set forth below:

Gloria, on February 20th, 2021, an underage crew member selected and placed two 4-packs of beer into a cart in the alcohol section of our store. You proceeded to purchase this beer. When I asked you about the beer afterward, you said the alcohol was for the underage crew member.

The decision to purchase alcohol for a minor directly goes against our core value of integrity. Based on this decision, you employment is terminated effectively immediately.

A copy of this document will be placed in your employment file.

___Refused to Sign___
Crew Member Signature                    Date

_____
Supervisor Signature                    2.25.21
                                        Date
                                        2/25/21
_____
Witness Signature                        Date

EXHIBIT __12__
WIT: _Cocuzzo_
DATE: _9/2/22_
Valerie Rae Johnston, RPR

A copy of this document will be placed in your personnel file.

TJ 0049

APP0136

# Exhibit B

APP0137

1

```
  1                                    Volume:  I
                                       Pages:  1 - 89
  2                                    Exhibits:  1 - 3

  3
                  UNITED STATES DISTRICT COURT
  4                 DISTRICT OF MASSACHUSETTS

  5                          C.A. NO. 1:22-cv-10162-LTS

  6
        *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
  7
        GLORIA COCUZZO,
  8
             Plaintiff
  9
        VS.
 10
        TRADER JOE'S COMPANY and JENNIFER
 11     GILLUM,

 12          Defendants

 13     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

 14

 15          Deposition of CHRISTOPHER MAGUIRE, a

 16     30(b)(6) witness for Trader Joe's, called by counsel

 17     for the Plaintiff, pursuant to the applicable rules,

 18     before Lorreen Hollingsworth, CSR/RPR, CSR NO. 114793,

 19     and Notary Public in and for the Commonwealth of

 20     Massachusetts, via Zoom Teleconferencing, on Thursday,

 21     January 5, 2023, at 11:00 a.m.

 22

 23

 24
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

APP0138

2

```
1     APPEARANCES:

2     TIMOTHY J. PERRY, ESQUIRE
         Perry Krumsiek, LLP
3        One Boston Place, Suite 2600
         Boston, Massachusetts 02108
4        617-720-4300
         Tperry@pkdllp.com
5        On behalf of the Plaintiff

6     ELLEN E. LEMIRE, ESQUIRE
         Littler Mendelson, P.C.
7        One International Place, Suite 2700
         Boston, Massachusetts 02110
8        617-378-6000
         Elemire@littler.com
9        On behalf of the Defendants

10    Also present:

11       Nancy Inesta, Esquire
         Deputy General Counsel, Trader Joe's
12

13

14

15

16

17

18

19

20

21

22

23

24
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

```
 1              from the get-go.  I think Jen had a very

 2              organized and thorough understanding of

 3              what had happened when she had called me to

 4              present -- to present the facts.

 5    Q    What was she conveying?

 6                        What were the "clear facts,"

 7              as you say?

 8    A    That a crew member, who turned out to be

 9              Gloria's grandson, had gone to the alcohol

10              section, was witnessed by another crew

11              member taking alcohol from a shelf, placing

12              it in a shopping cart, the shopping cart

13              was passed between the crew member and

14              Gloria.

15                        Gloria proceeded to buy the

16              alcohol, place it into a storage area in

17              the store, and when asked or confronted

18              with the -- you know, the facts of what had

19              just happened, she admitted to purchasing

20              alcohol for the crew member who happened to

21              be a minor and was also her grandson.

22                        It was pretty straightforward.

23    Q    Okay.  And so -- and I think I've seen in

24              the papers that it's Trader Joe's position
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

APP0140



Back File

Employee Number:  1046744

Name:  Cocuzzo, Gloria

SSN: REDACTED

EXHIBIT

Maguire

2

1/5/23

LH

TJ 0001



**Littler CaseSmart®**
**Program Mailing**
**Address:**

**Littler Mendelson, P.C.**
Global Services Center
2301 McGee Street
Suite 800
Kansas City, MO 64108

October 6, 2021

**ALL INFORMATION CONTAINED HEREIN SHALL REMAIN CONFIDENTIAL**

**VIA EMAIL AT <u>MARC.PERLMAN@STATE.MA.US</u>**

Marc Perlman, Investigator
The Commonwealth of Massachusetts, Commission Against Discrimination
1 Ashburton Place
Room 601
Boston, Massachusetts 02108-1518

> **Re:   Gloria Cocuzzo vs. Trader Joe's East Inc. and Jennifer Gillum**
> **Charge No.:  21BEM01539, 16C-2021-01403**

Dear Mr. Perlman:

This letter and attached documentation constitute the initial statement of position of Respondent Trader Joe's Company ("Trader Joe's") and Jennifer Gillum ("Ms. Gillum"), an employee of Trader Joe's, in response to the Charge of Discrimination ("Charge") filed by Gloria Cocuzzo ("Complainant").[1] Trader Joe's denies Complainant's allegations.

As discussed in detail below, Trader Joe's did not discriminate against Complainant when she was terminated for purchasing alcohol beverages for an underage individual who

---

[1] The information and accompanying documentation contained herein, and that which may be submitted hereafter, is strictly confidential and not to be used for any purpose other than the resolution of the current Charge and it may not be disclosed publicly. See 42 U.S.C. §§ 2000e-5(b); 2000e-8(e); 29 C.F.R. §§ 1601.22, 1601.26; and 56 Fed. Reg. 10847. To the extent Complainant is in receipt of this information or accompanying documentation, Complainant is advised that this information is strictly confidential and should not be disclosed publicly or to any individual unless they have a privileged relationship with that individual. Information and accompanying documentation contained herein designated confidential and/or containing sensitive medical information, confidential commercial or financial information, or trade secret information may not be disclosed to Complainant.

This response is based upon our understanding of the facts and the information reviewed thus far. Although there has not been an opportunity for formal discovery or a complete formal investigation, this response is submitted for the purpose of aiding the agency in its investigation and facilitating the informal resolution of these matters. This response, while believed to be accurate, does not constitute an affidavit or binding statement of Trader Joe's legal position, nor is it intended to be used as evidence of any kind in any administrative or court proceeding in connection with Complainant's allegations. Because additional facts likely would be uncovered through discovery or following a full investigation, Trader Joe's in no way waives its right to present new or additional information at a later date, for substance or clarification. Moreover, by responding to this Charge, Trader Joe's does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist to the Charge and Complainant's allegations. Trader Joe's requests that any efforts to contact its current or former managers be directed through its counsel.

October 6, 2021
Page 2

was also an employee.  Accordingly, Trader Joe's respectfully requests that the Commission dismiss this Charge in its entirety with a "no cause" finding.

## I.     TRADER JOE'S RELEVANT POLICIES AND VALUES

Trader Joe's is a chain of specialty grocery stores with headquarters in Monrovia, California.  Each store in the chain is staffed by a Captain and Mates, who are the store manager and assistant managers, respectively, and a non-supervisory staff of Merchants and Crew.  Trader Joe's refers to its employees, collectively, as "Crew Members."

Trader Joe's employs four "Crew Member" categories: (1) Crew; (2) Merchants; (3) Mates; and (4) the Captain.  Crew are employees responsible for, among other things, creating a memorable shopping experience for customers by sharing product knowledge, answering questions, and helping customers locate items, manning the registers, assisting customers, bagging groceries, building displays, stocking shelves, and sampling products.

Merchants (of which there are only a few per store) act as customer experience role models for the Crew by engaging customers, preparing the store, and working cooperatively as team members.  Mates are the first level store management comparable to assistant managers.  Mates participate in all aspects of managing a Trader Joe's store, including supervising the Crew.  The Captain, or store manager, runs the store.  Captains are responsible for ensuring customer satisfaction, developing crew members, and promoting Trader Joe's values and culture.

Customer service is of paramount importance to Trader Joe's.  The mission of Trader Joe's is to provide its customers with the best in food and beverage values and also provide customers with information required to make informed buying decisions.  Trader Joe's is dedicated to the highest quality of customer satisfaction "delivered with a sense of warmth, friendliness, fun, individual pride and company spirit" and is committed to providing a "WOW" customer experience every day through its crew members who are carefully selected based on factors such as work quality and attitude.  Importantly, Value #1 – Integrity, demands that all crew members behave with unyielding integrity.  "The definition of Integrity is simple . . . it means that you treat others as you would like to be treated.  Our Company is very unusual because of this important and key Value.  We are committed to treating all customers, vendors or suppliers and each other with Integrity."  *See* **Exhibit 1,** Relevant portions of Trader Joe's Crew Member Handbook.

Trader Joe's is also committed to providing a workplace free of discrimination.  All Crew Members receive a copy of The Crew Handbook.  *See* **Exhibit 2,** Complainant's Acknowledgment of Receipt of Crew Handbook. The Crew Handbook includes Trader Joe's Discrimination and Non-Harassment policy, which states:

It is the policy of Trader Joe's that each crew member of the company is entitled to work in an environment that is free of unlawful discrimination,

October 6, 2021
Page 3

harassment, or intimidation and in which his or her personal dignity is respected. Unlawful discrimination or harassment in employment on the basis of sex, race, ancestry, color, religion, sexual orientation, gender identity, national origin, citizenship, veteran status, age (over 40), physical or mental disability or medical condition . . violates state and federal law and is strictly prohibited by the company. Crew members who violate this policy will be subject to disciplinary action, up to and including termination of employment.

*See* **Exhibit 1,** Relevant Portions of Trader Joe's Crew Member Handbook.

Complainant received a copy of Trader Joe's anti-discrimination policies and reporting procedures. **Exhibit 2, Cocuzzo Acknowledgment of Handbook Receipt.** At all times, Trader Joe's treated her in accordance with its legitimate, non-discriminatory policies.

## II.   COMPLAINANT'S EMPLOYMENT WITH TRADER JOE'S

On October 6, 2003, Complainant was hired as a Crew Member at Store 501 in Brookline, Massachusetts. In 2012, she was promoted to Merchant. On July 2020, Jennifer Gillum became the Store Captain and Complainant's direct supervisor. Ms. Gillum completed the last annual evaluation of Complainant in August 2020, rating performance as satisfactory, and approved her for a raise. Prior to this Charge, Complainant has never accused Ms. Gillum of age discrimination or age-related bias. Indeed, prior to her discharge, Complainant never complained at all about Ms. Gillum. By all accounts, the two had an amicable and mutually respectful relationship.

Because Store 501 has a license to sell alcohol, and Complainant's job duties included the selling alcohol, she received site specific training related to those responsibilities and the laws implicated by her selling alcohol to customers. She was also advised of Trader Joe's Alcohol Policy. **See Exhibit 3, Alcohol Training Acknowledgment for Trader Joe's Brookline #501.** That policy states, in part: "We recognize that it is a privilege to purchase and sell alcohol in the State of Massachusetts and with that privilege, realize that *it is our legal and social responsibility to comply with all Federal, State, and the Town of Brookline's Law*. . . . *We are committed to adhering to all liquor laws*[.]" (Emphasis added) The policy further provides that it is the cashier's responsibility to determine if the person is of legal age, which is twenty-one (21) in the state of Massachusetts, prior to selling that person alcohol. Per this policy, any Crew Member, Merchant, Mate, and/or Mate "whose job performance or conduct violates our Alcohol Policy or is not in line with the company's standards will be subject to disciplinary action" up to and including termination. *Id.*

Complainant, along with all other Crew Members, was also required to be trained and certified[2] by TIPS, an alcohol service education provider approved by Massachusetts Alcoholic

---

[2] Each Crew Member's certification must be renewed every 3 years, a process that involves retraining and retesting of the individual.

October 6, 2021
Page 4

Beverages Control Commission.   **See Exhibit 4, Complainant's Alcohol Server Certificate.**   Among the topics Complainant was trained and tested on is ensuring all customers seeking to purchase alcohol are of legal age to purchase it**.  See Exhibit 5, TIPS Training Manual Excerpts.**  The training further cautions about "Underage Warning Signs," that should alert the seller a potentially underage person is attempting to purchase alcohol. Those signs include "hand[ing] money to someone else who is obviously of age" and "stand[ing] away from the line as a friend attempts to purchase alcohol." *Id.*  Complainant was also tested on various scenarios to determine whether she could identify violations of the law, including one where an individual buys beer for a young customer. *Id.*   As such, Complainant was well-aware of the law in this regard.

### A.    Complainant's Termination

On February 20, 2021, the Crew Member assigned to work in the Liquor and Beer Department observed Complainant's grandson an underage crew member, place two 4-packs of beer into a cart and then observed Complainant purchase the beer for him.  The Crew Member reported the matter the store manager, Ms. Gillum, who investigated the allegation. Ms. Gillum interviewed Complainant and she (Complainant) admitted she purchased the beer for her underage grandson.  Based upon her admission and the report of the Crew Member, it was determined that Complainant had violated Trader Joe's Alcohol Policy.  Further, by violating the law as an employee of Trader Joe's, her conduct jeopardized the alcohol sales license of the store.

Ms. Gillum asked Brian Foote (Mate) to attend the meeting to discuss Complainant's termination on February 24.  During that meeting, Ms. Gillum advised Complainant that due to her admitted purchase of alcohol for a minor (i.e. her underage grandson), she must be separated from employment. Because Complainant was well-liked by her fellow-employees, store regulars, and by Ms. Gillum herself, she gave Complainant the option of resigning or retiring in lieu of termination.

During this meeting, both Ms. Gillum and Mr. Foote treated Ms. Gillum politely and with respect.  No one yelled at her, insulted her, physically intimidated her or said anything that an objectively reasonable person would find hostile or offensive. During that meeting, Complainant did not object that her termination was unfair nor claim it lacked any basis. Indeed, she was more concerned about the fate of her underage grandson, who was also an employee. At the conclusion of the meeting, Complainant asked that she be allowed to resign. However, later that day she changed her mind, stating that she wished to be terminated.  On February 25, 2021, she was officially terminated from her employment.  **Exhibit 6, Termination Form.**

October 6, 2021
Page 5

### III.   TRADER JOE'S DID NOT DISCRIMINATE AGAINST COMPLAINANT

Complainant's allegation that Trader Joe's termination of her employment was based on her age is unfounded and lacks any merit.  Trader Joe's had legitimate non-discriminatory and business-related reasons, namely Complainant's *own* illegal behavior, i.e. purchasing alcohol for an underage Crew Member. This is not a case where Complainant failed to I.D. a customer, failed to recognize a fake I.D. or failed to recognize warning signs that alcohol was being purchased for a minor. Rather, here, it is undisputed Complainant, *herself*, purchased alcohol for someone *she knew* to be underage. Moreover, this misconduct occurred on a break during her scheduled shift and while she was in Trader Joe's uniform.

Complainant received training on the prohibition of selling alcohol to minors and was further trained that she also may not sell alcohol to someone who appears to be buying it for, or on behalf of, a minor. This is the law, nor some discretionary policy of Trader Joe's.  The fact that Complainant was purchasing it for a minor versus selling it to someone who attempted to buy alcohol to a minor is of no consequence. It  is  illegal in Massachusetts to furnish alcohol to a minor.  "Furnishing" includes supplying, giving, or providing alcohol while having reason to know that the recipient is a minor.

Massachusetts allows a parent/legal guardian/grandparent/spouse to furnish alcohol to his or her underage child/grandchild/ward/spouse only when the furnishing occurs *on property owned or controlled by the person older than 21*. However, here, the "furnishing" was not on property owned or controlled by Complainant, but, rather, occurred on the property of Trader Joe's.  As such, the fact that Complainant knowingly purchased alcohol for her underage grandson does not purge the illegality of her conduct.  Nor does this narrow exception in the law protect Trader Joe's from liability or any civil or criminal sanctions that could have resulted from her act, which could have included fines and the loss of this store's license to sell alcohol.

Complainant offers no evidence, direct or circumstantial, that Ms. Gillum harbored any age-related animus towards Complainant, let alone that her discharge was somehow tainted by such animus, as she  alleges. Ms. Gillum had no issues with Complainant's age.   In fact, Ms. Gillum recently gave her a complimentary review and approved a raise for her.  These are not the actions of someone with a nefarious intent to rid the workplace of older employees.

No younger person has replaced her position as alleged. Complainant's Merchant position has not yet been filled.  While the hiring of Crew Members is an ongoing task that predates and post-dates Complainant's termination, Trader Joe's does not ask applicants their age on the application or otherwise seek to "weed out" older applicants.  By nature of the fact that Crew Member positions at Store 501 are entry level jobs, most of the applicants tend to be under the age of 40.  Yet despite the dearth of older applicants, Store 501 is age-diverse.  Since 2020, there have been 19 employees over the age of 40 employed at this

October 6, 2021
Page 6

store.  Five of those employees were 60 years old or older when were hired and 13 were 50 years or older when hired, including a 56-year-old employee hired by Ms. Gillum.

Nor did Ms. Gillum manufacture a bogus reason to terminate Complainant. Rather, a Crew Member assigned to work the alcohol department (one who received the very same training Complainant received regarding "underage warning signs") observed her purchase beer for an underage crew member and reported it to Ms. Gillum.  There is no pretext here: Complainant admitted to the act and the act was illegal.  Indeed, but for her own misconduct, she would have likely remained employed.

The fact that Trader Joe's offered Complainant the option of retirement in lieu of being fired does not establish age discrimination.  This offer was made as courtesy to Complainant because she was well-liked by staff, including Ms. Gillum, and the customers, and it would have allowed her a graceful exit without the stigma of a termination on her record.  There is no evidence that Complainant's age played a role in the decision and she provides no comparator evidence to support her claim she was disparately treated.

Finally, with regard to Complainant's claim that she was subjected to a hostile and intimidating environment at her termination meeting, there is no evidence to support this claim.  Similar, any notion that Complainant was subjected to "extreme emotional distress" as alleged in the Charge is pure hyperbole.

In sum, Complainant cannot establish any claim of discrimination and it should be dismissed.

## IV.   CONCLUSION

In view of the circumstances and the documentation provided, Trader Joe's respectfully submits that the Commission should dismiss this Charge in its entirety with a finding of no probable cause Please do not hesitate to contact my colleague Dennise Smith if you have any questions. She can be reached at 816.788.7089 or drsmith@littler.com.  You may also contact Kara Jassy at (213) 443-4300 or KJassy@littler.com.  Thank you.

Sincerely,

LITTLER MENDELSON, P.C.

/s/ Stephen Melnick

Stephen Melnick
Telephone: (617) 378-6000
Fax; (617) 737-0052
SMelnick@littler.com

October 6, 2021
Page 7

SM/drs
Enclosures

cc:     Tania Taveras, Administrative Assistant (Tania.taveras@mass.gov)
        Timothy J. Perry, Esq. (via fax only at 617-720-4310)

APP0148

# Exhibit C

```
 1                                      Volume:  I
                                        Pages:  1 - 158
 2                                      Exhibits:  1 - 17

 3
                     UNITED STATES DISTRICT COURT
 4                    DISTRICT OF MASSACHUSETTS

 5                            C.A. NO. 1:22-cv-10162-LTS

 6
        *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 7
        GLORIA COCUZZO,
 8
             Plaintiff
 9
        VS.
10
        TRADER JOE'S COMPANY and JENNIFER
11      GILLUM,

12           Defendants

13      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

14

15           Deposition of JENNIFER GILLUM, a witness called

16      by counsel for the Plaintiff, pursuant to the

17      applicable rules, before Lorreen Hollingsworth,

18      CSR/RPR, CSR NO. 114793, and Notary Public in and for

19      the Commonwealth of Massachusetts, via Zoom

20      Teleconferencing, on Tuesday, June 7, 2022, at

21      10:00 a.m.

22

23

24
```

APP0150

2

```
 1   APPEARANCES:

 2   TIMOTHY J. PERRY, ESQUIRE
       Perry Krumsiek, LLP
 3     One Boston Place, Suite 2600
       Boston, Massachusetts 02108
 4     617-720-4300
       Tperry@pkcounsel.com
 5     On behalf of the Plaintiff

 6   ELLEN E. LEMIRE, ESQUIRE
       Littler Mendleson
 7     One International Place, Suite 2700
       Boston, Massachusetts 02110
 8     617-378-6000
       Elemire@littler.com
 9     On behalf of the Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

APP0151

22

```
 1            like that and hadn't yet reached a

 2            conclusion, yes.

 3    Q       What do you mean, "reached a conclusion"?

 4    A       Resignation or a termination.  But as

 5            documenting part of the process, we would

 6            write down the contents of the

 7            conversation.

 8    Q       All right.  But in regards to Ms. Cocuzzo,

 9            didn't you first state that she had

10            resigned after your meeting?

11    A       She did say that she wished to resign after

12            that, yes.

13    Q       Okay.  And that's the very same thing that

14            you're saying that Mr. Quinn said to you?

15    A       Well, what happened was I received a call

16            from my boss at the time, Chris Maguire,

17            who had told me that Gloria didn't wish to

18            resign; that she, in fact, wanted to be --

19            misunderstood the conversation.

20                    So at that point, it wasn't --

21            I hadn't processed anything.

22                    And a very short amount of

23            time elapsed between when that conversation

24            happened with Gloria and that phone call I
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

**APP0152**

49

```
 1              position?

 2    A    It was a little under a year, I believe.

 3    Q    And what was your next position?

 4    A    It was a mate.

 5    Q    And what does a mate do?

 6    A    Mates are akin to supervisors in the store.

 7              So they open and close the

 8         store, help support the crew members with

 9         any issues they may have, but effectively

10         supervisors.

11    Q    How long did you hold that position?

12    A    I was in that position until 2018.

13    Q    Okay.  What was your next position?

14    A    Captain.

15    Q    What's a captain?

16    A    It's a store manager, general manager.

17    Q    What are the job responsibilities of a

18         store captain?

19    A    Ensure that all the store operations are

20         running smoothly, from both a people point

21         of view and a business point of view.

22    Q    Okay.  And did you become a captain in

23         2018?

24    A    Correct.
```

87

```
 1    Q      Okay.  As a captain, were you responsible
 2           for training the employees on the alcohol
 3           policy?
 4    A      Not directly.  I was in charge of
 5           facilitating it, but not directly
 6           responsible for it.
 7    Q      Okay.  And did you ever train anybody on
 8           the alcohol policy?
 9    A      I was in charge of facilitating, but I am
10           not proctored to do the TIPS training that
11           we do.
12    Q      You did TIPS training internally at Trader
13           Joe's?
14    A      Yes.
15    Q      Is that an outside company that does that
16           for you folks?
17    A      Correct.
18    Q      What company is that, do you know?
19    A      I believe -- I'm not sure.  I thought it
20           was called TIPS.  Perhaps that's not the
21           company name.
22                   MR. PERRY:  Could you pull up
23           Exhibit No. 11, again, Lorreen.
24    Q      So I'm going to show you TJ 0170, which is
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

88

```
 1          part of the document production in this
 2          case.  And I'll just tell you, for ease of
 3          reference, this was Exhibit No. 3 to the
 4          response that Trader Joe's and you had,
 5          which was your Position Statement in the
 6          MCAD case.
 7                    So Exhibit 3 that was attached
 8          to your Position Statement was this
 9          document.
10                    Could you take a look at this
11          document, and then I'm going to ask you a
12          couple questions about it.
13                    Are you all set?
14     A    It's a little blurry, but I think I can
15          read it.
16     Q    It's not great.  This is the way it was
17          produced.
18                    Do you know where that
19          document comes from?
20     A    It's the Town of Brookline alcohol policy
21          that we have with them.
22     Q    Well, it says "Trader Joe's Brookline #501
23          Alcohol Policy."
24                    Do you see that?
```

APP0155

89

```
 1    A    Yes.
 2    Q    This is a Trader Joe's alcohol policy for
 3         Store No. 501 that's in Brookline, right?
 4    A    Correct.
 5    Q    So this is a Trader Joe's document, not a
 6         Town of Brookline document, correct?
 7    A    Correct.
 8    Q    And this is the alcohol policy that
 9         Ms. Cocuzzo was asked to sign, correct?
10    A    Yes.
11    Q    And is there any other alcohol policy that
12         applied to the employees of Trader Joe's
13         Store No. 501 while Ms. Cocuzzo was
14         employed?
15    A    This policy and then the training that they
16         go through with TIPS is also something
17         they're expected to follow.
18    Q    So I'll keep the training aside for a
19         moment.
20                   Right now I'm just wondering
21         about the policy.  The policy that Trader
22         Joe's issues to its employees -- and
23         particularly the employees at Store
24         No. 501 -- this was the policy, correct?
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

```
 1          Andre Diehl, is that correct?
 2    A     I can't recall if we did or not.
 3                    By that point in time, I
 4          already had Gloria admitting to what she'd
 5          done.
 6    Q     Okay.  Well, my question is a little
 7          different.
 8                    Did you get -- did you get a
 9          statement from Mr. Diehl?
10    A     I can't recall.
11    Q     Does the captain's handbook state that a
12          witness like Mr. Diehl should -- that his
13          statement should be recorded by you?
14                    MS. LEMIRE:  Objection.  You
15          can answer.
16    A     It does not lay that out.
17    Q     And when did you get information from
18          Mr. Diehl about Gloria Cocuzzo and the
19          incident that led to the termination?
20    A     When did I?
21    Q     Yeah.
22    A     On February 20th.
23    Q     And you were working that day; Mr. Diehl
24          was working that day; and Ms. Cocuzzo was
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

APP0157
104

```
 1              working that day?

 2    A    Yes.

 3    Q    And Ms. Cocuzzo's grandson, Kevin Quinn,

 4         was working that day?

 5    A    I think he was in the store, yeah, mm-hmm.

 6    Q    Well, was he in the store, or was he

 7         working?

 8    A    I believe he was working, yeah.

 9    Q    Well, didn't you figure that out during

10         your investigation?

11    A    Yes, he was working.

12    Q    And what was his position?

13    A    He was a crew member.

14    Q    What were his hours?

15    A    I don't know his hours offhand.

16    Q    Okay.  Well, he was still working after the

17         incident that involved Ms. Cocuzzo that

18         day, correct?

19    A    Yes.

20    Q    And he had a later shift than Ms. Cocuzzo

21         that day, isn't that right?

22    A    I don't know the specific hours he was

23         working, and when their start date -- start

24         times were.
```

APP0158

106

```
 1              the Store 501's alcohol policy on
 2              February 20, 2021, correct?
 3     A        Yes.
 4     Q        And you're alleging in this case that that
 5              is subject to immediate termination,
 6              correct?
 7     A        We still have to conduct an investigation.
 8     Q        That wasn't my question.
 9                     The violation of the alcohol
10              policy is subject, in your view, to
11              immediate termination, correct?
12     A        "Immediate" -- not in the terms of in that
13              moment in time, like, within an hour, no.
14              That does not occur at Trader Joe's.
15     Q        Okay.  Well, you approached Ms. Cocuzzo on
16              February 20, 2021, and accused her of
17              violating the alcohol policy, correct?
18     A        I asked her about what had transpired.
19     Q        Right.  And what you thought had transpired
20              was a violation of the alcohol policy,
21              correct?
22     A        I asked her about what had been reported to
23              me, which was purchasing alcohol for a
24              minor.  And that is what I asked her about.
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

107

```
 1    Q      Okay.  And so you told her that day that

 2           you got information that she had purchased

 3           for a minor, correct?

 4    A      Yes.

 5    Q      You say that that's a violation of the

 6           alcohol policy, correct?

 7    A      I don't know that I used those words at

 8           that point in time.

 9    Q      Okay.  I'm saying right now, as you sit

10           here today, you say that's a violation of

11           the alcohol policy at Trader Joe's,

12           correct?

13    A      Yes, if she bought alcohol for a minor, it

14           is a violation of the policy.

15    Q      What did you say?  "If" she bought it?

16    A      When she bought alcohol for a minor, it was

17           a violation of the alcohol policy.

18    Q      And you say in this lawsuit that you asked

19           her that day, and she admitted that to you;

20           isn't that what you say in this lawsuit?

21    A      Yes.

22    Q      So you're -- so what other investigation

23           did you need to do?

24    A      In every investigation, we still require a
```

APP0160

108

```
 1              statement from the employee.
 2                        So that will still be a part
 3              of it, because we have to hear both sides
 4              as to what her account of it is.
 5    Q    Well, when she gave you that explanation,
 6              didn't she tell you that she was purchasing
 7              beer to bring home for dinner that evening
 8              with her grandson?
 9    A    I don't remember if she referenced "dinner"
10              at that conversation.
11                        She just told me that she had
12              bought it for her grandson.
13    Q    Okay.  So in the store, you're saying that
14              she said she bought it for her grandson; is
15              that your testimony?
16    A    Could you repeat that one more time?
17    Q    You're saying that when you confronted
18              Ms. Cocuzzo in the store, she told you she
19              bought it for her grandson?
20    A    When I asked Gloria about it, she told me
21              she bought it for her grandson.
22    Q    Okay.  If that's true, you considered that
23              to be a violation of the alcohol policy,
24              correct?
```

APP0161
109

```
 1    A    Yes.

 2    Q    And you viewed that as a violation for

 3         which she should be terminated, correct?

 4    A    When someone breaks the law, yes, it is a

 5         reason for termination.

 6    Q    But you just let her stay at work that day

 7         anyway; is that what happened?

 8    A    Yes.

 9    Q    What did Ms. Cocuzzo do with the beer she

10         had purchased?

11    A    I -- I don't know.  She asked, you know, if

12         she should return it.  I said that would be

13         a good idea.

14                   But I don't know if it

15         actually happened or not.

16    Q    Are you sure about that?

17    A    Yes, I am sure about that.  I can't recall.

18    Q    Why isn't any of that information in your

19         report?

20    A    What specifically?

21    Q    I thought you said earlier that when you do

22         a report about your investigation, it's

23         supposed to be a full and fair recollection

24         of what happened?
```

```
 1    A      That is correct.  I have no information
 2           that she gave anything at the store.
 3    Q      So where in your policy does it say that
 4           purchasing alcohol to bring home to share
 5           with your grandson is a violation of the
 6           policy?
 7    A      That is not what Gloria was terminated for.
 8                        Gloria was terminated for
 9           purchasing alcohol for a minor, which is in
10           the second paragraph -- excuse me -- the
11           second sentence in the first paragraph.
12                        It says that you have to
13           comply with all federal, state, and town
14           guidelines.  And that's what Gloria was
15           terminated for.
16    Q      For violating a state guideline?
17    A      For violating a state law.
18    Q      Okay.  The state law at issue says that a
19           grandparent can purchase alcohol to share
20           with their grandson in their home, isn't
21           that right?
22    A      That is -- I believe that is a conflation
23           of the truth.
24    Q      What do you mean by that?
```

```
 1    Q    Why is that?

 2    A    Because that's not what's in question in

 3         the alcohol policy.  It's about following

 4         state laws.

 5    Q    And in your view, the state law saying that

 6         she can have it at home after work at

 7         dinner with her grandson doesn't matter?

 8    A    I didn't hear the question.

 9    Q    It said -- the state law that specifically

10         says that someone like Gloria can purchase

11         alcohol, bring it home, and have it with

12         her grandson at dinner doesn't matter to

13         you?

14    A    In the state law, it says that it cannot be

15         purchased for a minor.  It says that it can

16         be consumed in your own home, but that's

17         not what Gloria was terminated for.

18    Q    What was she terminated for?

19    A    For purchasing alcohol for a minor.

20    Q    What's your evidence that that's what she

21         did?

22    A    I have a witness who saw her put it in a

23         shopping cart and her admitting to that on

24         two occasions.
```

```
 1    Q      And you don't have any evidence that she
 2           provided this to the minor, correct?
 3    A      I have her saying that she was -- it was
 4           for her grandson.  That is the evidence
 5           that I have, is her statement.
 6    Q      But you don't have any evidence that she
 7           provided the alcohol to her grandson,
 8           correct?
 9    A      Yes, I don't know what became of the
10           alcohol that she purchased.
11    Q      So you're saying that you terminated her
12           because you believed Gloria Cocuzzo
13           intended to give the alcohol to her
14           grandson, correct?
15    A      We terminated her because she admitted to
16           purchasing alcohol for her grandson.
17    Q      Okay.  Before you terminated Ms. Cocuzzo,
18           did you ask for Mr. Maguire's input into
19           that decision?
20                     MS. LEMIRE:  Sorry, Tim; you
21           broke up just a little bit.
22    Q      Okay.  Prior to your termination of
23           Ms. Cocuzzo, did you ask Mr. Maguire for
24           his input?
```

```
 1    A    Yes, I would, as with any termination.

 2    Q    What was the substance of that

 3         conversation?

 4    A    I had told him about what had occurred,

 5         what she admitted to, and he agreed there

 6         was nothing else you can do other than

 7         termination when someone violates the law.

 8    Q    And so you said "violates the law."

 9                   How did Ms. Cocuzzo violate

10         the law?

11    A    She purchased alcohol for a minor.

12    Q    You're saying she intended to do that,

13         right?

14                   This violation of law should

15         never have occurred; you've admitted that,

16         correct?

17    A    No.

18                   MS. LEMIRE:  Objection.  You

19         can answer.

20    A    She admitted to buying alcohol for her

21         grandson, Kevin.

22    Q    Do you understand -- you're saying that

23         Ms. Cocuzzo violated the law.

24                   You know that's a criminal
```

| | | |
|---|---|---|
| 1 | | law, correct? |
| 2 | A | I know it's a law.  I know we have to abide |
| 3 | | by it.  But... |
| 4 | Q | Well, I can show you the law; it's a |
| 5 | | criminal law. |
| 6 | | You don't understand that |
| 7 | | furnishing alcohol to a minor is a crime? |
| 8 | | Do you understand that? |
| 9 | A | I understand that she violated the law, |
| 10 | | yeah. |
| 11 | Q | Okay.  And do you understand the law is a |
| 12 | | criminal law? |
| 13 | A | I didn't understand the nature of the law. |
| 14 | Q | Did you report Ms. Cocuzzo to the police? |
| 15 | A | No. |
| 16 | Q | Why? |
| 17 | A | Because I didn't know it was a criminal |
| 18 | | law. |
| 19 | Q | Well, you've alleged in this case that what |
| 20 | | Ms. Cocuzzo did was illegal, isn't that |
| 21 | | right? |
| 22 | A | Yes. |
| 23 | Q | You've alleged that under oath in your |
| 24 | | Position Statement to the MCAD that we've |

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

```
1              looked at, correct?

2     A        Yes.

3     Q        It's illegal because you say she's violated

4              a criminal law, correct?

5                        MS. LEMIRE:  Objection.  You

6              can answer.

7     A        Yes.  She violated a state law.

8     Q        And the violation you say she had was that

9              she purchased alcohol, and she had the

10             intent to furnish it to her grandson,

11             correct?

12                       MS. LEMIRE:  Objection.  Asked

13             and answered.  You can answer.

14    A        She told me that she bought it for her

15             grandson.

16    Q        Right.  And you think that having the

17             intent to give it to a minor is a violation

18             of the law, correct?

19    A        She told me that she purchased it for him,

20             so it's slightly different than intent.

21    Q        Well, her intent was to provide it to him,

22             is that right; is that your understanding?

23    A        If it was for him, I -- the logical

24             conclusion for that would be that she was
```

```
 1                        MS. LEMIRE:  You said
 2          Exhibit 14, right, Tim?  We lost the last
 3          part of that.
 4                        MR. PERRY:  I'm sorry.  Let me
 5          ask it again.
 6     Q    Is there any other basis for the
 7          termination of Gloria Cocuzzo, from your
 8          perspective, other than she violated the
 9          statutes that's contained in
10          Exhibit No. 14?
11     A    She violated the state law, and this would
12          be the relevant law.
13     Q    My question is a little bit different.
14                        Is there any other basis for
15          your termination of Gloria Cocuzzo?
16     A    There were no other reasons other than the
17          violation of the alcohol policy.
18     Q    Well, the violation of the policy is the
19          violation of this statute, correct?
20     A    The violation of the law, yes, which I --
21          to my understanding, is this statute.
22     Q    And there's no other reason, other than the
23          violation of this statute, correct?
24     A    Yes.  In conjunction with the termination
```

HOLLINGSWORTH & ASSOCIATES
(617) 281-6457

136

```
 1            of -- sorry -- the violation of the alcohol

 2            policy.  Her purchasing alcohol was the

 3            only reason that she was terminated.

 4    Q       Now, have you reviewed the production of

 5            documents that Trader Joe's has made that

 6            show other terminations of employees of

 7            violations of the alcohol policy?

 8    A       I -- there's -- I don't know which document

 9            you're referencing.

10                        MR. PERRY:  Could you go back

11            to Exhibit No. 11.

12    Q       I'm going to show you Trader Joe's Bates

13            TJ 0184.  Okay?

14                        Do you understand that

15            Ms. Cocuzzo, through me, has asked for

16            terminations by Trader Joe's based upon

17            violation of the alcohol policy?

18    A       I wouldn't have known what she asked you

19            for.  But...

20    Q       You never saw the document request, is that

21            right?

22    A       Correct.

23    Q       And do you know that we've asked you for

24            those documents as well?
```

APP0170

# Exhibit D

APP0171

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA COCUZZO,

                Plaintiff,

       v.

TRADER JOE'S COMPANY and JENNIFER
GILLUM,

                Defendants.

Civil Action No. 1:22-cv-10162-LTS

**SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR ANSWERS
TO INTERROGATORIES PROPOUNDED UPON DEFENDANT TRADER JOE'S
COMPANY**

      Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules, Trader

Joe's East Inc. ("Trader Joe's") hereby objects and offers the following supplemental responses to

Plaintiff Gloria Cocuzzo's First Set of Interrogatories, as follows:

**QUALIFICATIONS AND GENERAL OBJECTIONS**

1.   Trader Joe's objects to the definitions contained in Plaintiff's Interrogatories to the extent those

     definitions impose obligations beyond those contained in the Federal Rules of Civil Procedure,

     Local Rules and/or the Court's order.

2.   Trader Joe's objects to the Interrogatories to the extent that the Interrogatories seek to impose

     a duty on Trader Joe's beyond that required by the Federal Rules of Civil Procedure, Local

     Rules and/or the Court's order.

3.   Trader Joe's further objects to the Interrogatories to the extent that the Interrogatories seek:

     a.   information that represents attorney work-product;

b.  information that is protected by the attorney-client privilege or any other applicable privilege;

c.  information that has been prepared in anticipation of litigation at the request of counsel;

d.  information concerning matters of public record;

e.  any private, confidential or sensitive information of any current or former employee, customer, or business partner of Trader Joe's; and

f.  information that requires Trader Joe's to draw a legal conclusion.

4.  Trader Joe's objects generally to the Interrogatories to the extent that they seek confidential commercial information of a proprietary nature concerning Trader Joe's business practices, relationships, or trade secrets, or those of its customers or business partners.

5.  Trader Joe's relies upon and asserts any and all such privileges, and any disclosure of privileged information is inadvertent and is not to be deemed a waiver thereof.

6.  Trader Joe's objects that Plaintiff's Interrogatories, together with the document requests and deposition notices submitted therewith, were propounded for improper purposes, including to harass, cause unnecessary delay, and/or needlessly increase the cost of litigation, and therefore these Interrogatories were propounded in bad faith.

7.  Trader Joe's objections and responses to the Interrogatories are based upon information now known to Trader Joe's.  Trader Joe's has not completed its discovery or preparation for trial in this action.  The responses set forth herein are made without waiving the following:

a.  The right to object on the grounds of competency, privilege, relevance, materiality or any other proper ground to the use of any information produced herein, in whole or in part, for any purpose, in any subsequent proceeding in this action or in any other action;

b.  The right to object on any and all proper grounds, at any time, to other requests or other discovery procedures involving or relating to the subject matter of the requests responded to herein; and

c.  The right, at any time, to revise, correct, modify, supplement or clarify any of the responses provided herein.

All of Trader Joe's responses are made subject to the foregoing objections and qualifications.

## INTERROGATORY ANSWERS

### INTERROGATORY NO. 12

If you claim that Cocuzzo was terminated in whole or in part due to her violation of Trader Joe's Alcohol Policy, identify each and every employee who has been disciplined for any violation of Trader Joe's Alcohol Policy at any of its stores from January 1, 2015 - present.

### RESPONSE TO INTERROGATORY NO. 12

Trader Joe's objects to Interrogatory no. 12 to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine.  Trader Joe's further objects that this Interrogatory is overly broad in time and scope, and that it seeks information about individuals who are not similarly situated to Plaintiff.  Objecting further, the terms "Alcohol Policy" and "discipline" are undefined, ambiguous, and/or susceptible to multiple interpretations.  Objecting further, this Interrogatory seeks sensitive, private or confidential information about individuals, the disclosure of which could unduly infringe upon the privacy interest of such individuals.  Objecting further, it would be unduly burdensome and impracticable to identify "each and every employee who has been disciplined for any violation of Trader Joe's Alcohol Policy," without further limitation.  Subject to and without waiving the foregoing objections, Trader Joe's states that at this time, it is aware of the following individuals who were "disciplined for any violation

of Trader Joe's Alcohol Policy at any of its stores from January 1, 2015 – present": K.H.,

terminated July 8, 2016, date of birth June 12, 1993; M.A., terminated March 17, 2017, date of

birth March 11, 1967; M.P., terminated November 29, 2017, date of birth April 14, 1965; J.C.,

terminated June 5, 2021, date of birth January 24, 2002.

Further responding, Trader Joe's states that, after making a reasonable inquiry, Trader Joe's is

aware of the following individuals disciplined or terminated for violations of the alcohol policy at

stores in Christopher Maguire's region from 2018 to present: M.A., disciplined November 12,

2019, date of birth October 1999; S.A., terminated February 10, 2022, date of birth June 1997;

L.C., terminated February 9, 2022, date of birth October 1992; B.D., disciplined November 19,

2022, date of birth December 2001; J.D., disciplined February 26, 2018, date of birth October

1981; J.L, disciplined January 26, 2023, date of birth April 1999; S.L., terminated February 26,

2018, date of birth January 1999; J.M., terminated February 13, 2022, date of birth December

1999; P.R., disciplined June 8, 2021, date of birth February 2001; M.S., disciplined November 20,

2022, date of birth June 2002.

Further responding, *see* documents produced in response to Request no. 81.

Trader Joe's East Inc.,

By Its Attorneys,


 /s/ Stephen T. Melnick
Stephen T. Melnick
smelnick@littler.com

LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone:   617.378.6000
Facsimile:    617.737.0052

Dated: February 7, 2022

## CERTIFICATE OF SERVICE

I, Stephen T. Melnick, Esq., hereby certify that on this 7th day of February, 2023, a true

copy of the foregoing document was served upon Plaintiff's counsel of record via email.

Timothy J. Perry
tperry@pkdllp.com
PERRY KRUMSIEK LLP
One Boston Place, Suite 2600
Boston, MA  02108
(617) 720-4300

/s/ Stephen T. Melnick_____
Stephen T. Melnick

AS TO ANSWERS:

I, Laurie Mead, state under the penalties of perjury that I have read the foregoing Interrogatory Responses which, as corporate responses, are prepared with the assistance of employees of Trader Joe's and others upon whose information I have relied; the responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore are necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of preparing these answers; Trader Joe's reserves the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; subject to these limitations, these answers are true to the best of my knowledge, information and belief.

*Laurie Mead*
Laurie Mead

APP0178

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA COCUZZO,

                PLAINTIFF,

     V.

TRADER JOE'S EAST INC. AND JENNIFER GILLUM,

                DEFENDANTS.

Civil Action No. 1:22-cv-10162-LTS

## **DECLARATION OF CHRISTOPHER MAGUIRE**

I, Christopher Maguire, hereby depose and state as follows:

1.     I am over the age of 18 and make the statements contained in this Declaration based on my personal knowledge.   I am competent to testify as to all facts stated herein.

2.     I am a Regional-Vice President at Trader Joe's.

3.     In my current position, I have access to and am familiar with the business records of Trader Joe's.

4.     Attached hereto as Exhibit 1 are true and accurate copies of documents reflecting discipline or terminations of Crew members for violations of the alcohol policy at stores in my region from 2018 to present, located after making a reasonable inquiry.

5.     Exhibit 1 consists of Trader Joe's business records, were made at or near the time by someone with knowledge, or from information transmitted by someone with knowledge; these records are kept in Trader Joe's regular course of business; and it is Trader Joe's regular practice to make these records.

6.      A Trader Joe's Crew Member purchasing alcohol for a person under 21 could place the store's liquor license in jeopardy.

7.      Gloria Cocuzzo's age played no part in Trader Joe's decision to end her employment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 23rd day of February 2023.

/s/    Christopher Maguire
         Christopher Maguire

APP0180

# Exhibit 1

# TRADER JOE'S
## Crew Member Incident Report

APP0181

Crew Member Name: J<sup>REDACT</sup>ED D<sup>REDACTED</sup>                     Store #:   561

Crew Member ID Number:___1167214____

Position:   Crew ☒      Merchant ☐      Mate ☐

Supervisor:   B<sup>REDA</sup>S<sup>REDACTE</sup><sub>D</sub>                     _____

Witness: J<sup>REDA</sup>R<sup>REDACTED</sup>                     _____

Date Written:  2/26/18_____

### Written Warning
(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances.)Your performance has been found to be unsatisfactory or unacceptable for the reasons set forth below:

J<sup>RED</sup><sub>ACT</sub>– On Friday 2/23/2018 you sold a bottle vodka illegally in our store to fellow crew member S<sup>REDACTED</sup> L<sup>RE</sup><sub>DA</sub>who is underage.  You brought it to the intention of a mate immediately after, which is commendable.  It is of the utmost importance that we are all extremely careful when selling alcoholic beverages to anyone, including fellow crew-members.  Infractions like these could cause us to lose our liquor license and would be an enormous hardship for this store and loss for Trader Joes.  We will expect a renewed focus from you while cashiering especially when it pertains the sale of alcoholic beverages.

Immediate and sustained improvement is required.  Any further incidents may result in further disciplinary action up to and including termination.

Crew Member Signature                          Date  2/26/18

Supervisor Signature                              Date  2/26/18

Witness Signature                                    Date  2/26/18

Signed Original To Human Resources

cc:  Copy To Crew Member
     Copy For Store Files

TJ 0326

# TRADER JOE'S
## Crew Member Incident Report

APP0182

Crew Member Name: S<sup>REDACTED</sup> I<sup>REDACTED</sup>                    Store #:    561

Crew Member ID Number:    1178387

Position:   Crew ☒     Merchant ☐     Mate ☐

Supervisor:   W<sup>REDACT</sup><sub>ED</sub>  W<sup>REDACTED</sup>

Witness: J<sup>REDA</sup><sub>CTED</sub> R<sup>REDACTED</sup>

Date Written:    2/26/18

### Written Warning

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice.  Store management will determine the appropriate action based on the particular facts and circumstances.)Your performance has been found to be unsatisfactory or unacceptable for the reasons set forth below:

S<sup>REDACTED</sup> – On Friday 2/23/2018 you purchased a bottle vodka illegally in our store from fellow crew member J<sup>RED</sup><sub>ACT</sub>D<sup>REDAC</sup><sub>TED</sub> Not only is this an integrity violation, it is illegal for anyone under the age of 21 to purchase alcoholic beverages in Massachusetts.  You are here-by being terminated immediately.

Immediate and sustained improvement is required.  Any further incidents may result in further disciplinary action up to and including termination.

_____  _____     02/26/18
            Crew Member Signature                            Date

_____  _____     02/26/18
            Supervisor Signature                                Date

_____                                      2/26/18
            Witness Signature                                     Date

Signed Original To Human Resources

cc:  Copy To Crew Member
       Copy For Store Files                                                    TJ 0327

APP0183

# TRADER JOE'S
## Crew Member Incident Report

Crew Member Name: M$_{ED}^{REDACT}$ A$^{REDACTED}$      Store #: 537

Crew Member ID Number: 1198388

Position: Crew ☒    Merchant ☐    Mate ☐

Supervisor: A$_n^{REDACTE}$ M$^{REDACTED}$

Witness: K$_n^{REDACTE}$ D$^{REDACTED}$

Date Written: 11/7/2019

### Written Warning

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position. This statement will be added to your personnel file.)

On 11/02/2019 you failed to I.D. a customer buying alcohol in our Store for which we received an Affidavit for Age Verification on the Sale of Alcohol.

On 11/7/2019 Mates T$_{ACTE}^{RED}$ M$_{TED}^{REDAC}$ and K$_{TED}^{REDAC}$ W$_{ED}^{REDACT}$ asked you what our policy was regarding the purchase of Alcohol. You stated that you knew the policy and usually I.D. everyone that looks 30 and under. You were trained to this standard but failed to properly I.D. the Customer.

Immediate and sustained improvement is required. Any further incidents may result in further disciplinary action up to and including termination.



| | |
|---|---|
| M$^{REDACTED}$ A$^{REDACTED}$ <br> Crew Member Signature | 11/12/19 <br> Date |
| REDACTED <br> Supervisor Signature | 11/12/19 <br> Date |
| K$^{REDACTED}$ - R$^{REDACTED}$ <br> Witness Signature | 11/12/19 <br> Date |

A copy of this document will be placed in your personnel file.

TJ 0332

APP0184

# TRADER JOE'S
### Crew Member Incident Report

Crew Member Name: P<sup>REDACT</sup><sub>ED</sub> R<sup>REDACTED</sup>      Store #: 561

Crew Member ID Number: 1222252

Position: Crew ☒    Merchant ☐    Mate ☐

Supervisor: M<sup>REDA</sup><sub>CTED</sub> M<sup>REDACTED</sup>

Witness: M<sup>REDACT</sup><sub>ED</sub> K<sup>REDACTED</sup>

Date Written: 6/8/21

### Written Warning

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position. This statement will be added to your personnel file.)

P<sup>REDACT</sup><sub>ED</sub> on 6/1/21 you were observed asking a customer for their identification while ringing on register. The customer informed you that they did not have their ID but you proceeded with the transaction selling them alcohol. When you were hired you signed our Alcohol Sale Guidelines that clearly state our policy of asking any person who appears under the age of 40 for their ID, which this customer clearly looked under the age of 40. This is an important policy that allows us to sell alcohol to those who are of age and to prevent underage drinking in our neighborhood. In the future if you have any questions relating to an alcohol sale, ring a 3 bell for a mate to assist you.

Immediate and sustained improvement is required. Any further incidents may result in further disciplinary action up to and including termination.

Crew Member Signature         Date 6/8/21

Supervisor Signature         Date 6/8/21

Witness Signature         Date 6/8/21

A copy of this document will be placed in your personnel file.

TJ 0333

# TRADER JOE'S
## Crew Member Incident Report

Crew Member Name: L<sup>REDA</sup><sub>CTED</sub> C<sup>REDACTED</sup> _____  Store #: 561 _____

Crew Member ID Number: 1153057 _____

Position:  Crew ☒   Merchant ☐   Mate ☐

Supervisor: M<sup>RED</sup><sub>ACT</sub>K<sup>REDACTED</sup> _____

Witness: S<sup>REDAC</sup><sub>TED</sub> G<sup>REDACTED</sup> _____

Date Written: 02/09/22 _____

### Termination

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position. This statement will be added to your personnel file.)

L<sup>REDA</sup><sub>CTED</sub> on 02/06/22, you gave a crew discount for an alcohol purchase to a customer who you are familiar with outside of work. The customer is not a crew member. As you are aware, the crew discount is available for crew members and their spouses and alcohol is not to be discounted in the state of Massachusetts. Based on your actions, your employment with Trader Joe's is terminated effective immediately.

_____  2/9/22
Crew Member Signature       Date

_____  2/9/22
Supervisor Signature        Date

_____  2-9-22
Witness Signature          Date

A copy of this document will be placed in your personnel file.

TJ 0334

APP0186

# TRADER JOE'S
## Crew Member Incident Report

Crew Member Name: S**REDACTED**ED  A**REDACTED**

Crew Member ID Number: 1210390

Store #: 561

Position:  Crew ☒     Merchant ☐     Mate ☐

Supervisor: M**RE**DA K**REDACTED**

Witness: D**REDA**CTED K**REDACTED**D

Date Written: 02/10/22

## Termination

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position. This statement will be added to your personnel file.)

S**REDACTED**ED  on 01/31/22 and 02/05/22, you gave a crew discount for alcohol purchases to a customer who you are familiar with outside of work. The customer is not a crew member. As you are aware, the crew discount is available for crew members and their spouses and alcohol is not to be discounted in the state of Massachusetts. Based on your actions, your employment with Trader Joe's is terminated effective immediately.

**REDACTED**  **REDACTED**

2/10/22
_____    Date
Crew Member Signature

**REDACTED**
2/10/22
_____    Date
Supervisor Signature

**REDACTE**D  **REDACTED**
2/10/22
_____    Date
Witness Signature

A copy of this document will be placed in your personnel file.

TJ 0335

APP0187

# TRADER JOE'S
## Crew Member Incident Report

Crew Member Name: J<sup>REDAC</sup><sub>TED</sub> M<sup>REDACTED</sup> _____     Store #: 561___

Crew Member ID Number: 1204466_____

Position:   Crew ☒      Merchant ☐      Mate ☐

Supervisor: M<sup>RED</sup><sub>ACT</sub>K<sup>REDACTED</sup>_____

Witness: K<sup>REDA</sup><sub>CTED</sub> M<sup>REDACTED</sup> _____

Date Written: 02/13/22_____

## Termination

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice.  Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position.  This statement will be added to your personnel file.)

J<sup>REDAC</sup><sub>TED</sub> on 02/07/22, you rang up a customer who is also one of your personal acquaintances.  The customer had two cans of hard cider, however you only rang the customer up for one.  Based on your actions, we are no longer comfortable having you in our employ.  As such, your employment with Trader Joe's is terminated effective immediately.

| | |
|---|---|
| Crew Member Signature | 2/13/22  Date |
| Supervisor Signature | 2/13/22  Date |
| Witness Signature | 2/13/22  Date |

A copy of this document will be placed in your personnel file.

# TRADER JOE'S

## Crew Member Incident Report

APP0188

Crew Member Name: B**REDACTED**D**R**L**REDACTED**          Store #: 568

Crew Member ID Number: 1230882

Position: Crew ☒   Merchant ☐   Mate ☐

Supervisor: S**REDACTED** M**REDACTED**

Witness: O**REDACTED** S**REDACTED**

Date Written: 11/18/22

### Written Warning

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position. This statement will be added to your personnel file.)

On 10/4/2022 at 6:20 p.m. you failed to ID a customer for the purchase of alcohol in our Store for which we received an Affidavit for Age Verification on the Sale of Alcohol.

Immediate and sustained improvement is required. Any further incidents may result in further disciplinary action up to and including termination.

_____   11/19/22
Crew Member Signature        Date

_____   11/19/22
Supervisor Signature          Date

_____   11/19/22
Witness Signature             Date

A copy of this document will be placed in your personnel file.

TJ 0337

# TRADER JOE'S

## Crew Member Incident Report

APP0189

Crew Member Name: ___M<sup>RE</sup><sub>DA</sub> S<sup>REDACTED</sup>_____      Store #:  568

Crew Member ID Number: ___1223171____

Position:   Crew ☒      Merchant ☐      Mate ☐

Supervisor: ___S<sup>RED</sup><sub>ACT</sub> M<sup>REDACTED</sup>_____

Witness: A<sup>RE</sup><sub>DA</sub> S<sup>REDACTED</sup> _____

Date Written: __11/20/2022_____

### Written Warning

(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position. This statement will be added to your personnel file.)

On 10/18/2022 at 6:00 p.m. you failed to ID a customer for the purchase of alcohol in our Store for which we received an Affidavit for Age Verification on the Sale of Alcohol.

Immediate and sustained improvement is required. Any further incidents may result in further disciplinary action up to and including termination.

REDACTED                    REDACTED

_____          11/20/22
Crew Member Signature              Date

_____          11/20/22
Supervisor Signature              Date

REDACTED
_____          11/20/22
Witness Signature                 Date

A copy of this document will be placed in your personnel file.

# TRADER JOE'S
## Crew Member Incident Report

APP0190

Crew Member Name: J<sup>RED</sup>L REDACTED                    Store #:  501

Crew Member ID Number: ___1250170___

Position:  Crew ☒    Merchant ☐    Mate ☐

Supervisor: N REDACTED T REDACTED

Witness: M RED G REDACTED

Date Written: __1/7/2023__

### Written Warning
(Your employment is at will, which means Trader Joe's may terminate it without cause or notice. Store management will determine the appropriate action based on the particular facts and circumstances. Should you disagree with any of the information contained in this document, you may submit a written statement explaining your position. This statement will be added to your personnel file.)

J REDA On 1/2/2023 you failed to request identification for a member of our Alcohol Age REDACTED
Verification service during the checkout process which included the sale of alcohol. J
our alcohol policy states that it is the Crew Members responsibility to check for proper identification for anyone who appears to be under the age of 35. It also states that any performance issues or violation that is not in line with the alcohol policy or standards is subject to discipline actions.

Immediate and sustained improvement is required. Any further incidents may result in further disciplinary action up to and including termination.

(Crew Member Signature)                 1/26/23
                                         Date

Supervisor Signature                     1/26/23
                                         Date

Witness Signature                        1/26/23
                                         Date

A copy of this document will be placed in your personnel file.          TJ 0339