UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

Case No. 23-1695

GLORIA COCUZZO,

Plaintiff - Appellant,

v.

TRADER JOES EAST INC.; JENNIFER GILLUM,

Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**BRIEF OF DEFENDANTS-APPELLEES,
TRADER JOE'S EAST, INC. AND JENNIFER GILLUM**

Stephen T. Melnick, First Cir. No. 1135908
smelnick@littler.com
Ellen E. Lemire, First Cir. No. 1184730
elemire@littler.com
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, Massachusetts  02110
Telephone: 617.378.6000
Facsimile:  617.737.0052

*Attorneys for Defendants-Appellees,
Trader Joe's East, Inc. and Jennifer Gillum*

# DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Trader Joe's East, Inc. by and through its attorneys, states as follows:  Trader Joe's East Inc. is a wholly-owned subsidiary of Trader Joe's Company.  Trader Joe's Company is a wholly-owned subsidiary of T.A.C.T. Holding, Inc. and there are no other parent corporations or publicly held corporations that own ten percent (10%) or more of its stock.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT .................................................................i

TABLE OF CONTENTS.................................................................. ii

TABLE OF AUTHORITIES .........................................................iv

I.    STATEMENT OF THE CASE ..................................................1

      A.    Factual Background...........................................................1

            1.    Cocuzzo's Employment at Trader Joe's ...................................1

            2.    Cocuzzo Buys Beer for Her Underage Grandson....................2

            3.    Other Crew Members Disciplined for Alcohol Policy
                  Violations ...................................................................4

      B.    Relevant Procedural History and Rulings Presented for Review ........5

II.   SUMMARY OF THE ARGUMENT .............................................6

III.  ARGUMENT.........................................................................8

      A.    Standard of Review ...........................................................8

      B.    Legal Framework ............................................................8

      C.    Trader Joe's Proffered a Legitimate, Non-Discriminatory
            Reason for Cocuzzo's Termination....................................10

      D.    Cocuzzo Failed To Demonstrate Pretext...........................13

            1.    Trader Joe's Reasonably Believed that Cocuzzo Violated
                  the Alcohol Policy....................................................14

            2.    Cocuzzo Was Not Treated Differently from Similarly
                  Situated Employees.................................................18

            3.    Trader Joe's Reason for Terminating Cocuzzo Has Been
                  Consistent..............................................................20

            4.    There Was No Evidence of Animus In Gillum's Annual
                  Performance Review of Cocuzzo ..............................23

5.    Gillum Offering Cocuzzo the Opportunity to Retire Does Not Demonstrate Pretext ........................................................... 24

6.    Statistics Do Not Support Cocuzzo's Allegations of Pretext ........................................................................................ 27

E.    Any "Direct Evidence" Argument Has Been Forfeited ..................... 28

F.    The District Court did not Err in Dismissing the Individual Claims Against Gillum ........................................................................ 29

IV.    CONCLUSION .............................................................................................. 30

RULE 32(G) CERTIFICATE OF COMPLIANCE ................................................. 30

CERTIFICATE OF SERVICE .............................................................................. 32

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Adamson v. Walgreens Co.*,
   750 F.3d 73 (1st Cir. 2014) ......................................................................8, 13

*Barbour v. Dynamics Research Corp.*,
   63 F.3d 32 (1st Cir. 1995) ...............................................................................10

*Bennett v. St.-Gobain Corp.*,
   507 F.3d 23 (1st Cir. 2007) .............................................................................17

*Bonilla-Ramirez v. MVM, Inc.*,
   904 F.3d 88 (1st Cir. 2018) .............................................................................19

*Brader v. Biogen Inc.*,
   983 F.3d 39 (1st Cir. 2020) .............................................................................13

*Brandt v. Fitzpatrick*,
   957 F.3d 67 (1st Cir. 2020) ........................................................................8, 29

*Burton v. Freescale Semiconductor, Inc.*,
   798 F.3d 222 (5th Cir. 2015) ..........................................................................23

*Canfield v. Con-Way Freight, Inc.*,
   578 F. Supp. 2d 235 (D. Mass. 2008) ............................................................29

*Collazo-Rosado v. Univ. of P.R.*,
   765 F.3d 86 (1st Cir. 2014) ......................................................................20, 22

*Diaz v. City of Somerville*,
   59 F.4th 24 (1st Cir. 2023) .............................................................................19

*Dusel v. Factory Mut. Ins. Co.*,
   52 F.4th 495 (1st Cir. 2022) .....................................................................11, 18

*Dziamba v. Warner & Stackpole LLP*,
   56 Mass. App. Ct. 397, 778 N.E.2d 927 (2002) ............................................26

*Echevarria v. AstraZeneca Pharm. LP*,
   856 F.3d 119 (1st Cir. 2017) ....................................................................20, 22

iv

*Egan v. Hosp. Serv. Dist. No. One*,
No. 12-1352, 2013 U.S. Dist. LEXIS 89803
(E.D. La. June 26, 2013) ..................................................................25

*Espinal v. Nat'l Grid NE Holdings 2, LLC*,
693 F.3d 31 (1st Cir. 2012) ..............................................................16

*Fantini v. Salem State Coll.*,
557 F.3d 22 (1st Cir. 2009) ..............................................................29

*Fried v. Wynn Las Vegas, LLC*,
No. 20-15710, 2021 U.S. App. LEXIS 34269
(9th Cir. Nov. 18, 2021) ...................................................................11

*Gómez-González v. Rural Opportunities, Inc.*,
626 F.3d 654 (1st Cir. 2010) ..............................................................9

*Henderson v. MBTA*,
977 F.3d 20 (1st Cir. 2020) ................................................10, 20, 22

*Hidalgo v. Overseas Condado Ins. Agencies, Inc.*,
120 F.3d 328 (1st Cir. 1997) ............................................................11

*Johnson v. Johnson*,
23 F.4th 136 (1st Cir. 2022) .............................................................17

*Kouvchinov v. Parametric Tech. Corp.*,
537 F.3d 62 (1st Cir. 2008) ..............................................................16

*LeBlanc v. Great Am. Ins. Co.*,
6 F.3d 836 (1st Cir. 1993) ................................................................27

*Loeb v. Textron, Inc.*,
600 F.2d 1003 (1st Cir. 1979) ..........................................................11

*Martin v. Bayland Inc.*,
181 Fed. Appx. 422 (5th Cir. 2006) .................................................25

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ...................................................................*passim*

*Mesnick v. Gen. Elec. Co.*,
950 F.2d 816 (1st Cir. 1991) ..............................................................9

*Palmer v. Liberty Univ., Inc.*,
   No. 6:20-cv-31, 2021 U.S. Dist. LEXIS 236875
   (W.D. Va. Dec. 10, 2021) ...................................................................26

*Patrick v. Ridge*,
   394 F.3d 311 (5th Cir. 2004) ......................................................11, 12

*Patten v. Wal-Mart Stores East, Inc.*,
   300 F.3d 21 (1st Cir. 2002)..............................................................28

*Pina v. Children's Place*,
   740 F.3d 785 (1st Cir. 2014)...............................................................8

*Ramos-Santiago v. WHM Carib, LLC*,
   919 F.3d 66 (1st Cir. 2019)...............................................................11

*Ray v. Ropes & Gray LLP*,
   799 F.3d 99 (1st Cir. 2015).............................................................8, 13

*Ring v. SRS Distrib., Inc.*,
   No. 19-cv-10896, 2021 U.S. Dist. LEXIS 134058
   (D. Mass. July 19, 2021)...................................................................29

*Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*,
   181 F.3d 15 (1st Cir. 1999)...............................................................18

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993).........................................................................10

*Tejada-Batista v. Morales*,
   424 F.3d 97 (1st Cir. 2005)...............................................................28

*Tombeno v. FedEx Corp. Servs., Inc.*,
   284 F. Supp. 3d 80 (D. Mass. 2018)...................................................8

*Treadway v. Cal. Prod. Corp.*,
   659 Fed. Appx. 201 (6th Cir. 2016)..................................................25

*United States v. Zannino*,
   895 F.2d 1 (1st Cir.1990)..................................................................28

*Valls v. O'Sullivan Corp.*,
   67 Mass. App. Ct. 1113, 856 N.E.2d 206 (2006) ..............................16

*Velez v. Thermo King de Puerto Rico, Inc.*,
585 F.3d 441 (1st Cir. 2009)..............................................................23

*Wooster v. Abdow Corp.*,
46 Mass. App. Ct. 665, 709 N.E.2d 71 (1999) ..................................16

*Zabala-De Jesus v. Sanofi-Aventis P.R.*,
959 F.3d 423 (1st Cir. 2020)................................................................9

*Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.*,
999 F.3d 37 (1st Cir. 2021)...........................................................26, 28

*Ziegler v. Beverly Enters.-Minn., Inc.*,
133 F.3d 671 (8th Cir. 1998) ..............................................................25

## Statutes

29 U.S.C. § 623 et seq...............................................................*passim*

M.G.L. c. 138, § 34 ..............................................................................15

M.G.L. c. 151B, § 1 et seq............................................................5, 8, 13

M.G.L. c. 151B, § 4(4A)......................................................................29

# I.    STATEMENT OF THE CASE[1]

## A.    Factual Background

### 1.    Cocuzzo's Employment at Trader Joe's

Trader Joe's is a chain of specialty grocery stores. Appendix ("APP") 94. Each store is staffed by a Captain (the manager in charge of the store) and Mates (assistant managers), and a non-supervisory staff of Merchants and Crew. Trader Joe's refers to its employees, collectively, as "Crew Members." APP 94-95.

Gloria Cocuzzo began employment at the Trader Joe's store in Brookline, Massachusetts in 2003, when she was 62 years old. APP 92-94. Cocuzzo began work as a Crew Member. APP 94-95. In 2012, when Cocuzzo was 70 years old, the store Captain at the time, Chris Maguire, promoted Cocuzzo to Merchant. APP 95-97, 118, 143.

Gillum became the Captain of the Brookline store in 2018. APP 152. In 2020, Gillum gave Cocuzzo a positive performance review; approved a $1,200 performance bonus for Cocuzzo; and gave Cocuzzo a $1.00 per hour raise, which Cocuzzo thought was "wonderful." APP 97-99.

Because the Brookline store sells alcohol, all Crew Members, including Cocuzzo, were subject to the store alcohol policy, and received training on selling alcohol. APP 100-03, 132, 133, 153-55. The Trader Joe's Brookline Alcohol Policy

---

[1]  Appellees accept Cocuzzo's Statement of Jurisdiction and Statement of Issues Presented for Review (Cocuzzo Br. at 1).

("the Alcohol Policy") states that "[n]o alcoholic beverage shall be sold to anyone who is under twenty-one (21) years of age or intoxicated." APP 132, 319. The policy explains that Trader Joe's responsibilities include "comply[ing] with all Federal, State and the Town of Brookline's Laws." *Id.* It also specifies procedures for verifying that a customer is twenty-one years of age, as well as the forms of ID that are acceptable for age verification. *Id.* The Alcohol Policy then specifies disciplinary action for violations as follows:

> **What is the disciplinary action for violating our Alcohol Policy?**
>
> Any Crew Member, Merchant, Mate, and/or Captain whose job performance or conduct violates our Alcohol Policy or is not in line with the company's standards will be subject to disciplinary action, which may range from a written warning to termination of employment. Any violation of federal, the State of Massachusetts, local laws, and the Town of Brookline's By-Laws may result in a fine and/or suspension of your store's liquor license, as well as a fine to the Crew Member who made the sale.

*Id.*

### 2. Cocuzzo Buys Beer for Her Underage Grandson

On Saturday, February 20, 2021, Cocuzzo was working her usual 10:00 a.m. to 6:30 p.m. shift. APP 104-05. Cocuzzo's 19-year old grandson, Kevin Quinn, also a Trader Joe's Crew Member, was working a shift that day as well. APP 91, 105. Cocuzzo and Quinn walked together to the alcohol section of the store, where Quinn selected beer from the shelf. APP 105-07. Quinn handed Cocuzzo the beer, and Cocuzzo went to the registers and purchased the beer. APP 105-07. The beer was

for Quinn's consumption. APP 106. When asked at her deposition, "You purchased the beer for Mr. Quinn?" Cocuzzo responded, "Yes." APP 107.

Another Trader Joe's Crew Member saw Cocuzzo buy the beer for Quinn, and reported the incident to store Captain Jennifer Gillum. APP 116, 156-57. Gillum approached Cocuzzo and asked her about the incident, and Cocuzzo confirmed that she had purchased beer for Quinn, an underage person. APP 108-09, 158-60. Cocuzzo did not tell Gillum that Cocuzzo purchased the beer for herself, or that she purchased it to later provide to guests at her home. *See* APP 108-09, 158-60.

Following that conversation, Gillum contacted Christopher Maguire, her Regional-Vice President. APP 164-65. Gillum told Maguire that an underage Crew Member had gone to the alcohol section, took alcohol from a shelf, gave the alcohol to Cocuzzo, and that Cocuzzo bought the alcohol. APP 139, 165. Gillum told Maguire that when Cocuzzo was asked about this, Cocuzzo admitted to purchasing alcohol for the Crew Member who happened to be her grandson and a minor. APP 139. Gillum said she was considering termination, and Maguire agreed that "there was nothing else you can do." APP 165.

On February 24, 2021, Gillum and Mate Brian Foote met with Cocuzzo. APP 111-12. Gillum explained to Cocuzzo that her employment was ending because of the beer purchase, but gave her the option to resign or retire. APP 113-14, 342. In her deposition, Cocuzzo was asked what reason she was given for her termination at

that meeting.  APP 114.  Cocuzzo testified, "[Gillum] said because of the – the incident with – with my purchase of – of the beer."  *Id*.  In the meeting, Cocuzzo initially chose to retire.  APP 114.

After the meeting, Cocuzzo sent an email to Gillum in which she said that she was "being fired."  APP 134.  Cocuzzo said her "termination was prompted by purchasing beer for [her] grandson, Kevin."  APP 134.  As a result, Gillum changed Cocuzzo's retirement to a termination, and asked her to sign a termination notice the following day, which Cocuzzo refused to do.  APP 135.

When Quinn reported to work shortly after, Gillum began to ask him about the circumstances of Cocuzzo buying the beer.  APP 501.  Not long into that conversation Quinn resigned.  *Id*.  Because he quit, Trader Joe's was unable to discipline him.  *See* APP 501-02, 528.

### 3.    Other Crew Members Disciplined for Alcohol Policy Violations

In Maguire's region, Trader Joe's has disciplined other Crew Members for violating the Alcohol Policy.  It terminated one Crew Member for purchasing alcohol while underage.  APP 173-74, 182.  It terminated two Crew Members for giving a crew discount for alcohol to customers who were not Crew Members.  APP 173-74, 185, 186.  It terminated one Crew Member for ringing up a customer who had two cans of hard cider, for only one can.  APP 173-74, 187.  All of these individuals were under 40.  APP 174.

Trader Joe's issued written warnings to six Crew Members for failing to check the identification of a customer buying alcohol. APP 173-74, 183, 184, 188, 189, 190. Four of these incidents involved Crew Members being tested by Trader Joe's alcohol verification service (APP 183, 188, 189, 190), and fifth involved a customer of unknown age (APP 184). Trader Joe's also issued a written warning to a Crew Member for failing to check the identification of another Crew Member, who turned out to be underage; the Crew Member who made the sale brought it to the attention of a Trader Joe's Mate immediately after. APP 173-74, 181. The underage Crew Member who purchased the alcohol was terminated. APP 173-74, 182. All of these Crew Members were under the age of 40 at the time of the discipline. APP 173-74, APP 233-35 (¶¶ 35-44), APP 537.

## B.    Relevant Procedural History and Rulings Presented for Review

Cocuzzo filed her Complaint on November 10, 2021. APP 10. In her Complaint, Cocuzzo alleged age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et seq., and the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, § 1 et seq. ("Chapter 151B"). APP 10-17. Defendants removed the case to federal court. Dist. Ct. Doc. No. 1. The parties engaged in extensive discovery: Cocuzzo served 92 document requests on Trader Joe's, 90 document requests on Gillum, 22 interrogatories on Trader Joe's, and 20 interrogatories on Gillum. APP 59. Cocuzzo

also took four depositions.  APP 60-61, 86.

Trader Joe's filed a motion for summary judgment on November 24, 2022.
APP 66.  Cocuzzo opposed that motion.  APP 191.  After oral argument, on July 28,
2023, the District Court granted the motion for summary judgment filed by
Defendants Trader Joe's and Jennifer Gillum.  APP 529-51.  The District Court also
granted, in part, Defendants' motion to strike portions of Cocuzzo's combined
statement of material facts (APP 212-35).[2]  APP 530.  Cocuzzo filed her notice of
appeal on August 21, 2023.  APP 553.

## II.    SUMMARY OF THE ARGUMENT

Appellant Cocuzzo admittedly purchased beer at Trader Joe's for someone
she knew to be a minor.  For this reason, Trader Joe's terminated her employment.
There is no evidence that Cocuzzo's age played any part in that decision.  Thus, the
District Court properly granted summary judgment for Trader Joe's and for
Cocuzzo's supervisor, Gillum.

Cocuzzo's age discrimination claims are analyzed under the three-stage
*McDonnell Douglas* test.  At the first stage, Cocuzzo must make out a prima facie
case of discrimination.  Trader Joe's assumes that Cocuzzo satisfied that.  At the
second stage, the burden of production shifts to Trader Joe's to articulate a

---

[2]  In this appeal, Cocuzzo does not argue that granting the motion to strike was in
error.

legitimate, non-discriminatory reason for Cocuzzo's termination. It has done so: it produced admissible evidence demonstrating that Cocuzzo knowingly purchased alcohol for her underage grandson.

For the third stage, Cocuzzo is required to prove by a preponderance of the evidence that the reason articulated by Trader Joe's was a pretext to mask age discrimination. The various arguments she advances are without merit. First, the record demonstrates the Trader Joe's reasonably believed that Cocuzzo violated the Alcohol Policy by purchasing beer for a minor. Second, the alleged comparators Cocuzzo identifies are not similarly situated to her, as they all neglected to check customers' identification. Others who committed knowing violations of the Alcohol Policy, like Cocuzzo, were terminated. Third, the reasons given by Trader Joe's for terminating Cocuzzo – her intentionally buying alcohol for a minor – have been consistent. Fourth, the allegation that Gillum failed to provide Cocuzzo with a performance review is unsupported by the evidence. Fifth, Gillum offering Cocuzzo the opportunity to retire in lieu of being terminated does not evidence age discrimination as a matter of law. Sixth, the statistics argument Cocuzzo makes has no basis in the record. Lastly, because there is no evidence of age discrimination, the derivative claim against Gillum as an individual was properly dismissed. The decision below should be affirmed.

# III. ARGUMENT

## A. Standard of Review

The District Court's grant of summary judgment is reviewed *de novo*. *Brandt v. Fitzpatrick*, 957 F.3d 67, 74 (1st Cir. 2020). The Court should draw all reasonable inferences in Cocuzzo's favor, but should not "draw unreasonable inferences or credit bald assertions, empty conclusions," or "rank conjecture." *Id*. at 75 (quoting *Pina v. Children's Place,* 740 F.3d 785, 795 (1st Cir. 2014)). "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Brandt*, 957 F.3d at 75 (quoting *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 116-17 (1st Cir. 2015)).

## B. Legal Framework

Cocuzzo brings claims under the ADEA and Chapter 151B. "The analysis of a discrimination claim filed pursuant to the ADEA and Chapter 151B are so similar that they can be analyzed together." *Tombeno v. FedEx Corp. Servs., Inc.*, 284 F. Supp. 3d 80, 86 (D. Mass. 2018) (citing *Adamson v. Walgreens Co.*, 750 F.3d 73, 78 (1st Cir. 2014)). Under either statute, "[i]t is the employee's burden to prove that but for [her] employer's discrimination, [she] would not have been terminated." *Id*.

Cocuzzo proceeds under the three-step burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See* Cocuzzo Br.

8

at 7. "The focus at the first step of the inquiry under this burden-shifting framework is on whether the plaintiff has put forth evidence from which a juror reasonably could find that a prima facie case of age discrimination has been established." *Zabala-De Jesus v. Sanofi-Aventis P.R.*, 959 F.3d 423, 428 (1st Cir. 2020). At summary judgment, Trader Joe's assumed (*arguendo*) that Cocuzzo could make out her prima facie case, and will assume so now as well.

"If the plaintiff succeeds in getting past this first step of the inquiry, then, at the second step, the defendant must proffer 'a legitimate, nondiscriminatory reason for' the employee's termination." *Id.* (quoting *Mesnick v. Gen. Elec. Co*., 950 F.2d 816, 823 (1st Cir. 1991)). Then, the burden shifts "back to the plaintiff, who must then show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory." *Id.* (quoting *Gómez-González v. Rural Opportunities, Inc*., 626 F.3d 654, 662 (1st Cir. 2010)).

Trader Joe's met its burden of production to proffer a legitimate, nondiscriminatory reason for Cocuzzo's termination. Cocuzzo cannot demonstrate that Trader Joe's proffered reason was a pretext to mask discrimination. The Court should affirm the decision below.

## C. Trader Joe's Proffered a Legitimate, Non-Discriminatory Reason for Cocuzzo's Termination

Cocuzzo argues that Trader Joe's "failed to proffer a legitimate, non-discriminatory reason for the termination." Cocuzzo Br. at 7. This is unavailing. The second step of the *McDonnell Douglas* test "is not an onerous requirement, as the employer bears only a burden of production." *Henderson v. MBTA*, 977 F.3d 20, 43 (1st Cir. 2020). "The determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment. For the burden-of-production determination necessarily <u>precedes</u> the credibility assessment stage." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 38 (1st Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993), emphasis in original). Or, as this Court held:

> the employer's burden to "articulate" a legitimate, nondiscriminatory reason is not a burden to persuade the trier that he was in fact motivated by that reason and not by a discriminatory one. Rather it is a burden of production I.e., a burden to articulate or state a valid reason, following which the complainant must show that the reason so articulated or stated is a mere pretext or "cover-up" for what was in truth a discriminatory purpose. This, indeed, is only logical. If an employer were to prove that he was motivated by a legitimate reason, there would be no room left for showing that that reason was a "pretext," as pretext is "a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs."

*Loeb v. Textron, Inc*., 600 F.2d 1003, 1011-12 (1st Cir. 1979). "[T]he burden of persuasion remains plaintiff's at all times." *Hidalgo v. Overseas Condado Ins. Agencies, Inc*., 120 F.3d 328, 334 (1st Cir. 1997) (citation omitted).

As the District Court recognized, Trader Joe's articulated a legitimate, nondiscriminatory reason for Plaintiff's termination: Cocuzzo's violation of the Alcohol Policy by knowingly purchasing beer for an underage person. APP 542. This was supported by admissible evidence, namely <u>Cocuzzo's own admissions</u>. *Id.* Violating company policy is a legitimate, non-discriminatory reason to terminate an employee. *See Dusel v. Factory Mut. Ins. Co.*, 52 F.4th 495, 506 (1st Cir. 2022) (violation of company policy was a legitimate, non-discriminatory reason); *Ramos-Santiago v. WHM Carib, LLC*, 919 F.3d 66, 73-74 (1st Cir. 2019) (misconduct was a legitimate, non-discriminatory reason); *see also Fried v. Wynn Las Vegas, LLC*, No. 20-15710, 2021 U.S. App. LEXIS 34269, *3-5 (9th Cir. Nov. 18, 2021) (dismissing discrimination claims by employee who allowed underage customer to consume alcohol in violation of company policy).

Cocuzzo cites to only one decision finding that an employer did not satisfy the second stage of the *McDonnell Douglas* test, *Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004).[3] *See* Cocuzzo Br. at 8, 15. *Patrick* held that the employer failed at the

---

[3] The remaining cases cited (Cocuzzo Br. at 7-15) all found that the employer met its burden at the second stage.

second stage for two reasons, neither of which are pertinent here. In *Patrick*, the Fifth Circuit found that one of the reasons given by the employer for not promoting the plaintiff – that she was "not sufficiently suited" – was inadequate, because an employer must "articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee." 394 F.3d at 316-17. The Fifth Circuit then held that the second reason given for not promoting the plaintiff – the candidate that was hired was better qualified – was inadequate because that other candidate was not identified until <u>after</u> the plaintiff was rejected, and therefore the "after-acquired evidence" "could not have motivated the employer to deny the promotion" to the plaintiff. *Id.* at 318-19.

*Patrick* is readily distinguishable. Trader Joe's has articulated, in detail, the specific reason for Cocuzzo's termination: her violation of the Alcohol Policy by purchasing beer for a minor. Likewise, Trader Joe's is not relying on "after-acquired evidence:" Cocuzzo admitted to purchasing the beer for her grandson days before her termination. APP 139. Thus, the District Court correctly held that Trader Joe's articulated a legitimate reason for Cocuzzo's termination.

Cocuzzo's various other arguments in this section, ostensibly regarding step two of the *McDonnell Douglas* test (Cocuzzo Br. at 7-15), all seek to shift the burden from Cocuzzo to Trader Joe's. Cocuzzo is not arguing that Trader Joe's failed to <u>articulate</u> a legitimate reason for her termination; rather, Cocuzzo objects to the

reason articulated, itself. These are questions for the third step of the *McDonnell Douglas* test. Indeed, many of these arguments are repeated in that section of Cocuzzo's Brief (at 21-23). They certainly have no bearing on the question of whether Trader Joe's articulated a legitimate reason for Cocuzzo's termination. Trader Joe's will discuss these arguments in the pretext section, *infra*.

As the District Court properly decided, Trader Joe's met its modest burden to proffer a legitimate reason for Cocuzzo's discharge. APP 542. The decision below should be affirmed.

## D.    Cocuzzo Failed To Demonstrate Pretext

Because Trader Joe's articulated a legitimate, non-discriminatory reason for the termination, the burden shifts back to Cocuzzo. Under the ADEA, Cocuzzo must proffer sufficient evidence to raise a genuine issue of material fact as to: (1) whether Trader Joe's articulated reason for her termination was pretextual, and (2) whether the real reason for the adverse employment decision was discriminatory animus. *See Ray*, 799 F.3d at 113; *Adamson*, 750 F.3d at 78-79. Massachusetts law is slightly different, requiring proof of only the first element. That is, under Chapter 151B, a plaintiff "need only present evidence from which a reasonable jury could infer that the employer's facially proper reasons given for its action against [her] were not the real reasons for that action." *Brader v. Biogen Inc.*, 983 F.3d 39, 58-59 (1st Cir. 2020) (citations omitted).

Under either standard, there is no evidence of pretext. The evidence shows that Trader Joe's reasonably believed that Cocuzzo violated its Alcohol Policy; that no similarly situated employee was treated differently than Cocuzzo; that Trader Joe's has given the same reason for Cocuzzo's termination throughout this dispute; and Cocuzzo's remaining arguments find no support. Therefore, this Court should affirm the District Court's grant of summary judgment.

### 1. Trader Joe's Reasonably Believed that Cocuzzo Violated the Alcohol Policy

Cocuzzo argues "the Defendants, including Ms. Gillum herself, admitted that Ms. Cocuzzo's purchase of beer on the day in question did not violate Trader Joe's Alcohol Policy or relevant law." Cocuzzo Br. at 9.[4] This misstates the record. Despite repetitive questioning by Cocuzzo's counsel, Gillum consistently testified she believed that Cocuzzo purchasing beer for her underage grandson <u>was</u> contrary to Trader Joe's Alcohol Policy, and violated the law. APP 159, 160-61, 165-67, 509-18.[5] The one excerpt from Gillum's deposition set forth in Cocuzzo's Brief (at 10) intentionally omits, via ellipsis, a key part of Gillum's testimony:

---

[4] As noted, while these arguments appeared in the stage-two section of Cocuzzo's Brief, they bear on the stage-three question of pretext and therefore should be analyzed here.

[5] The contention that Appellees "did not … cite any [] testimony or other evidence that suggested that Ms. Cocuzzo in fact ever violated the Alcohol Policy" (Cocuzzo Br. at 10) is patently incorrect.

Q      Right. So now back to the policy – the policy simply says that no alcohol beverage shall be sold to anyone under 21 years of age or who is intoxicated, correct?

A      <u>That is one of the things the alcohol policy says</u>, yes.

Q      Okay. Now, she didn't violate that, because she didn't sell alcohol to anyone that day, correct?

A      Correct.

APP 379-80 (emphasis supplied). All Gillum admitted in this part of her deposition was that Cocuzzo did not violate <u>one portion</u> of the Alcohol Policy. As Gillum unambiguously testified: "When she [Cocuzzo] bought alcohol for a minor, it was a violation of the alcohol policy." APP 159.

Cocuzzo next argues that "[t]he purchase of alcohol by a grandmother for the later consumption at dinner in her home with her underage grandson is expressly permitted by Massachusetts law."[6] Cocuzzo Br. at 11 (citing M.G.L. c. 138, § 34). The statute cited says nothing of the sort: it forbids "deliver[ing] or procur[ing] to be delivered … any such [alcoholic] beverages or alcohol to or for use by a person who he knows or has reason to believe is under 21 years of age." M.G.L. c. 138, § 34. While a person is allowed to provide alcohol to a grandchild within "premises or property owned or controlled by the person charged," that was not the case here: a minor selected beer, handed it to Cocuzzo in a store, and Cocuzzo purchased it for

---

[6] Cocuzzo admitted that she was unaware of this law when she bought the alcohol for the underage person. APP 12, 110.

the minor in the store. That is, Cocuzzo "procur[ed] to be delivered … alcohol … for use by a person who [she] knows … is under 21 years of age," which is against the law.

But in the end, whether Cocuzzo actually violated the law or not is immaterial. At summary judgment, the Court's "task is limited to determining whether the employer believed in the accuracy of the reason given for the adverse employment action." *Espinal v. Nat'l Grid NE Holdings 2, LLC*, 693 F.3d 31, 35 (1st Cir. 2012) (quotations and citations omitted); *see Wooster v. Abdow Corp*., 46 Mass. App. Ct. 665, 673, 709 N.E.2d 71, 78 (1999) (to "withstand a defendant's motion for summary judgment, a plaintiff claiming discrimination must show something more than a conflict in the evidence regarding the employer's legitimate, nondiscriminatory explanation for the employment decision"). "This holds true even when the decisionmaker is relying on information that may later prove to be inaccurate. In other words, it is not enough for a plaintiff to show that the decisionmaker acted on an incorrect perception." *Kouvchinov v. Parametric Tech. Corp*., 537 F.3d 62, 67 (1st Cir. 2008). "It is the decisionmaker's reasonable belief that guides the inquiry." *Id*. at 70; *see also Valls v. O'Sullivan Corp*., 67 Mass. App. Ct. 1113, *5-6, 856 N.E.2d 206 (2006) (Rule 1:28 opinion) (holding lack of evidence supporting decisionmaker's termination decision does not preclude summary judgment). The record shows that Gillum believed that Cocuzzo violated the law

when she bought alcohol for an underage person. APP 159, 160-61, 162, 163, 164, 165-67, 168-69. Whether this was legally accurate or not is irrelevant; Gillum's belief, alone, is enough to justify granting summary judgment. *See Bennett v. St.- Gobain Corp.*, 507 F.3d 23, 31-32 (1st Cir. 2007) (affirming summary judgment because "the decisionmaker … believed the plaintiff" engaged in misconduct).

Cocuzzo further argues, in convoluted fashion, that supposedly because Gillum's "job [was] to train other employees like Ms. Cocuzzo in regards to [alcohol] laws," a "denial by Ms. Gillum that she didn't understand the relevant law applicable to Ms. Cocuzzo's termination rings hollow and lacks credibility." Cocuzzo Br. at 15. This was never raised below (*cf.* APP 191-211), and therefore cannot be asserted now. *See Johnson v. Johnson*, 23 F.4th 136, 143 (1st Cir. 2022) ("arguments not seasonably advanced below cannot be raised for the first time on appeal") (citations omitted). Nonetheless, this argument has no basis. Crew Members (like Cocuzzo) received alcohol training from a third party called TIPS, not from Gillum. APP 102-03, 133, 153. And the chain of logic Cocuzzo proposes – that Gillum did not actually believe that Cocuzzo violated the law because Gillum was responsible for training others – makes no sense, and does not undermine Gillum's clear testimony. Cocuzzo cannot cast any doubt on the reason proffered by Trader Joe's for her termination, and thus cannot establish pretext.

## 2. Cocuzzo Was Not Treated Differently from Similarly Situated Employees

Cocuzzo was treated the same as other similar Crew Members, and therefore cannot show pretext. "[T]o allow an inference of pretext from evidence of disparate treatment, [Cocuzzo] must identify a similarly situated comparator," that is, "someone who is substantially similar to those of the complainant in all relevant aspects." *Dusel*, 52 F.4th at 507 (quotations and citations omitted). In this, Cocuzzo "bears the burden of showing that the individuals with whom [she] seeks to be compared have been subject to the same standards and have engaged in the same conduct." *Rodriguez-Cuervos v. Wal-Mart Stores, Inc*., 181 F.3d 15, 21 (1st Cir. 1999) (quotations and citation omitted).

Cocuzzo points to six other Crew Members who allegedly violated the alcohol policy and received written warnings rather than termination. Cocuzzo Br. at 18. All six situations involved a Crew Member who neglected to check the identification of a customer buying alcohol. APP 173-74, 183, 184, 188, 189, 190. Four of these incidents involved Crew Members being tested by Trader Joe's alcohol verification service (APP 183, 188, 189, 190), and fifth involved a customer of unknown age (APP 184). Cocuzzo's claim that these situations resulted in "direct sale of alcohol to a minor" (Br. at 18) is unfounded. The sixth incident involved a Crew Member who sold alcohol to a coworker (who was underage) without checking her identification. APP 181. The Crew Member immediately realized his mistake, and

self-reported the potential violation to his manager.  *Id*.

On the other hand, Trader Joe's terminated four Crew Members who either purchased alcohol while underage, or who knowingly sold alcohol unlawfully (such as providing illegal discounts).  *See* APP 173-74, 182, 185, 186, 187.  <u>All</u> of these Crew Members who Trader Joe's terminated were under 40.  APP 173-74, APP 233-35 (¶¶ 35–44), APP 537.

In short, the record demonstrates that Trader Joe's consistently treats different violations of the Alcohol Policy – negligent mistake versus knowing misconduct – differently.  Cocuzzo did not neglect to check a customer's identification.  Instead she <u>intentionally</u> purchased alcohol for someone she knew to be underage.  The alleged comparators who were issued warnings were not similarly situated to her or to the other employees terminated for <u>intentional</u> conduct.  *See Diaz v. City of Somerville*, 59 F.4th 24, 32-33 (1st Cir. 2023) (police officer who "committed violent assaults and [] dissembled during the ensuing investigations" was not similarly situated to officers who committed assault, alone); *Bonilla-Ramirez v. MVM, Inc*., 904 F.3d 88, 94-95 (1st Cir. 2018) (co-workers were not similarly situated because they did not engage in similar misconduct).  Thus, Cocuzzo's alleged comparators are dissimilar and provide no evidence of pretext.

### 3. Trader Joe's Reason for Terminating Cocuzzo Has Been Consistent

Cocuzzo next claims that Trader Joe's "substantially changed the reasons provided" for Cocuzzo's termination, and as a result, the District Court should have found evidence of pretext. Cocuzzo Br. at 21; *see id*. at 13-15, 21-23. In weighing such an argument, "the test" is whether "the rationales [proffered by defendant] are not so inconsistent as to be unworthy of credence." *Collazo-Rosado v. Univ. of P.R.*, 765 F.3d 86, 94-95 (1st Cir. 2014); *see Henderson*, 977 F.3d at 34 (same) (quoting *Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 136 (1st Cir. 2017)). As the District Court correctly held, "[t]he reason given by Defendants for the termination – Cocuzzo's purchase of alcohol for an underage person – has never wavered." APP 543 (emphasis in original). There is no meaningful inconsistency and thus, no evidence of pretext.

In support of her claim of Trader Joe's "shifting rationales" for Cocuzzo's termination, Cocuzzo first points to Gillum's investigation notes, which read: "the only decision that was made was by [Cocuzzo] to sell alcohol to a minor." Cocuzzo Br. at 21-22. Yet Gillum explained her use of the word "sell" there was a typo, and that she meant to write "purchase alcohol." APP 519-20; APP 533. Nothing in the record suggests otherwise. Gillum's notes use the term "buy" elsewhere; Foote's notes from the conversation reflect that Gillum said "buy alcohol;" and in all other instances, Gillum has said that Cocuzzo "bought" or "purchased" the alcohol.

APP 342, 344.  This stray typo is not enough to find pretext when every other contemporaneous reference to the reason for termination is consistent.

Cocuzzo makes much of the fact that her termination notice mentions Trader Joe's "core value of integrity."  Cocuzzo Br. at 13-14, 22.  This too is of no moment. The termination notice reads:

> [O]n February 20th, 2021, an underage crew member selected and placed two 4-packs of beer[7] into a cart in the alcohol section of our store. You proceeded to purchase this beer. When I asked you about the beer afterward, you said the alcohol was for the underage crew member.
>
> The decision to purchase alcohol for a minor goes against our core value of integrity.  Based on this decision, you employment is terminated effectively immediately. [sic]

APP 135.  Nowhere does the notice reference an "Integrity Policy" (*cf.* Cocuzzo Br. at 14, 22).  Rather, the reference to the "core value of integrity" is in the broader context of Cocuzzo's misconduct in buying alcohol for a minor.  That is consistent with the reason given for Cocuzzo's termination.

Cocuzzo then lists the explanations given by Trader Joe's at different stages of this litigation:

- The position statement to the Massachusetts Commission Against Discrimination stated, "that the reason for termination was … a violation of the Alcohol Policy."  Cocuzzo Br. at 22.

---

[7] There was only a single four-pack of beer; not two.  However, not even Cocuzzo claims that this mistake is evidence of pretext.

- "[I]n interrogatory answers [] the termination was based upon both a violation of Trader Joe's Alcohol Policy and a violation of Massachusetts liquor laws." *Id.* at 23.

- "[A]t deposition," Foote and Gillum referred to "an alleged violation of Trader Joe's Alcohol Policy, not a violation of liquor laws."[8] *Id.*

- In the "Memorandum in Support of Summary Judgment," Trader Joe's argued that Cocuzzo "violated the Trader Joe's alcohol policy by knowingly purchasing beer for an underage person and by placing Trader Joe's liquor license in jeopardy." *Id.*

- Trader Joe's did not mention Cocuzzo placing the liquor license in jeopardy in their reply brief. *Id.*

All of these explanations are based on the same <u>undisputed</u> core reason for the termination: Cocuzzo knowingly purchased alcohol for a minor. They are certainly not "so inconsistent as to be unworthy of credence." *Collazo-Rosado*, 765 F.3d at 94-95. Cocuzzo's "shifting rationales" argument fails. *See id.* (affirming summary judgment because the "general rationale" proffered was "not inconsistent"); *Henderson*, 977 F.3d at 34 (rejecting argument that justifications given were inconsistent); *Echevarria*, 856 F.3d at 136 (same).

---

[8] Trader Joe's disputes this: Gillum testified that she believed Cocuzzo's conduct violated Massachusetts law. APP 165-67, 168.

The cases cited by Cocuzzo, Cocuzzo Br. at 21, are distinguishable.  In *Velez v. Thermo King de Puerto Rico, Inc.*, the employer went from giving no reason for the plaintiff's termination; to saying the termination was for violating the company's policy on receiving gifts from suppliers; to saying it was for stealing.  585 F.3d 441, 449 (1st Cir. 2009).  Based on these changes, the Court found evidence of pretext. *Id.*  In *Burton v. Freescale Semiconductor, Inc.* (cited in passing, Cocuzzo Br. at 21), the Fifth Circuit found pretext because the reasons initially proffered for the termination occurred <u>after</u> the termination decision had been reached, and only during litigation did the defendants point to pre-termination conduct.  798 F.3d 222, 237-38 (5th Cir. 2015).  Here, by contrast, Trader Joe's has given the same reason for the termination from the beginning, and the reason for Cocuzzo's termination – her purchasing beer for a minor – occurred before the termination decision.  There were no "shifting reasons" and therefore no basis to find pretext.

### 4. There Was No Evidence of Animus In Gillum's Annual Performance Review of Cocuzzo

Cocuzzo next contends that Gillum "stopped providing written evaluations of Ms. Cocuzzo after 2018," then Gillum "entered the evaluations for the years 2019-2021 on the same date."  Cocuzzo Br. at 24.  This assertion is spurious.  Gillum and Cocuzzo <u>both</u> testified that Gillum wrote one performance review for Cocuzzo, and that Gillum gave it to Cocuzzo in <u>2020</u>.  APP 97, 504-07.  Trader Joe's records show that on August 29, 2020, there was a "Review given by Jenn Gillum" to Cocuzzo.

APP 522.  Another Captain, not Gillum, gave Cocuzzo her 2018 and 2019 reviews, contemporaneously.  APP 507-08; *see* APP 522.

Disregarding her own testimony, Cocuzzo apparently bases her assertion on the fact that, when produced in discovery, three of her reviews listed dates of "08/20/21".  *See* APP 327-30.  Yet as Gillum explained, "there was an error in the program the year I tried to write Gloria's review," which caused an incorrect date to appear on the document.  APP 506.  There is certainly nothing in the record to indicate that Gillum "belatedly massage[d] [the reviews] to fit any legal narrative" (Cocuzzo Br. at 24) – that is farfetched conjecture.  Indeed, all of the reviews were positive (*see* APP 327-30); it strains credulity to hold that Trader Joe's would somehow manufacture favorable reviews to support Cocuzzo's termination.  The District Court did not err in rejecting this purported evidence of pretext.

### 5.  Gillum Offering Cocuzzo the Opportunity to Retire Does Not Demonstrate Pretext

Cocuzzo argues that "Gillum attempted to coerce Ms. Cocuzzo into retiring based on her age," which she contends "constitutes evidence of discrimination." Cocuzzo Br. at 25.  This is both factually and legally unavailing.

When she met with Cocuzzo, Gillum said that Cocuzzo "had the opportunity to retire," that "she would be able to 'keep the narrative on your own terms,'" but if they "proceeded without her resignation … ultimately the situation would not end up in her favor because she crossed a line that doesn't need to be looked into further."

APP 344; *see* APP 342 (Gillum's notes of the same conversation, which are materially similar). Cocuzzo was not "coerced" into retiring, as there was nothing to "coerce:" Cocuzzo's employment was going to end, because of her admitted misconduct. The offer to "retire" arose after the fact of the termination decision. The only question was whether Cocuzzo wanted her departure to be deemed voluntary, or not. Indeed, Cocuzzo initially chose to resign, but was allowed to change her mind shortly after. There was no "coercion."

To the extent Cocuzzo contends that Gillum's mere use of the word "retire" suggests age discrimination, that is legally incorrect. "The terms 'retire' and 'retirement' alone, without any evidence that they are being used as a proxy for age to express discriminatory bias, are not direct evidence of age discrimination." *Treadway v. Cal. Prod. Corp.*, 659 Fed. Appx. 201, 207 (6th Cir. 2016); *see Martin v. Bayland Inc.*, 181 Fed. Appx. 422, 423-24, 426 (5th Cir. 2006) (statement that it was "time … for you to retire" was not evidence of discrimination). Or as the Eighth Circuit held, "[w]e do not think that suggesting retirement to an employee who is eligible for retirement, and who is not performing satisfactorily, provides a reasonable basis for inferring age discrimination." *Ziegler v. Beverly Enters.-Minn., Inc.*, 133 F.3d 671, 676 (8th Cir. 1998); *see Egan v. Hosp. Serv. Dist. No. One*, No. 12-1352, 2013 U.S. Dist. LEXIS 89803, *8-9 (E.D. La. June 26, 2013) (being given the "option of retiring in lieu of being fired" does not constitute evidence of

discrimination); *Palmer v. Liberty Univ., Inc.*, No. 6:20-cv-31, 2021 U.S. Dist. LEXIS 236875, *16-17 (W.D. Va. Dec. 10, 2021) ("offering [plaintiff] the opportunity to retire … after already having decided to fire her for performance-based reasons" is not evidence of age discrimination).

The case cited by Cocuzzo (Br. at 25), *Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.*, 999 F.3d 37 (1st Cir. 2021), is inapposite. There, the plaintiff was told he was being terminated because the employer wanted to "rejuvenate" the workforce. *Id.* at 51. The Court found that comment demonstrated that the employer "decided to terminate [the plaintiff's] employment because of his age inasmuch as it wanted a younger workforce." *Id.* at 52. That is not the case here: Gillum asking Cocuzzo if she would prefer to retire instead of being terminated does not suggest any desire for a younger workforce, as discussed.

Further, there is nothing to suggest that age played any part in the decision to terminate Cocuzzo. There is no evidence of ageist remarks or the like. *See* APP 115. Quite the contrary: Gillum, who made the decision to terminate Cocuzzo, provided Cocuzzo with a significant raise and a bonus only a few months earlier. APP 97-99. Maguire, who reviewed the termination decision, promoted Cocuzzo to Merchant when she was 70. APP 95-97, 118, 143. "It is improbable that the same persons who hire or promote someone already in an older age bracket will suddenly develop an aversion to older people." *Dziamba v. Warner & Stackpole LLP*, 56

Mass. App. Ct. 397, 406, 778 N.E.2d 927, 934 (2002) (citing cases); *see LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 847 (1st Cir. 1993) (same). Because there is no evidence of any age-related animus, and much evidence to the contrary, the District Court did not err in concluding that Cocuzzo's ADEA claim failed.

### 6. Statistics Do Not Support Cocuzzo's Allegations of Pretext

Cocuzzo next claims that "in the ten years prior to Gillum's hire[9] … not a single employee over the age of 40 was separated from employment," while "after Gillum was hired … seven employees over the age of 40 were suddenly separated." Cocuzzo Br. at 26. This is a complete fabrication. Trader Joe's produced a list of people employed as of the date of Cocuzzo's termination (February 24, 2021), along with their dates of birth and dates of separation. *See* APP 484-85 (¶¶ 3-5), APP 487-88 ("limiting [the] response to individuals employed at the time of Plaintiff's termination"), APP 492-97. (The list only identifies dates that the person stopped working for Trader Joe's, and does not state whether they left voluntarily or involuntarily.) Necessarily, since this list consists of individuals employed as of February 24, 2021, every date of separation is after February 24, 2021. APP 492-97. There is nothing in the record about who left "in the ten years prior to Gillum's hire," or any other period before February 24, 2021. Further, the data produced show

---

[9] Gillum started at Trader Joe's in 2009 as a Crew Member (APP 503), so it is unclear what timeframe Cocuzzo is referencing.

91 percent of employees who departed Trader Joe's in this timeframe (74 out of 81) were under 40. APP 492-97. This spreadsheet has no conceivable relevance, and certainly does not suggest age discrimination.

Cocuzzo's arguments regarding pretext are baseless. The decision below should be affirmed.

## E.  Any "Direct Evidence" Argument Has Been Forfeited

In her Brief, Cocuzzo makes one passing reference to "direct evidence of discrimination." Cocuzzo Br. at 25. "Direct evidence" is a method of proving discrimination, alternative to the *McDonnell Douglas* framework. *Zampierollo-Rheinfeldt*, 999 F.3d at 50. Cocuzzo advanced a direct evidence argument before the District Court (*see* APP 194-97), but does not do so here, instead relying solely on the *McDonnell Douglas* test. *See* Cocuzzo Br. at 7. "An argument not seriously developed in the opening brief is forfeit." *Tejada-Batista v. Morales*, 424 F.3d 97, 103 (1st Cir. 2005) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990)). Because she has not developed a direct evidence argument in her opening brief, Cocuzzo has forfeited any such argument.

Nor would any direct evidence argument be successful. "[D]irect evidence is relatively rare," and "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Patten v. Wal-Mart Stores East, Inc*., 300 F.3d 21, 25 (1st Cir. 2002) (citing cases).

The District Court correctly held that there were no such statements, and none of Cocuzzo's other allegations rise to the level of direct evidence. *See* APP 539-41. The Court should affirm that decision.

## F.     The District Court did not Err in Dismissing the Individual Claims Against Gillum

Finally, Cocuzzo tersely asserts (without any citation to the record or legal authority) that the District Court erred in dismissing the individual claim against Gillum because Cocuzzo "did show that Ms. Gillum had an intent to discriminate." Cocuzzo Br. at 28.  This argument too is unavailing.

There is no cause of action against individuals under the ADEA, so any federal claim against Gillum was properly dismissed.  *See Brandt*, 957 F.3d at 74 n.5 (accepting district court's ruling of no individual liability under the ADEA, citing *Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009)).

As for the state-law claim against Gillum under M.G.L. c. 151B, § 4(4A), such a claim "is derivative of the underlying age discrimination claim and thus fails as a matter of law where the court has concluded there was no age discrimination." *Ring v. SRS Distrib., Inc.*, No. 19-cv-10896, 2021 U.S. Dist. LEXIS 134058, *19 (D. Mass. July 19, 2021) (citing cases).  Because there is no evidence of age discrimination against Trader Joe's, the derivative claim against Gillum necessarily fails as well.  *See id.*; *Canfield v. Con-Way Freight, Inc.*, 578 F. Supp. 2d 235, 242-43 (D. Mass. 2008) (dismissing claim against individual because there was no

evidence of discrimination against employer).  Accordingly, the Court should affirm

the dismissal of any claims against Gillum on the same grounds applicable to Trader

Joe's.

## IV.   CONCLUSION

For the foregoing reasons, the District Court's judgment should be affirmed

in all respects.

Dated:     January 19, 2024          Respectfully submitted,

TRADER JOE'S EAST, INC. AND
JENNIFER GILLUM,

By their attorneys,

/s/ Stephen T. Melnick

Stephen T. Melnick, First Cir. No. 1135908
smelnick@littler.com
Ellen E. Lemire, First Cir. No. 1184730
elemire@littler.com

LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone:     617.378.6000
Facsimile:     617.737.0052

## RULE 32(G) CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

28.1(e)(2)(B) because, excluding the parts of the brief exempted by Fed. R. App. P.

32(f), this brief contains 6,955 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

365 in 14-point Times New Roman.

/s/ Stephen T. Melnick
Stephen T. Melnick
First Cir. No. 1135908

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

Case No. 23-1695

---

GLORIA COCUZZO,

Plaintiff - Appellant,

v.

TRADER JOES EAST INC.; JENNIFER GILLUM,

Defendants - Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

**CERTIFICATE OF SERVICE**

---

I, Stephen T. Melnick, hereby certify that on this 19th day of January 2024, I electronically filed the foregoing brief of Defendants-Appellees with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following counsel of record for Plaintiff-Appellant is registered as an ECF Filer and will be served by the CM/ECF system:

Timothy J. Perry
Perry Krumsiek LLP
1 Boston Pl
Ste 2600
Boston, MA 02108
tperry@pkdllp.com

Respectfully submitted,

TRADER JOE'S EAST, INC. AND
JENNIFER GILLUM,

By their attorneys,

/s/ Stephen T. Melnick
Stephen T. Melnick, First Cir. No. 1135908
smelnick@littler.com
Ellen E. Lemire, First Cir. No. 1184730
elemire@littler.com

LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone:     617.378.6000
Facsimile:     617.737.0052